IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:24-cv-00823-CNS-MEH**

CINDY McCORMICK;
RONALD McCORMICK; and,
TRUPP LAND MANAGEMENT LLC,

    Plaintiffs,

v.

HRM RESOURCES, LLC,
HRM RESOURCES II, LLC,
HRM RESOURCES III, LLC,
HRM RESOURCES IV, LLC,
L. ROGER HUTSON,
TERRY PAPE,
PAINTED PEGASUS PETROLEUM, LLC, and
JOHN HOFFMAN,

    Defendants.

---

### HRM DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS

---

Defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson, and Terry Pape (collectively "HRM Defendants"), through counsel, move to stay discovery pending the resolution of their motion to dismiss.

**Certificate of Conferral**: Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel discussed this motion in a telephone conference with Plaintiffs' counsel on April 24, 2024. Plaintiffs object to the requested relief.

1

## INTRODUCTION AND PROCEDURAL BACKGROUND

On February 22, 2024, Plaintiffs filed this putative class action lawsuit in the District Court of Adams County, Colorado (see ECF No. 1.1). Plaintiffs allege they and the putative class members are landowners with idle oil and gas wells on their properties. (Compl., ¶ 13–14, 137.) Plaintiffs contend that Colorado law requires these inactive wells be plugged and their lands reclaimed and remediated. (*Id.* ¶¶ 118–21.) Plaintiffs have filed this class action to try to get that relief for themselves and for others allegedly similarly situated. *Id.* ¶ 136.

The oil and gas wells at issue were orphaned when their last operator—Defendant Painted Pegasus Petroleum, LLC ("P3")—went bankrupt during an oil-and-gas bust in late 2021. (*Id.* ¶¶ 120, 123.) Now, the wells are in the Colorado Energy and Carbon Management Commission's ("ECMC") Orphan Well Program ("OWP"), meaning the wells are overseen and controlled by ECMC (formerly, the Colorado Oil and Gas Conservation Commission ("COGCC")). (*See id.* ¶ 120; Motion to Dismiss of HRM Defendants or, in the Alternative, Motion to Strike ("Motion to Dismiss") (ECF No. 30), at 4.) ECMC inspects wells in the OWP for safety and environmental reasons, and the wells will be plugged and abandoned. (Motion to Dismiss, at 4.) Indeed, according to publicly available information from the OWP, it has already spent over $635,000 on its oversight of the wells at issue and has even plugged some of them. (*Id.* at 11.) It categorizes all the P3 wells as "In Progress," meaning that the OWP has inspected them and is conducting ongoing site operations. (*Id.*) Plaintiffs' Complaint, which indistinguishably lumps four distinct companies as "HRM" (Compl. ¶ 15), erroneously

2

alleges that these four separate companies owned the at-issue wells in 2018 and sold the wells to P3 in 2018 after they incurred a duty to plug and abandon the wells, (*id.* ¶¶ 114, 119.) Instead, only one of the HRM companies sold the wells to P3, the HRM company had no duty to plug and abandon the wells, and the sale was an arm's-length transaction typical in the oil and gas industry.

The HRM Defendants removed the action to this Court on March 25, 2024 (ECF No. 1). On March 29, 2024, Plaintiffs and Defendant jointly stipulated to a 21-day extension of time for the HRM Defendants to answer or otherwise respond to Plaintiffs' Class Action Complaint (ECF No. 21). On April 22, 2024, the HRM Defendants filed the Motion to Dismiss, arguing that this Court lacks subject matter jurisdiction because Colorado law requires Plaintiffs to exhaust their administrative remedies at ECMC. (Motion to Dismiss at 12–15.) Plaintiffs do not allege they have sought—let alone exhausted—remedies available from ECMC, as required under Colorado law. (*Id.*) Instead, they filed this class action concerning the ECMC-controlled wells, seeking "a Court order, via a mandatory injunction or otherwise, requiring or resulting in the plugging of the at-issue wells" and other relief. (Compl. ¶ 149.) So, in the HRM Defendants' view, Plaintiffs ask this Court to do what ECMC is already doing. The Motion to Dismiss also presents several other independent bases for dismissal, including arguments that Plaintiffs have not alleged facts that establish standing (Motion to Dismiss at 15–19), and that Plaintiffs have failed to state a claim upon which relief can be granted for each of the seven claims they have brought against the HRM Defendants, (*id.* at 19–33).

Plaintiffs have said they will request—and the HRM Defendants do not oppose—a three-week extension of time for Plaintiffs to respond to the Motion to Dismiss. Barring any other extensions, Plaintiffs' response to the Motion to Dismiss would be due June 3, 2024, and the HRM Defendants' reply would be due June 17, 2024. The parties' initial disclosures are due on May 8, 2024; but in the Proposed Scheduling Order (ECF No. 31) at ¶ 6(d), Plaintiffs requested an extension of this deadline to May 22, 2024.

Plaintiffs and the HRM Defendants filed the Proposed Scheduling Order on May 1, 2024, and the Scheduling Conference is scheduled for May 8, 2024 at 10:15 a.m. The HRM Defendants contributed to the proposed discovery plan and case deadlines with the express caveat that the discovery plan and deadlines should only apply if the Court denies this motion and their Motion to Dismiss. (Proposed Scheduling Order at ¶ 6(d).) To be clear, the HRM Defendants' position is that discovery should not proceed because of their pending Motion to Dismiss. The HRM Defendants, thus, ask this Court to exercise its discretion under its inherent power and Fed. R. Civ. P. 26(c) to stay discovery pending resolution of the Motion to Dismiss.

The procedural posture is much simpler for the other defendants. Defendant John Hoffman has allegedly been served but has not yet responded to the Complaint. P3 has not yet been served. On May 2, 2024, Plaintiffs have filed a motion to authorize substituted service upon P3 (ECF No. 32).

**ARGUMENT**

Under both their inherent power to control their docket and Fed. R. Civ. P. 26(c), courts have "broad discretion to stay proceedings." *Harris v. City & Cnty. of Denver*, No.

19-CV-00572-MEH, 2019 WL 2491647, at *1–2 (D. Colo. June 14, 2019) (inherent power); *Mariani v. Titeflex Corp.*, No. 13-CV-01720-MSK-KLM, 2013 WL 6688966, at *1 (D. Colo. Dec. 19, 2013) (Rule 26(c)). In choosing to exercise that discretion, several principles typically guide the court. If a "[l]egal question[] regarding the court's subject matter jurisdiction" is raised, it "should be resolved as early as possible in the litigation, before incurring the burdens of discovery." *Harris*, 2019 WL 2491647, at *1. Similarly, "good cause may exist to stay discovery if a dispositive motion has been filed that could resolve the case and a stay does not unduly prejudice the opposing party." *Namoko v. Milgard Mfg., Inc.*, No. 06-CV-02031-WDM-MEH, 2007 WL 1063564, at *1 (D. Colo. Apr. 6, 2007).

The typically relevant considerations distill down to five factors: (1) the plaintiff's interest in proceeding expeditiously and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the Court; (4) the interests of nonparties; and (5) the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). In any one case, only a handful of these factors may be relevant. *See Harris*, 2019 WL 2491647, at *2.

Here, all of these factors favor staying discovery.

***First***, any general interest Plaintiffs may have in proceeding expeditiously is outweighed by the benefit to Plaintiffs in avoiding piecemeal litigation. While the HRM Defendants have moved to dismiss, P3 has not been served. So if discovery commences for Plaintiffs and the HRM Defendants, Plaintiffs likely will be needlessly subject to

5

duplicative discovery obligations. Under Plaintiffs' requested timeline, the HRM Defendants would face a deadline to move to deny class certification in October—five months away. So the HRM Defendants would need to commence discovery promptly *against* Plaintiffs and members of the proposed class; there would be no time to wait. And once P3 is served and in the case, P3 would presumably need to take similar, but not identical, discovery from Plaintiffs. Thus, Plaintiffs would likely *benefit* from a brief discovery stay to get P3 served and get all Defendants on the same discovery timeline.

Plus, Plaintiffs have not shown "any obvious need for urgency." *See Harris*, 2019 WL 2491647, at *2. To the contrary, the sale of wells at issue occurred nearly six years ago; there is no risk of evidence spoliation from this delay; and the wells at issue are in the OWP, safely under the oversight and management of Colorado regulators.

**Second**, the burden on the HRM Defendants of not staying discovery would be substantial. The burden of conducting discovery that may not ultimately be necessary is a significant factor warranting a stay. *See, e.g.*, *Knight v. Valley Country Club*, No. 14-cv-02470-PAB-MJW, 2015 WL 12550894, at *2 (D. Colo. Feb. 18, 2015) ("[T]here is certainly a burden on Defendant if a stay is not put in place. Defendants may be forced to conduct discovery which may not otherwise be necessary."); *United States ex rel. Simpson v. Leprino Foods Dairy Prods. Co.*, No. 16-cv-00268-CMA-NYW, 2018 WL 3062004, at *8 (D. Colo. Jan. 11, 2018).

Here, the cost of discovery would be massive. Plaintiffs' lawsuit raises complex and novel issues that involve roughly 200 oil and gas wells, several companies, and operations spanning a decade. These topics require retention of numerous expert

witnesses—from oil and gas transactions and leasing, to land and mineral title, well plugging and abandonment, and oil and gas and related accounting—who will have to review documents and data about more than 200 wells to inform their opinions. Further, Plaintiffs have requested 15 depositions—a 50% increase over the presumptive limit—and stated they anticipate deposing all six HRM Defendants, plus individuals with knowledge of their record systems, accounting practices, and economic analysis of the at-issue wells.

In short, discovery would be costly. With more than 200 wells at issue and potentially hundreds of members of the putative class, the legal and factual issues are vast and complex; by Plaintiffs' own pleading, this case concerns novel issues. It would be unfair and inefficient to force the HRM Defendants to proceed with such potentially wide-ranging discovery when a dispositive motion to dispose of the entire matter is pending.

**Third**, staying discovery will conserve judicial resources. "[T]he court is inconvenienced if matters proceed in a piecemeal fashion which would occur if discovery proceeded against some, but not all, defendants." *Hedin v. Amedisys Holding L.L.C.*, No. 13-cv-02150-REB-KLM, 2013 WL 6075796, at *2 (D. Colo. Nov. 19, 2013). That is exactly what would happen here if the HRM Defendants had to commence discovery when another defendant has not been served. Depositions, written discovery, class certification, and summary judgment briefing—everything in the case would be on a different timeline for the HRM Defendants and P3. Starting discovery now would invite the creation of needlessly piecemeal presentation of issues to the Court throughout the case.

Further, "[a] stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Harris*, 2019 WL 2491647, at *2 (quoting *Chavous v. Dist. of Columbia Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (internal punctuation omitted)). Staying discovery on claims later dismissed will relieve this Court of having to oversee scheduling issues and adjudicate discovery disputes. Entering a stay will require far fewer judicial resources than guiding the parties through discovery on claims that might not survive the Motion to Dismiss.

**Fourth**, staying discovery is in the interest of potential nonparties. Because the at-issue wells are in the OWP, ECMC currently oversees their remediation and plugging. Necessarily, Plaintiffs' case will involve significant third-party discovery to ECMC concerning the transfer of the wells and data about ongoing remediation operations and any potential environmental or health risks that Plaintiffs allege the wells may be causing.

Despite declining to articulate any potential theory for bringing another third-party into this case, Plaintiffs have shared that they will seek discovery from Kayne Anderson, a private equity firm that Plaintiffs allege "share[s] personnel" with HRM. Compl. ¶ 86. Besides issuing written discovery requests, Plaintiffs might seek to depose various nonparty witnesses. To protect these non-parties from potentially unnecessary and burdensome discovery requests, it is in these parties' interests to stay discovery, as a decision on the Motion may dispose of Plaintiffs' Complaint.

**Finally**, the fifth factor also supports a stay or is, at most, neutral. To be sure, orphaned wells have been a matter of public interest in Colorado in recent years. But

8

commencing discovery is not the best way to serve that interest; prompt resolution of the Motion to Dismiss is. The Motion to Dismiss raises questions about whether the Court is the proper place for Plaintiffs to direct their concerns about orphaned wells or whether those concerns ought to be directed to ECMC—the Colorado government agency with the subject-matter expertise that regulates, approves, and conducts the plugging and abandonment of orphaned wells and remediation of the surface land.

## CONCLUSION

For these reasons, the HRM Defendants ask this Court to stay all discovery and related deadlines until all briefing is complete and this Court rules on the HRM Defendants' pending motion to dismiss.

DATED May 6, 2024.

/s/Matthew C. Arentsen

Richard B. Benenson, #32566
Justin L. Cohen, #44811
Matthew C. Arentsen, #45021
Robert Bacaj, #52376
Max Porteus, #56405
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202
Phone: 303-223-1100
Fax: 303-223-1111
Email: marentsen@bhfs.com
    rbacaj@bhfs.com
    mporteus@bhfs.com

*Attorneys for Defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson and Terry Pape*

10

## CERTIFICATE OF SERVICE

       I hereby certify that on May 6, 2024, I electronically filed a true and correct copy of the foregoing **HRM DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Christopher P. Carrington, #37004
RICHARDS CARRINGTON, LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 962-2690
Email: chris@richardscarrington.com

Camille Sippel
CLIENTEARTH USA, INC.
501 Santa Monica Blvd., #510
Santa Monica, CA 90401
Phone: 424-387-7031
Email: csippel@clientearth.org

Scott Borison
BORISON FIRM, LLC
1400 S. Charles Street
Baltimore, MD 21230
Phone: 301-620-1016
scott@borisonfirm.com

*Counsel for Plaintiffs*

                                              */s/Paulette M. Chesson*
                                              Paulette M. Chesson, Paralegal
                                              Brownstein Hyatt Farber Schreck, LLP
                                              675 Fifteenth Street, Suite 2900
                                              Denver, CO 80202
                                              Phone: 303-223-1100