**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*8:08 am, May 10, 2024*
**JEFFREY P. COLWELL, CLERK**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Civil Action No. 1:24-cv-00823-CNS-MEH**

CINDY McCORMICK;
RONALD McCORMICK; and,
TRUPP LAND MANAGEMENT LLC,
Plaintiffs,

v.

HRM RESOURCES, LLC,
HRM RESOURCES II, LLC,
HRM RESOURCES III, LLC,
HRM RESOURCES IV, LLC,
L. ROGER HUTSON,
TERRY PAPE,
PAINTED PEGASUS PETROLEUM, LLC, and
JOHN HOFFMAN,

Defendants.

**MOTION TO DISMISS OF DEFENDAND JOHN G. HOFFMAN
OR, IN THE ALTERNATIVE, MOTION TO STRIKE**

I. **SUPPORTING INFORMATION**

In response to the lawsuit, John G Hoffman maintains that the contributions were legitimate and sourced from personal and retirement funds. The company asserts that there was no collusion involved in the competitive bidding process with HRM Resources, LLC and denies any fraudulent transfer allegations under Colorado's Uniform Fraudulent Transfer Act. Painted Pegasus Petroleum, LLC cites challenges with regulators and delays in securing permits as factors impacting the growth of the business. Painted Pegasus Petroleum, LLC bankruptcy concluded January 4, 2024.

Painted Pegasus Petroleum was a company that self-funded using numerous individual contributions. Exclusively from select Black Elk Energy Offshore Operations, LLC employees. The early contributions and later new contributions were from Personal funds and retirement funds as seed capital. The initial raise was $794,430.22 and John Hoffman contributed well in excess of $250,000.00. **It seems inconceivable that a group of middle-income earners would contribute personal funds for a so called "conspiracy theory of collusion" and "pre-determined LLC outcome of Bankruptcy."**

The HRM Resources, LLC transaction was competitive bidding and Painted Pegasus Petroleum, LLC was awarded the winning bid by a third-party Auction firm. After this, Painted Pegasus Petroleum, LLC traveled to Denver to meet with HRM Divestment Team for the first time. I, John G. Hoffman, to the best of my knowledge, have never met Mr. Pate and it was days later that I first met Mr. L. Roger Hutson. Given the above facts, the plaintiffs claim of Colorado's Uniform Fraudulent Transfer Act ("CUFTA"), the facts do not support a collusion with the other named defendants. It seems inconceivable that any collusion could remotely happen in a competitive bidding auction, whereby the HRM parties were unknown to any member of the Painted Pegasus Petroleum, LLC.

The facts at the time of the HRM transaction, Painted Pegasus had initial Proved Reserves of a Present Value (PV) discounted at 10% were $11,538,790. Proved reserves are those quantities of petroleum which, by analysis of geological and engineering data, can be estimated with reasonable certainty to be commercially recoverable, from a given date forward, from known reservoirs and under current economic conditions, operating methods, and government regulations.

Proved reserves are categorized as developed (producing) or non-producing (idle) or undeveloped. The Proved Producing Reserve $PV_{10}$ value assessment of $3,166,790.00, the Proved Non-Producing Reserve value was $2,442,330.00. A considerable value was also in the Proved Shut-in classification with a value of $3,185,170.00. The drilling Proved Undeveloped Reserves has an assessed value of $2,744,500.00.

Separate analysis by industry experts in Engineering and Geologic disciplines identified additional opportunities such as stranded gas projects on the Egan Lease held a reserve value of $1,214,220.00 and the shut-in Third Creek pipeline wells had a value of $5,885,570.00 only requiring purchase of specific Anadarko pipelines. These wells were shut-in due to mechanical integrity concerns of the pipelines by Operator Anadarko. Anadarko would not consider selling any pipe due to sensitivity of the Firestone home explosion which is atypical in the industry.

The Painted Pegasus contingency plan was to use "combustors" to rejuvenate these stranded wells. Unfortunately, after filing permits the COGCC regulatory body failed to respond with "approved or not approved" for years. The plaintiffs contend that Painted Pegasus had knowledge that these assets were of negative value, obviously untrue. The well values and cash flows could be pursued by the ECMC however they choose to waste valuable oil & gas resources and plug each well. One well, the Champlin B lease single well could generate $5,645,550.00 $PV_{10}$ with a replacement of a flow line to gas sales. **The above values consider well plugging costs as well as remediation costs.**

Painted Pegasus Petroleum, LLC posted the "required" State of Colorado and ECMC financial responsibility of $305,000.00. Prior to filing bankruptcy, the COGCC (ECMC) made a demand for idle wells bond increase of $1,400,000 on September 9, 2021. New well plugging bonds were increasing to $78,800 per well. With circa 200 wells, that total

would be an incremental bond demand of $15,600,000. These regulatory changes were too burdensome for small operators. Unexpected events after the 2018 sale—a global pandemic that collapsed energy prices and new costly Colorado regulatory requirements—left Painted Pegasus Petroleum, LLC's operations with a 30 day demand (September 9, 2021) too expensive. So Painted Pegasus Petroleum, LLC, like many operators during this time, went bankrupt.

To further support the regulatory damage to small operators, "The Colorado Sun", June 17, 2021 written by Freelance Reporter, Mark Jaffe stated;

*For operators with low-producing wells the financial requirements would depend on how many of those wells they have. An operator with more than 60% of its wells producing less than five barrels a day falls into "Tier 3," and would have to start paying into a fund over the next 10 years to cover each well at full-cost bonding, $78,000.*

*"Tier 3 operators may have the highest risk of orphaning their wells, because they have a higher percentage of low producing wells that generate relatively little revenue, and they are plugging a relatively low percentage of their wells," the commission said. Those companies below that threshold fall into two categories where they can get blanket bonds for all their wells, with the top category, Tier 1, paying 50% less than Tier 2.*
*Sam Bradley, a spokesperson for the Small Operator Society, representing 65 small oil companies, said the regulations will put small operators out of business, creating a significant number of orphan wells. "Repeatedly over the last two years we cautioned the commission that this approach would create orphan wells if they weren't careful, and they completely ignored us," Bradley said.*

As a result of the deteriorating regulatory environment in Colorado, the Painted Pegasus employees including John G Hoffman lost ALL equity investments. These employees are not high net worth individuals, so it was very impactful.

Plaintiffs recognize their theory of prior-owner liability is novel. Yet they assert it is actionable through Colorado statutory claims for fraudulent transfer and common-law claims for trespass, negligence, and unjust enrichment. They also add civil conspiracy and aiding and abetting claims. There is, however, a difference between novel claims and meritless ones. And the face of the Complaint establishes that the claims against the Painted Pegasus and executives are the latter. Plaintiffs' shotgun pleading should be dismissed under Rules 12(b)(1) and 12(b)(6).

This Court lacks subject matter jurisdiction because Plaintiffs have failed to exhaust their administrative remedies at the Colorado Energy and Carbon Management Commission ("ECMC"), which they must do before suing for an injunction to stop alleged violations of the state's oil-and-gas rules.

Even apart from the Complaint's jurisdictional deficiencies, it fails to plausibly state a claim for relief. Plaintiffs' claims rest on a few conclusory assertions that Painted

Pegasus gratuitously accepted millions worth of remediation costs in 2018 for no benefit to itself and that all the defendants plotted bankruptcy years later.
Finally, even if any claims could survive dismissal (which they cannot), the Court should strike Plaintiffs' inflammatory, irrelevant allegations pertaining to two non-parties.

The inflammatory and untrue narratives and misleading claims about Black Elk Energy and John G Hoffman are defamatory. Plaintiff liable comments against Black Elk and John G Hoffman are statements that are false and damaging to reputation, may leading to legal consequences. These allegations are defamatory and the false accusations and misleading information harms John G Hoffman character and damages reputation and made with malicious intent. The safety and regulatory allegations of cutting corners are void of facts. A proper assessment in a comparative "company by company" assessment. A proper "incident of non-compliance to component" basis clearly shows a good record of safety and compliance. Journalists developed a narrative devoid of facts which is likely where the plaintiffs legal team began searching in the gutters.

It is obvious that the plaintiffs are grabbing at straws. The Bankruptcy of Black Elk was a result of criminal fraud by the Black Elk equity firm "Platinum Partners Value Arbitrage" in New York City.  The top executives of Platinum Partners were **found guilty of fraud** in New York Federal Court in 2023. The loss of hundreds of millions of dollars from the company Black Elk led to bankruptcy in Houston District Court. John G Hoffman resigned (from the company he founded) once the Platinum plot was becoming clear.

The Platinum fraudulently enacted a strategy to manipulate the $180,000,000 in high yield bond owners through a consistent solicitation whereby they proposed to leapfrog the senior secured bond holders in favor of the PPVA preferred equity. After the departure of John G Hoffman, he individually funded year plus of legal expenses by numerous highly respected Legal Firms to compile evidence for the Department of Justice, which led to the arrest and conviction of the Platinum Partner Executives. John G Hoffman is highly respected member of the industry. Dozens of awards; "Inc 500 fastest growing private companies", "Best Places to Work", "Entrepreneurial of the year in the South US region and the State of Texas" and National humanity awards to name a few. These false narratives are particularly damaging to John Hoffman's reputation and career achievements.

**ARGUMENT – MOTION TO DISMISS**

**John G Hoffman also joins in the HRM response and Motion to Dismiss.**

Careful review of the plaintiff's complaint, specifically their stated "Factual Allegations" fail to provide ANY facts with merit. ***It appears that the Plaintiffs have haphazardly thrown unsubstantiated facts against the wall to see what sticks. This is a manipulation of the courts, harmful to individuals' reputation and completely baseless.***

**1. Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(1).**

     **a. Plaintiffs Have Failed to Exhaust Their Administrative Remedies.**
     **b. Plaintiffs Fail to Plead an Actual Injury Traceable to the HRM**

**2. Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6).**
     **a. The Complaint Lacks Specific Allegations as to John G Hoffman.**
     **b. Painted Pegasus Petroleum bankruptcy was concluded Jan. 04, 2024 (21-33772-H5-7) and therefore has no representation in this case.**

**3. The Claims Against Hoffman Must Be Dismissed Because Plaintiffs Do Not State a Corporate Veil-Piercing Claim.**

**4. Plaintiffs Have Failed to Plausibly Allege a CUFTA Claim.**
     ***a. Plaintiffs have failed to plead the elements of a CUFTA claim.***
     ***b. Plaintiffs have failed to state a claim for "actual fraud."***
     ***c. Plaintiffs' "constructive fraud" claim must likewise be dismissed.***

**5. Because the CUFTA Claims Fail, Plaintiffs' Derivative Civil Conspiracy Claims Must Also Fail.**

**6. Plaintiffs' Trespass Claims, Which Also Turn on Their Transfer Allegations, Similarly Fail.**

**7. Colorado Does Not Recognize Aiding and Abetting Trespass Claims.**
     **a. Plaintiffs Conferred No Benefit on the HRM Defendants, Dooming Their Unjust Enrichment Claim.**
     **b. Plaintiffs Have Not Alleged Any Element of a Negligence Claim.**

**ARGUMENT – MOTION TO STRIKE**
     **Immaterial, Impertinent, or Scandalous Allegations Should Be Stricken.**
     **Should Any Claims Survive Dismissal, Plaintiffs' Allegations about Non-Party Black Elk Be Stricken.**

**CONCLUSION**
For the reasons above, Defendant John G Hoffman asks the Court to dismiss the Complaint with prejudice. And strike the scandalous, impertinent, and irrelevant allegations from the Complaint.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2024, I electronically filed the foregoing **MOTION TO DISMISS DEFENDANT, JOHN G HOFFMAN, AND MOTION TO STRIKE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:


Christopher P. Carrington
**Richards Carrington, LLC**
1444 Blake Street, Denver, CO 80202
Phone: 303-962-2690
Email: chris@richardscarrington.com
Camille Sippel

**ClientEarth USA, Inc.**
4192 Marcasel Avenue
Los Angeles, CA 90066
Phone: 605-397-7951
Email: csippel@clientearth.org
Scott Craig Borison

**Borison Firm LLC**
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Phone: 301-620-1016
Email: scott@borrisonfirm.com
*Counsel for Plaintiffs*
*/s/ Paulette M. Chesson*
Paulette M. Chesson, Paralegal
Brownstein Hyatt Farber Schreck, LLP
675 Fifteenth Street, Suite 2900
Denver, CO 80202
Phone: 303-223-1100