# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:24-cv-00823-CNS-MEH**

CINDY McCORMICK;
RONALD McCORMICK; and,
TRUPP LAND MANAGEMENT LLC,

      Plaintiffs,

v.

HRM RESOURCES, LLC,
HRM RESOURCES II, LLC,
HRM RESOURCES III, LLC,
HRM RESOURCES IV, LLC,
L. ROGER HUTSON,
TERRY PAPE,
PAINTED PEGASUS PETROLEUM, LLC, and
JOHN HOFFMAN,

      Defendants.

---

## HRM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

---

The HRM Defendants reply in support of their Motion to Dismiss or, in the Alternative, Motion to Strike ("Motion to Dismiss" or "Mot.") (ECF No. 30).

## I.     INTRODUCTION

Plaintiffs ask the Court to open the floodgates to class action litigation challenging the State of Colorado's authority to regulate oil and gas wells. The Court should not. Instead, it should dismiss Plaintiffs' claims at the outset and let the state continue to oversee and remediate the wells at issue.

All of Plaintiffs' claims are based on one flawed legal premise: that oil and gas well operators must plug and abandon low-producing oil and gas wells. But no Colorado case, law, or regulation supports Plaintiffs' assertion. Quite the opposite. Colorado's Energy and Carbon Management Commission ("ECMC"), the agency tasked with implementing Colorado's oil and gas laws, permits operations at low-producing. It also permits operators to transfer—and eventually restart operations on—non-producing wells. In effect, Plaintiffs ask this Court to impose tens of millions of dollars in injunctive relief and damages against Defendants for doing what ECMC allowed them to do. If the Court rejects Plaintiffs' legal premise about *when* the obligation to plug a well triggers—which it should—it need not address anything else. Plaintiffs' claims must be dismissed.

But the Court need not even decide anything about Colorado oil and gas law to resolve this case. It should be dismissed on jurisdictional principles. Before someone can sue for alleged violations of Colorado oil and gas laws that person must file a written complaint to state regulators. Plaintiffs' claims necessarily involve the violation of Colorado oil and gas laws. Indeed, ECMC's rules are the source of law on plugging

1

wells and remediating lands and govern the whole process. Plaintiffs' argument against exhaustion relies on a misreading of Colorado case law. And Plaintiffs ignore that ECMC responds to complaints over orphaned wells and monitors and addresses orphaned wells before plugging them—like it is doing for the wells at issue.

Plaintiffs also fail to establish Article III standing. Plaintiffs do not allege that the wells caused them a concrete and particularized harm. And while someone allegedly left tires on the McCormicks' land, that harm is not plausibly traceable to Defendants.

Plaintiffs also fail to state a claim upon which relief may be granted. If accepted, Plaintiffs' legal theories would radically alter the oil-and-gas field in Colorado and impermissibly encroach on the ability of ECMC (a state agency) to enforce its own regulations. According to Plaintiffs, Colorado common law imposes a duty to plug oil and gas wells when production from the wells is not economically viable (Resp. 10–11)—i.e., when the wells are not producing or low-producing, *see* Compl., ¶ 100. But (with limited exceptions) Colorado statutes and ECMC regulations permit and encourage oil and gas production from such wells. *E.g.*, Mot. 6–11. Citing no authority, Plaintiffs ask this Court to supersede Colorado's statutory and regulatory framework by recognizing a common law duty to plug wells that are still producing.

Plaintiffs then ask this Court to recognize this duty "from the moment of drilling." Resp. 13. So any operator—even decades later—could be liable. Plaintiffs' position is meritless, including because Colorado lawmakers have already considered and rejected imposing liability for the costs of plugging wells on prior operators. At bottom, all of Plaintiffs' claims rest on a flawed understanding of when operators have a duty to plug

oil and gas wells. Their claims thus should be dismissed as a matter of law.

Finally, Plaintiffs have failed to explain the connection between their prejudicial, immaterial, and scandalous allegations about two non-party entities. If any of Plaintiffs' claims survive, those allegations should be stricken from the Complaint.

## II.     ARGUMENT – MOTION TO DISMISS

### A.     Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(1).

#### 1.     The Administrative Exhaustion Doctrine Applies Here.

Administrative exhaustion is the rule, not the exception. *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo. 1998). And even if the legislature provides a private right of action, courts require plaintiffs to exhaust their administrative remedies *unless* the statute expressly provides otherwise. *See, e.g.*, *City of Boulder v. Pub. Serv. Co. of Colo.*, 996 P.2d 198, 206 (Colo. App. 1999). Plaintiffs incorrectly try to flip these principles, only requiring exhaustion when expressly directed by statute. Resp. 7 n.3.

Plaintiffs also argue that they should not have to exhaust their administrative remedies at ECMC because (1) they have alleged common law and statutory claims; (2) the administrative exhaustion doctrine does not apply in suits between private parties; and (3) no adequate remedy exists at ECMC. Plaintiffs are wrong on all fronts.

***First***, it does not matter whether Plaintiffs have pleaded common law torts and a Colorado Uniform Fraudulent Transfer Act ("CUFTA") claim. The doctrine of administrative exhaustion "requires parties in a civil action to pursue ***available*** statutory remedies before filing suit in district court." *Golden's Concrete*, 962 P.2d at 923. Statutory remedies are available to Plaintiffs—at ECMC—so the doctrine applies.

Plaintiffs rely on *Gerrity Oil & Gas Corp. v. Magness* for the proposition that "an aggrieved surface owner may bring a common law action in tort against an operator who has used the surface in an unreasonable manner." 946 P.2d 913, 926 (Colo. 1997). But this passage does not mean that Plaintiffs need not exhaust their administrative remedies before suing. *Gerrity* was not addressing exhaustion, and nothing in *Gerrity* altered ECMC's authority and jurisdiction to resolve disputes related to well plugging. *See Bd. of Cnty. Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1049 (Colo. 1992) (recognizing ECMC's authority over well-plugging); C.R.S. §§ 34-60-105(1); -133.

**Second**, the administrative exhaustion doctrine applies in suits between private parties. *See generally Denver-Laramie-Walden Truck Line, Inc. v. Denver-Fort Collins Freight Serv., Inc.*, 399 P.2d 242 (Colo. 1965). Consider *Barry v. Bally Gaming*, 320 P.3d 387, 392 (Colo. App. 2013). There, the plaintiff sought to skirt an agency's authority by pleading claims that appeared, at least at first, distinct from regulatory violations. But then-Judge Gabriel noted that courts must be wary of such attempts, otherwise "a plaintiff could always avoid an agency's exclusive regulatory authority merely by labeling a regulatory claim as a [statutory] claim." *Id.* The same concerns in *Barry* are present here. Plaintiffs' claims turn on whether the HRM Defendants complied with ECMC's regulations around well-plugging and abandonment—issues within ECMC's authority and thus subject to exhaustion. Mot. 12–15.

Moreover, Colorado courts "strict[ly] adhere[] to the exhaustion of administrative remedies doctrine regardless of the type of relief the party seeks," so the fact that Plaintiffs have not explicitly alleged regulatory violations against the HRM Defendants

4

does not mean that Plaintiffs need not exhaust their administrative remedies. *Colo. Stormwater Council v. Water Quality Control Div.*, 529 P.3d 134, 140 (Colo. App. 2023).

***Finally***, Plaintiffs argue that ECMC cannot adequately remedy their injuries, so they should not have to exhaust their administrative remedies. Yet the only two exceptions to the doctrine are: (1) when the matter raises questions of law outside the agency's expertise; or (2) when it is clear "beyond a reasonable doubt" that administrative review would be futile "because the agency ***will not*** provide the relief requested." *Golden's Concrete*, 962 P.2d at 393 (emphasis added). Plaintiffs cannot argue that issues involving well-plugging are outside ECMC's expertise, *see* Mot. 13–14, so instead they assert that ECMC is ill-equipped to hear CUFTA claims. But this is irrelevant, as *Barry* shows, because courts require administrative exhaustion even when a plaintiff has alleged statutory (i.e., non-regulatory) claims like CUFTA. 320 P.3d at 392. Likewise, their argument that proceeding at ECMC would be futile must fail. Plaintiffs have not followed the statutory exhaustion procedure in C.R.S. § 34-60-114, nor have they made a complaint to ECMC—either of which could resolve this dispute. As Plaintiffs fail to rebut, ECMC can provide Plaintiffs their requested relief. Mot. 15 (citing Ex. K). Indeed, Plaintiffs do not dispute that ECMC has already plugged some wells at issue. *Id.* at 11 (citing Decl. ¶¶ 13, 14). The administrative exhaustion doctrine applies here, and thus, this Court should require Plaintiffs to bring their claims to ECMC.

**2.      Plaintiffs Fail to Plead an Actual Injury Traceable to HRM Defendants.**

It is the plaintiff's burden to plausibly allege Article III standing. *Colo. Manufactured Hous. Ass'n v. Bd. of Cnty. Comm'rs*, 946 F. Supp. 1539, 1543 (D. Colo.

5

1996). Plaintiffs had the chance in their Complaint and Response to allege that harm is more concrete than their general allegations about the possible environmental harms of orphaned wells generally, the possible exposure to unhealthy gasses, and the possible increased risk of future economic and physical harm. Resp. 8–9. But they did not. Instead, they argue for standing in three paragraphs, in which they cite no supporting authority for their assertion that their allegations are sufficiently concrete. *Id.*[1]

Plaintiffs have alleged that wells generally *may* expose surface owners to gases, lower property values, or otherwise leak dangerous materials and harm the land. Resp. 8–9; Compl., ¶¶ 61, 67, 71–72. But these "[a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The only concrete injury Plaintiffs alleged was that some tires were dumped on the McCormicks' property. Compl., ¶ 73. Yet this alleged harm is not plausibly traceable to the HRM Defendants. *See* Mot. 18–19. And Plaintiffs do not allege any harm suffered by Trupp, nor even mention Trupp once in their Response. Plaintiffs thus have failed to allege standing.

**B.    Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6).**

**1.    There Is No Obligation to Plug Low-Producing Wells.**

In defense of their trespass and negligence claims, Plaintiffs argue operators must plug wells that are "no longer economically viable," Resp. 10, 11, 13. So as they

---

[1] Plaintiffs cite one case—in which a court dismissed a suit by surface owners against an oil and gas operator—for the notion that trespass does not require actual injury. Resp. 9 (citing *A-W Land Co., LLC v. Anadarko E&P Co., LP*, No. 09-cv-02293-MSK-MJW, 2010 WL 3894107, at *4 n.9 (D. Colo. Sept. 29, 2010)). If the Court finds Plaintiffs' only injury is the nominal damage inherent in trespass, that underscores the need to direct this case to ECMC, the body that facilitates the plugging of wells.

would have it, when wells are low-producing, "it [is] unreasonable to leave [them] unplugged" and the wells "bec[o]me trespassory." *Id.* But Plaintiffs cite no authority.[2] Instead, they just insist that this conclusion is "indisputabl[e]." *Id.* at 13.

The only source of Colorado law (which is the law that applies) on *when* an oil and gas well must be plugged is ECMC's regulations. Under those, there is no duty to plug oil and gas wells that are still operating. With specifically defined exceptions, *see* 2024 Rule 503(g)(12); Mot. 8–9, ECMC expressly allows production from low-producing wells, Mot. Ex. F at 16, and allows non-producing wells to remain safely unplugged, 2024 Rule 417(c). <u>Plaintiffs thus seek to impose millions in damages against the HRM Defendants for doing what ECMC allows.</u> Under Plaintiffs' theory, Colorado common law would effectively supersede ECMC regulations, and compliance with ECMC regulations regarding low-producing wells would then be a breach of common law standards of trespass and negligence. That would be an absurd result.

This dooms Plaintiffs' entire Complaint, not just the trespass and negligence claims. If there is no basis for principal liability, their claims for secondary liability—civil conspiracy and aiding-and-abetting—must also fail. And Plaintiffs also premise their CUFTA claim on their purported claims for "fraud, ongoing trespass, negligence, conspiracy, and obligations to plug the wells and remediate and reclaim the well sites." Resp. 17. Finally, their unjust enrichment claim is also based on the "unjust" notion that

---

[2] They do eventually cite *McEvoy v. Diversified Energy Co. PLC*, No. 5:22-CV-171, 2023 WL 2808469 (N.D. W. Va. Apr. 4, 2023). But in that out-of-jurisdiction case, the plaintiffs did not bring common-law claims against the unplugged wells' *prior operator*— likely recognizing that there was no such duty. *See infra* at 8 n.3.

Defendants benefited from avoiding their purported plugging obligations. *See id.* at 22.

In short, if the Court agrees with the HRM Defendants on this point—which it should—it

need not go any further. Plaintiffs' claims must be dismissed.

### 2.    Plaintiffs Have Failed to Plausibly Allege a CUFTA Claim.

#### A.    *Plaintiffs have failed to plead the elements of a CUFTA claim.*

Citing no apposite authority, Plaintiffs argue that to plead a CUFTA claim, they

need not show a transfer moved assets out of their reach. Resp. 16. But Colorado

courts require this. *Vickery v. Evelyn V. Trumble Living Tr.*, 277 P.3d 864, 869 (Colo.

App. 2011). This requirement is also implicit in the statute: plaintiffs must have a distinct

claim to be creditors, and their remedies are targeted at bringing fraudulently transferred

assets back within their reach. *See Schempp v. Lucre Mgmt. Grp., LLC*, 18 P.3d 762,

764 (Colo. App. 2000). Even in Plaintiffs' favored case, *McEvoy v. Diversified Energy*

*Co. PLC*, No. 5:22-CV-171, 2023 WL 2808469 (N.D. W. Va. Apr. 4, 2023), the surface

owner plaintiffs recognized this element. *See id.*, Second Amended Class Action

Complaint (Doc. 96), at ¶ 1 ("The law of fraudulent transfer protects creditors when

debtors transfer away assets or incur liabilities that hinder, delay, or defraud ***the***

***creditor's ability to collect on a claim.***" (emphasis added).).[3]

Plaintiffs also allege that they are "creditors" under CUFTA because of their

common-law claims against Defendants. Resp. 17. Necessarily then, dismissal of their

---

[3] *McEvoy* also involves West Virginia law and did not involve common-law claims
against the wells' prior operators. *McEvoy*, Second Amended Class Action Complaint,
¶¶ 604–622 As a result, that case is distinguishable and has no import here.

common-law claims disposes of their CUFTA claim. If they do not have common-law claims, then they are not creditors and thus cannot bring a CUFTA claim. *See* C.R.S. § 38-8-108(1) (listing the remedies that "a creditor . . . may obtain"). Moreover, the flaws in their common-law claims—that the duty to plug an oil and gas well exists from the moment the well is drilled, creating a contingent claim right away—is also a flaw in their CUFTA claim. There is no duty to plug an oil and gas well (and thus no claim) when an operator is still allowed to extract oil and gas from the well. *See* Mot. 6–9.

### B.   *Plaintiffs have failed to state a claim for "actual fraud."*

Plaintiffs fail to allege actual fraud with particularity.[4] First, Plaintiffs' CUFTA claims boil down to formulaic recitations of CUFTA elements and conclusory allegations: "Defendants engaged in a 'scheme to fraudulently transfer negative-value assets and leave trespassing wells on Plaintiffs' property"; "HRM 'undertook these transfers to pass off their clean-up liabilities"; "P3 'was structured to go bankrupt and wash away HRM's liabilities"; and "HRM made the transfer 'with actual intent to hinder, delay, or defraud its creditors." Resp. 19. These are not particularized factual

---

[4] Plaintiffs allege in their Response that "HRM . . . dumped an additional liability-burdened well into P3's hands" "while P3's bankruptcy was ongoing." Resp. 3. This allegation is false, and Plaintiffs know it. Before filing the Motion to Dismiss, the HRM Defendants' counsel conferred with Plaintiffs' counsel about this allegation, which was first included in Plaintiffs' Complaint. Arentsen Decl. The HRM Defendants' counsel repeatedly told Plaintiffs' counsel—both in writing and over the phone—that no HRM entity ever transferred a well to P3 during its bankruptcy, but rather this was a recordkeeping mistake by ECMC that the agency has corrected. The HRM Defendants' counsel provided Plaintiffs' counsel a communication from ECMC recognizing and correcting its error, along with a publicly-available record showing that P3 did not receive the well. Ex. M. The HRM Defendants thus believe that Plaintiffs' counsel have violated Fed. R. Civ. P. 11 by including this bad-faith allegation in their Response .

allegations that each of the HRM Defendants intended to hinder a future creditor's ability to collect a debt, which Plaintiffs must state. *See Zvelo, Inc. v. SonicWall, Inc.*, No. 06-CV-00445-PAB-KLM, 2013 WL 5443858, at \*3 (D. Colo. Sept. 30, 2013).

Plaintiffs also do not attempt to distinguish between the various HRM entities or Hutson and Pape. Rather, it is "HRM" or "Defendants" who allegedly engaged in a fraudulent transfer. But this too cannot state a claim with particularity. *Lynch v. Olympus Am., Inc.*, No. 18-CV-00512-NYW, 2019 WL 2372841, at \*4 (D. Colo. June 5, 2019). The "mere continuation" doctrine also does not save Plaintiffs' claims. Resp. at 26-28. The doctrine is used to hold a successor corporation that acquires the assets of a selling corporation liable for the seller's debts. *CMCB Enterprises, Inc. v. Ferguson*, 114 P.3d 90, 93 (Colo. App. 2005). But HRM I is not a successor company, and Plaintiffs do not make any nonconclusory allegations of transfers between HRM II, III, or IV. Compl., ¶¶ 17-19. Finally, the "circumstances" that Plaintiffs purport to have sufficiently alleged do not imply the requisite state of mind of "Defendants." Rather, the circumstances that Plaintiffs allege show not only Plaintiffs' misunderstanding of how ECMC handles low- or non-producing wells, but also that "Defendants" sold their wells to a third party in a routine business transaction. So Plaintiffs have not alleged actual fraud under CUFTA.

### 3. Plaintiffs' Trespass Claims, Which Also Turn on Their Transfer Allegations, Similarly Fail.

Plaintiffs' Response fails to meaningfully engage with the fact that it is ECMC that determines what plugging and remediation obligations Colorado operators have—not a West Virginia federal district court order. And so it is ECMC's rules and regulations that

inform whether the HRM Defendants trespassed on Plaintiffs' land.

In support of their trespass claim, Plaintiffs recite the elements of trespass, reallege "that their land is burdened by trespassory unplugged wells," and cite another portion of their Response for the argument that Colorado imposes a duty to plug on all operators "from the moment of drilling." Resp. 13. But there is no such duty in Colorado. Plaintiffs then simply repeat that the "trespass is continuing" and state—with no citation to Colorado caselaw—that "continuing to disturb surface land after [the] privilege expires is trespass whether or not the consent has been formally withdrawn." *Id.* at 11.

Plaintiffs have not alleged that they required the removal of the wells, or that they "terminated" any privilege of the HRM Defendants, *before* 2018 when "HRM" sold the wells. *See* Compl., ¶ 98. The HRM Defendants thus cannot be liable for trespass or continuing trespass—especially because ECMC allows low- and non-producing wells to remain unplugged without it constituting a trespass. 2024 Rule 417(c).

### 4.    Colorado Does Not Recognize Aiding and Abetting Trespass Claims.

Citing *Greenberg v. L M Operations LLC*, 2023 WL 3937472, at *1 (Colo. Dist. Ct. Feb. 28, 2023), Plaintiffs argue that "Colorado courts have long recognized claims for aiding and abetting torts, including trespass." Resp. 24. But the *Greenberg* court cited two unpublished and inapposite orders for this assertion. In *Engler v. Hatch*, 472 P.2d 680, 682 (Colo. App. 1970) (unpublished), the defendant did not challenge the existence of the claim and the court of appeals did not address its viability. In *A-W Land Co.*, the court dismissed the aiding-and-abetting claim, rendering the point moot. 2010 WL 3894107, at *5. So the fact remains that no published Colorado case has

recognized aiding and abetting trespass.

Plus, Plaintiffs offer no rebuttal to the HRM Defendants' secondary point that aiding-and-abetting claims, if recognized, must be narrowly construed to ensure that "that innocent, incidental participants in transactions later found to be illegal are not subjected to harsh[] civil . . . penalties." *Invs. Rsch. Corp. v. SEC*, 628 F.2d 168, 177 (D.C. Cir. 1980); *see also Twitter v. Taamneh*, 598 U.S. 471, 489 (2023). Plaintiffs' conclusory summary of their speculative and general allegations fails to meet this standard. *See* Resp. 25–26; *cf Twitter*, 598 U.S. at 499–500. If economic viability is the dividing line for purposes of a trespass, Resp. 11, then the allegations do not plausibly allege aiding-and-abetting liability. One cannot "substantially assist" a trespass—a necessary element of the claim—by encouraging the trespass *after* it occurred, Resp. 10–11 (alleging the trespass predated the transfer); Compl, ¶ 96 (alleging the wells were not economically viable when the HRM entities acquired them). This is particularly true when the trespass alleged is the failure to plug wells while the State of Colorado *allowed* production.

Plaintiffs' Response also fails to explain how any of the HRM Defendants (particularly Hutson and Pape—who are not even alleged to have taken any discrete act or provided any encouragement or assistance with regard to the transfer of the wells to P3, *see* Compl., ¶¶ 91, 109–12, 114, 133) aided or abetted a trespass. Instead, Plaintiffs lump together the HRM entities, Hutson, and Pape together as "HRM" and continue to insist—without citing legal authority—that their allegations plausibly state an aiding-and-abetting trespass claim. Resp. 25–26. At bottom, the transfer of wells from

HRM to P3 is the sort of "innocent, incidental participa[tion]" in a transaction that aiding and abetting liability should not capture. *Invs. Rsch. Corp.*, 628 F.2d at 177.

**5.    Plaintiffs Conferred No Benefit on the HRM Defendants, Dooming Their Unjust Enrichment Claim.**

Plaintiffs are wrong about the elements of an unjust enrichment claim, misreading the "at plaintiff's expense" element as nothing more than damages and causation. They claim *Pulte Home Corporation, Inc. v. Countryside Community Association, Inc.*, 382 P.3d 821, 833–34 (Colo. 2016), expanded the scope of unjust enrichment claims. But *Pulte* reflects the long-standing principle that unjust enrichment claims require a defendant to receive a benefit at plaintiff's expense—either through plaintiff's direct conferral or over plaintiff's claim of superior entitlement. *See McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1097 (10th Cir. 2023) (requiring "that the defendant [be] unjustly enriched by receiving something . . . that properly belongs to the plaintiff").

Plaintiffs' argument therefore fails. By Plaintiffs' allegations, Defendants benefit from having the oil and gas mitigation funds plug and abandon the wells. Compl., ¶¶ 9, 131. But Plaintiffs did not directly confer any benefit on Defendants; indeed, Plaintiffs do not even allege that they owned their properties when an HRM Defendants owned the wells. *See McAnulty*, 81 F. 4th at 1098–99. Nor have Plaintiffs alleged they have a claim of superior entitlement to these mitigation funds. *Id.* So regardless of the precise nature of the first element of unjust enrichment, Plaintiffs have not alleged facts to establish it.

**6.    Plaintiffs Have Not Alleged Any Element of a Negligence Claim.**

Plaintiffs contend that the HRM Defendants only dispute the duty and damages

elements of negligence and do not argue lack of breach or causation. *See* Resp. 12.

Plaintiffs are wrong and have failed to address the HRM Defendants' arguments about

breach and causation. *See* Mot. 33. Regardless, it is still Plaintiffs' duty to adequately

plead each element of their tort claim. Their failure to do so means this Court should

dismiss their claims. *See Greenberg v. Perkins*, 845 P.2d 530, 533 (Colo. 1993) (stating

that if one element of the claim is not adequately pleaded, the entire claim fails).

Most of Plaintiffs' argument in defense of their negligence claims focuses on the

duty to plug oil and gas wells. Plaintiffs insist that unplugged wells are per se

unreasonable. *See* Resp. 13. But they cite no applicable authority for this assertion—

because none exists. The only source of Colorado law on when an oil and gas well

must be plugged is ECMC's regulations. Under those, there is no duty to plug oil and

gas wells that are still operating. Mot. 6–9 (explaining 2018 and 2024 ECMC rules on

plugging wells). ECMC allows production of low-producing oil and gas wells, with limited

exceptions. Mot. 7–8 (summarizing process in 2018 Rules 502(a), 503(b)(10)). Plus,

there is no duty on prior operators to plug wells if a successor operator goes bankrupt.

2018 Rules 100 (defining operator), 320; *see also* Ex. L at 14 (noting that extending

liability on past operators would require a statutory change); S.B. 24-159 (unpassed bill

that would have opened the door to imposing liability on prior operators in defined

circumstances). The Court should reject Plaintiffs' attempt to ignore this lone source of

law. Plaintiffs have failed to allege a duty, a breach of that duty, causation, or damages.

### III.      ARGUMENT – MOTION TO STRIKE

Plaintiffs defend their Black Elk and Kayne Anderson allegations as relevant to

the practices of the HRM Defendants, P3, and Hoffman. But they fail to connect the challenged allegations to anything at issue.

Plaintiffs do not try to link the Black Elk explosion that occurred a decade ago with the transaction between one of the HRM entities and P3 because no connection exists. Resp. 32. Plaintiffs also incorrectly state that accusations regarding Kayne Anderson are relevant. Resp. 32–33. But Kayne Anderson is not alleged to have been part of the transaction at issue. Moreover, Plaintiffs' assertion that including unfounded accusations about Kayne Anderson's business practices "bolsters Plaintiffs arguments about HRM's fraudulent practices" is opaque and conclusory at best. Resp. 33.

A movant requesting a motion to strike must show that in addition to the material being redundant, immaterial, impertinent, or scandalous, the allegations are also prejudicial. *Kokinda v. Penn. Dep't of Corr.*, No. 16-1303, 2017 WL 11461507, at *1 (W.D. Pa. Oct. 24, 2017). The HRM Defendants have done so. Plaintiffs allege fraudulent transfer between HRM and P3, and do not bring any claims involving actions of Kayne Anderson or Black Elk. Although Plaintiffs may wish to inflame the jury by lumping the HRM Defendants in with a tragedy in the Gulf of Mexico more than a decade ago and their (incorrect) allegations about who is responsible for the climate crisis, these allegations have no bearing on their claims. They should be stricken.

## IV.   CONCLUSION

For the reasons in their Motion and above, the HRM Defendants ask this Court to grant the Motion, enter an Order dismissing the Complaint with prejudice or, in the alternative, striking the scandalous, impertinent, and irrelevant allegations.

DATED June 17, 2024.

s/ Matthew C. Arentsen

Richard B. Benenson, #32566
Justin L. Cohen, #44811
Matthew C. Arentsen, #45021
Robert Bacaj, #52376
Max Porteus, #56405
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202
Phone: 303-223-1100
Fax: 303-223-1111
Email: rbenenson@bhfs.com
        jcohen@bhfs.com
        marentsen@bhfs.com
        rbacaj@bhfs.com
        mporteus@bhfs.com

*Attorneys for the HRM Defendants*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2024, I electronically filed the foregoing **HRM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:

Christopher P. Carrington
**Richards Carrington, LLC**
1444 Blake Street, Denver, CO 80202
Phone: 303-962-2690
Email: chris@richardscarrington.com

Camille Sippel
**ClientEarth USA, Inc.**
4192 Marcasel Avenue
Los Angeles, CA 90066
Phone: 605-397-7951
Email: csippel@clientearth.org

Scott Craig Borison
**Borison Firm LLC**
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Phone: 301-620-1016
Email: scott@borrisonfirm.com

*Counsel for Plaintiffs*

/s/ Paulette M. Chesson
Paulette M. Chesson, Paralegal
Brownstein Hyatt Farber Schreck, LLP
675 Fifteenth Street, Suite 2900
Denver, CO 80202
Phone: 303-223-1100