IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-00823-CNS-CYC

CINDY MCCORMICK,
RONALD MCCORMICK and
TRUPP LAND MANAGEMENT LLC,

    Plaintiffs,

v.

HRM RESOURCES, LLC, a Delaware limited liability company,
HRM RESOURCES II, LLC, a Delaware limited liability company,
HRM RESOURCES III, LLC, a Delaware limited liability company,
HRM RESOURCES IV, LLC, a Delaware limited liability company,
L. ROGER HUTSON,
TERRY PAPE,
PAINTED PEGASUS PETROLEUM, LLC, a Texas limited liability company and
JOHN HOFFMAN,

    Defendants.

# ORDER

Before the Court are two motions to dismiss: (1) the Motion to Dismiss for Lack of Jurisdiction Or, In the Alternative, Motion to Strike filed by Defendants HRM Resources, HRM Resources II, HRM Resources III, HRM Resources IV (collectively, the HRM Defendants or HRM),[1] Roger Hutson, and Terry Pape, ECF No. 30; and (2) the Motion to Dismiss Or, In the Alternative, Motion to Strike filed by Defendant John Hoffman, ECF No. 43. For the following reasons, the Court denies both motions.

---

[1] Plaintiffs allege that the HRM Defendants should be treated as one continuous entity. The Court addresses this argument below and refers to the four HRM Defendants collectively.

1

## I.  FACTUAL BACKGROUND

Plaintiffs are landowners who have approximately 200 orphaned oil and gas wells on their property. ECF No. 4, ¶¶ 10–14. Orphaned wells are unplugged wells that no longer produce, but have no owner to plug them and remediate the site. *Id.*, ¶ 51. Orphaned wells can cause significant problems, including impairing surface owners' property uses, harming wildlife, creating safety hazards to the public, and harming the environment through pollution, including methane leaks and oil seepage. *Id.*, ¶¶ 61–73.

The Colorado Energy and Carbon Management Commission (ECMC) runs the Orphan Well Program (OWP). *Id.*, ¶¶ 54–56. The OWP identifies abandoned wells, prioritizes them, and pays to plug, remediate, and reclaim abandoned wells where the operator cannot be located or refuses to comply with its asset retirement obligations. *Id.*, ¶¶ 55–56. The OWP is funded partly by oil and gas operators and partly through federal funding. *Id.*

Defendant Painted Pegasus Petroleum, LLC (P3) last owned and operated the wells on Plaintiffs' land. *Id.*, ¶¶ 98, 104, 123. P3 filed for bankruptcy on November 23, 2021. *Id.* Previously, the wells were owned by large oil companies until the HRM Defendants acquired them between 2013 and 2015. *Id.*, ¶¶ 78, 90. HRM transferred the wells to P3 in 2018. *Id.* Plaintiffs allege that these transfers followed a common pattern in the industry: smaller operators like HRM acquire marginal wells from large oil companies, extract any remaining value, and then pass the wells further down the chain to even smaller companies, like P3, that dissipate the future plugging costs by declaring bankruptcy or dissolving. *Id.*, ¶¶ 79–81. The process allows oil and gas companies along

2

the entire chain to avoid the costs of plugging their wells, also known as asset retirement obligations. *Id.*

Plaintiffs allege that the transfers from HRM to P3 were fraudulent: "Defendants knowingly and willfully conspired to facilitate the fraudulent transfer of negative-value assets (wells whose clean-up liabilities exceeded their potential revenues) into a company they knew would go bankrupt, with the ultimate purpose of avoiding paying for plugging, remediation, and reclamation costs associated with the transferred wells." *Id.*, ¶ 179.

The transfer to P3 is the largest single-operator well orphaning in Colorado's history. *Id.*, ¶ 129. After P3 filed for bankruptcy, all of the wells that it had operated were added to the OWP. *Id.*, ¶¶ 130–31. However, P3 had only provided $305,000 in bond money to cover its asset retirement obligations—only 1.79% of the actual cost of plugging the wells, estimated to be around $17 million. *Id.*

Plaintiffs bring seven claims for relief related to the transfer: (1) trespass, (2) violation of the Colorado Uniform Fraudulent Transfer Act (CUFTA), (3) civil conspiracy to commit trespass, (4) civil conspiracy to commit fraudulent transfer, (5) unjust enrichment, (6) aiding and abetting trespass, and (7) negligence. *Id.*, ¶¶ 151–209. Defendants filed motions to dismiss on April 24, 2024 and May 10, 2024, respectively.

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

To survive a Rule of Civil Procedure 12(b)(1) motion to dismiss, "a plaintiff must demonstrate that the court has subject matter jurisdiction." *Audubon of Kan., v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). "A Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney*

3

*v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotations omitted).

A defendant may challenge subject matter jurisdiction under Federal Rule 12(b)(1) by "facial[] attack [of] the complaint's allegations." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1000, 1002 (10th Cir. 1995). When a party brings a facial attack, courts must accept a complaint's allegations as true. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 877 (10th Cir. 2017).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), the dispositive inquiry is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court must take all the factual allegations in the complaint as true and "view these allegations in the light most favorable" to the nonmoving party. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). On a Rule 12(b)(6) motion, a court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the [] complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). The same standard applies to allegations in a counterclaim: the Court must accept the

well-pleaded factual allegations as true. *See Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1153 (D. Colo. 2020).

### A. Federal Rule of Civil Procedure 12(f)

Fed. R. Civ. P. 12(f) governs motions to strike: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of Rule 12(f) is to conserve time and resources that would be spent litigating matters that will not impact the case's outcome. *USI Ins. Servs., LLC v. Morris*, No. 22-cv-180-GPG-MDB, 2024 WL 1436316 (D. Colo. Feb. 21, 2024). Motions to strike are disfavored and are only granted in rare circumstances: when the allegations have no bearing on the controversy and the movant can show that it has been prejudiced. *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). Even if the moving party meets its burden to prove that allegations in a pleading violate Rule 12(f), the Court retains discretion to grant or deny the motion. *Mueller v. Swift*, No. 15-cv-01974-WJM-KLM, 2016 WL 11692343, at *2 (D. Colo. Apr. 14, 2016). "[A]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." *Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2021 WL 2012324, at *5 (D. Colo. May 20, 2021). "Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997).

### III. ANALYSIS

The two motions to dismiss make the same arguments, and so the Court will address them together.

**A. Subject Matter Jurisdiction**

*1. Administrative Exhaustion*

Defendants first argue that the Court lacks subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies at the ECMC. The Court disagrees; Plaintiffs had no obligation to pursue administrative remedies.

Courts lack subject matter jurisdiction where "administrative remedies are available and have not been exhausted." *Bd. of Cnty. Comm'rs v. Moga*, 947 P.2d 1385, 1391 (Colo. 1997). The duty to exhaust arises when "complete, adequate, and speedy remedies are available." *Bazemore v. Colo. St. Lottery Div.*, 64 P.3d 876, 878 (Colo. App. 2002).

Defendants argue that "[u]nder C.R.S. § 34-60-114, a plaintiff pursuing injunctive relief involving an alleged violation of the Oil and Gas Conservation Act and its related rules and regulations must" exhaust administrative remedies by notifying the commission of the violation and requesting the commission to sue. ECF No. 30 at 13. If a surface owner seeks to have a well plugged, ECMC's regulations direct them to "file an application to Plug and Abandon a Well or close an Oil and Gas Location pursuant to Rule 211." 2024 Rule 503(g)(12). However, Plaintiffs do not allege a violation of the Oil and Gas Conservation Act; Plaintiffs bring several common law claims and a statutory claim under CUFTA. Nor do they seek only injunctive relief. Because Plaintiffs are not bringing claims under the Oil and Gas Conservation Act, there is no duty to administratively exhaust their claims.

Additionally, the ECMC does not have the authority to provide Plaintiffs an adequate remedy. The ECMC is not equipped to answer questions or law, nor does it

6

adjudicate common law claims. *See City & Cnty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1213 (Colo. 2000). In fact, the Oil and Gas Conservation Act "expressly preserves any preexisting common law remedies." *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 924–26 (Colo. 1997). Plaintiffs also seek damages, which the ECMC cannot provide. Thus, Plaintiffs are not obligated to exhaust administrative remedies.

### 2. Standing

Defendants next argue that the Court lacks subject matter jurisdiction because Plaintiffs do not have standing, as they have not established an actual injury traceable to Defendants. The Court disagrees.

To establish standing, a plaintiff must demonstrate a "concrete" injury that is "actual or imminent, not conjectural or hypothetical." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). That injury must be fairly traceable to the challenged action of the defendant. *Lujan*, 504 U.S. at 560. Defendants argue that Plaintiffs have not established injury because the only allegation of specific harm is that the abandoned wells "attract illegal garbage dumping," but Plaintiffs do not allege that Defendants dumped garbage on their property. ECF No. 30 at 16. However, Plaintiffs do plead a cognizable injury. Plaintiffs allege that the wells are trespassory and block Plaintiffs' access to and use of their land, cause aesthetic injury, expose Plaintiffs to unhealthy gasses and pollutants, and lower property values. ECF No. 4, ¶¶ 60–73, 151–59, 173, 205. These are concrete, actual injuries. Additionally, alleging facts showing trespass is sufficient to establish injury, which Plaintiffs have done by alleging that the wells' structures and emissions are trespassory. *See A-W Land Co., LLC. v. Anadarko*

7

*E&P Co. LP*, No. 09-cv-02293-MSK-MJW, 2010 WL 3894107, *4 n.9 (D. Colo. 2010) ("the tort of mere trespass . . . does not require proof of any actual injury.").

The injury is also fairly traceable to Defendants. Plaintiffs adequately pleaded the scheme of fraudulent transfer, which involved all Defendants. Thus, because each Defendant was allegedly involved in the scheme to leave wells and equipment on Plaintiffs' land, the resulting injury is fairly traceable to them. The Court finds that it has subject matter jurisdiction over Plaintiffs' claims.

**B. Failure to State a Claim**

*1. Lack of Specific Allegations as to Each HRM Defendant*

Defendants first argue that Plaintiffs failed to state a claim because they did not specify "exactly *who* is alleged to have done *what* to *whom*" to provide each HRM defendant with "fair notice as to the basis of the claims" against them. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). However, Plaintiffs adequately pleaded that the four HRM entities are mere continuations of each other. The mere continuation doctrine plausibly applies: Plaintiffs alleged that there is a continuation of assets, as well as branding, strategy, common management, ownership, and expertise. *See CMCB Enters. v. Ferguson*, 114 P.3d 90, 93 (Colo. App. 2005); ECF No. 4, ¶¶ 17, 19–21, 82, 86–87. Thus, the HRM Defendants were provided fair notice of the basis of the claims against them.

*2. Claims Against Defendants Hutson and Pape*

Defendants next argue that Plaintiffs failed to state a claim against Defendants Hutson and Pape because they did not adequately plead a corporate veil-piercing theory. ECF No. 30 at 21. However, individuals can also be liable for their personal conduct and

8

direct involvement in torts, which is what Plaintiffs allege. *See, e.g.,* ECF No. 4, ¶¶ 20, 22, 24, 26, 91, 99; *Snowden v. Taggart*, 17 P.2d 305, 307 (Colo. 1932) ("[I]f [an officer of a corporation] commits a tort, he is liable for it."); *Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. App. 2003) (affirming *Snowden* and holding that "this principle applies equally to a manager of a limited liability company."). Courts "vary in their views as to the necessary level of participation" to allow liability without piercing the corporate veil. *Hoang*, 80 P.3d at 867. The court in *Hoang* held that "personal liability attaches to a defendant who was directly involved in the conduct through conception or authorization." *Id.* The *Hoang* court found that there was evidence that the defendant "approved of, directed, actively participated in, or cooperated" in torts, which was sufficient involvement. *Id.*

Here, Plaintiffs alleged that Defendants Pape and Hutson helped conceive of and direct the tortious conduct. *See, e.g.,* ECF No. 4, ¶¶ 157 ("L. Roger Hutson, Terry Pape, and John Hoffman, approved of, sanctioned, directed, actively participated in, or otherwise cooperated in the trespass"), 193–97 ("Defendants' scheme to dump negative-value wells onto Painted Pegasus . . . was conceived of and executed with the knowing participation and substantial assistance of HRM, Hutson, Pape, and Hoffman"), 203 ("Messrs. Hutson, Pape, and Hoffman personally oversaw operations at their respective companies, and each of them set policies and followed practices that substantially caused or contributed to HRM and Painted Pegasus' ongoing failure to plug, reclaim, and remediate wells as required by Colorado law."), 207. They also allege that Defendant Hutson was the founder, President, and CEO of each HRM entity, and Defendant Pape was the Vice President of Operations and added seven of his personally owned wells to

9

the transfer. ¶¶ 20, 22, 24, 26, 91, 99. These allegations are sufficient to plead direct involvement. Plaintiffs can therefore pursue claims against Defendants Hutson and Pape.

### 3. CUFTA Claim

Plaintiffs bring a CUFTA claim for actual fraud. To bring a CUFTA claim, a plaintiff must establish that the defendants made a fraudulent transfer with the actual intent to hinder, delay, or defraud any creditor. C.R.S. § 38-8-105(1).[2] The purpose of CUFTA is to protect creditors against debtors who transfer assets to third parties to avoid creditors' claims. *Schempp v. Lucre Mgmt. Grp., LLC*, 18 P.3d 762, 764 (Colo. App. 2000). A "creditor" is a "person who has a claim," C.R.S. § 38-8-102(5), and a "debtor" is "a person who is liable on a claim," C.R.S. § 38-8-102(7). A "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." C.R.S. § 38-8-102(3).

Plaintiffs adequately allege the requirements of a CUFTA claim. Plaintiffs allege that HRM transferred its liabilities, the asset retirement obligations, to P3 with the intent to hinder, delay, or defraud Plaintiffs. ECF No. 4, ¶ 101. They allege that they have claims (a right to payment) for fraud, ongoing trespass, negligence, and conspiracy, as well as the operators' obligations to plug the wells. *Id.*, ¶ 162. Surface land owners can be

---

[2] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
    a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
    b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
        I. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
        II. Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

10

creditors based on the operators' obligations to plug the well at some point in the future; drilling the well "necessarily gives rise to an obligation on the part of the operator or its successor to plug the well, and until the operator or its successor actually plugs the well, the landowner has a contingent and unmatured claim for plugging that qualifies as a 'claim.'" *McEvoy v. Diversified Energy Co. PLC*, No. 5:22-CV-171, 2023 WL 2808469, at *9 (N.D. W. Va. Apr. 4, 2023). Because plaintiffs have plausibly alleged a claim, they are creditors and Defendants are debtors for purposes of CUFTA.

Plaintiffs also sufficiently alleged fraud with particularity. They allege that Defendants had a "scheme to fraudulently transfer negative-value assets and leave trespassing wells on Plaintiffs' property," ECF No. 4, ¶ 103; that HRM "undertook these transfers to pass off their clean-up liabilities" to P3, *id*., ¶ 101; that P3 "was structured to go bankrupt and wash away HRM's liabilities," *id*; and that, in September 2018, HRM made the transfer "with actual intent to hinder, delay, or defraud its creditors." *Id*. ¶¶ 98, 165–66. Plaintiffs also allege a "badge of fraud," that the transfer occurred shortly after a substantial debt was incurred: the increased financial assurance bonding that was owed to the state. HRM had received a warning letter from the Colorado Oil and Gas Conservation Commission on August 21, 2018, detailing their suspected violation of the Oil and Gas Conservation Act by retaining an inactive well count in excess of their financial assurance. *Id*. ¶¶ 111–13. The transfer to P3 happened in September 2018. *Id*., ¶¶ 114–15. These allegations are sufficient to establish a CUFTA claim.

Because Plaintiffs adequately pleaded that the transfer was fraudulent and that the parties conspired to complete the transfer, they similarly adequately pleaded civil conspiracy to commit fraudulent transfer.

11

### 4. Trespass Claims

Plaintiffs also adequately pleaded trespass, conspiracy to commit trespass, and aiding and abetting trespass. Trespass requires "a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that property." *Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003). Plaintiffs allege that HRM, in a scheme with all Defendants, caused the trespass of unplugged wells and equipment onto Plaintiffs' land by fraudulently transferring them to a company that intended to leave the wells unplugged, with the associated equipment, on Plaintiffs' land after they no longer served a purpose in furtherance of the mineral estate. ECF No. 4, ¶¶ 87, 119, 157. These allegations are sufficient to establish continuing trespass.

### 5. Unjust Enrichment

Plaintiffs' unjust enrichment claim is also adequately pleaded. Plaintiffs must plausibly allege that "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo. 2016). They did so.

Plaintiffs allege that Defendants retained millions of dollars that they should have used for plugging—a benefit—which came directly at Plaintiffs' expense, because they were left with the unplugged wells on their property. For the same reasons that the unplugged wells cause them injury sufficient for standing purposes, they pleaded the "at the plaintiff's expense" element of unjust enrichment.

### 6. Negligence

Plaintiffs also sufficiently alleged negligence. They alleged the four negligence elements: "a legal duty, a breach of the duty, causation, and damages." *English v. Griffith*, 99 P.3d 90, 93 (Colo. 2004). Plaintiffs allege that Defendants had a duty to plug the wells, recognized by Colorado law, which arose "as a natural consequence of the limitations on a mineral rights holder's privilege to burden a surface estate." ECF No. 52 (Response) at 12; ECF No. 4, ¶ 200. They also allege a duty to avoid foreseeable and unreasonable risk of harm to others. *Id.*; *United Blood Servs. v. Quintana*, 827 P.2d 509, 519. (Colo. 1992) ("[A] legal duty to use reasonable care arises in response to a foreseeable and unreasonable risk of harm to others."). In the complaint, Plaintiffs note the numerous harms that unplugged wells cause to property and health. ¶¶ 57–73. Plaintiffs also allege breach: Defendants failed to plug the wells, and it was foreseeable that the transfer to P3 would perpetuate the injury because Defendants knew that P3 would not fulfill the duty to plug the wells.

\* \* \*

Because Plaintiffs adequately pleaded their claims, the motion to dismiss is denied.

### C. Motion to Strike

Finally, Defendants argue that if the Court declines to grant their motions to dismiss, it should, in the alternative, strike portions of the complaint: Paragraphs 32 and 82–86 in their entirety and the references to Kayne Anderson in Paragraph 20 and 87. ECF No. 30 at 33–35. These paragraphs relate to two non-parties, Black Elk and Kayne

Anderson, that pertain to activities of Defendant Hoffman's prior company (Black Elk) and HRM's funder (Kayne).

The Court declines to strike these paragraphs for two reasons: Defendants have not met the standard for striking, and they did not follow the Court's Uniform Civil Practice Standards. Standard 7.1A(a)(5) requires: "All requests for the Court to take distinct actions must be contained in separate, written motions," with the exception of motions requesting different bases for the same relief. Here, Defendants are asking for two distinct actions: dismissing counterclaims and striking paragraphs from the counterclaims. Defendants should have filed two separate motions, and the Court could deny this request on that ground alone. However, the Court denies the motion to strike on the merits.

The Court finds that Defendants have not met their burden to show that these paragraphs have "no possible bearing" on the claims of the case. The Black Elk allegations are potentially informative as to Defendants' intent in making the transfer, as they show Defendant Hoffman's record of business dealings with oil and gas assets. Similarly, the Kayne Anderson allegations are potentially informative about HRM's intent and knowledge regarding the allegedly fraudulent transfer. The Court must resolve any doubts in favor of the nonmoving party, and facts that show motive and that bolster a party's claims have some bearing on the case. Because the standard highly disfavors striking, and because these paragraphs have some possible bearing on the case, the Court declines to strike these paragraphs from Plaintiffs' complaint.

## IV. CONCLUSION

Consistent with the above analysis, the two motions to dismiss, ECF Nos. 30, 43, are DENIED. The motions to strike contained in ECF Nos. 30 and 43 are also DENIED.

DATED this 14th day of January 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge