**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:24-cv-00823-CNS-CYC**

CINDY McCORMICK; RONALD McCORMICK; and TRUPP LAND MANAGEMENT
LLC,
          Plaintiffs,

v.

HRM RESOURCES, LLC, a Delaware limited liability company;
HRM RESOURCES II, LLC, a Delaware limited liability company;
HRM RESOURCES III, LLC, a Delaware limited liability company;
HRM RESOURCES IV, LLC, a Delaware limited liability company;
L. ROGER HUTSON, an individual; TERRY PAPE, an individual;
PAINTED PEGASUS PETROLEUM, LLC, a Texas limited liability company; and JOHN
HOFFMAN, an individual,
          Defendants.

---

**PLAINTIFFS' RESPONSE TO HRM DEFENDANTS'
MOTION TO MODIFY SCHEDULING ORDER**

---

The above-captioned plaintiffs ("Plaintiffs"), through counsel, hereby submit their

Response to the Motion to Modify Scheduling Order (ECF 96 (the "Motion")) by

defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC,

HRM Resources IV, LLC, L. Roger Huston, and Terry Pape (collectively, "HRM

Defendants").

Each day that goes by, Plaintiffs and the proposed class are harmed by the

unplugged wells and related equipment that Defendants left in the wake of their

operations. Approximately one year ago, this suit was filed to remedy that harm. The

parties agreed to a schedule that would resolve the suit in an efficient and expeditious

manner. The Court accepted this schedule, which (like most class action schedules) set

#9882v6

the class certification motion deadline before the dispositive motions deadline and kept the discovery phase intact. Sched. Ord. at 13, ECF 45. HRM Defendants *again agreed* to this basic premise in October 2024. *See* Joint Mot. to Modify Sched. Ord., ¶ 6, ECF 78. HRM Defendants now want to change the order of filings that they previously agreed to (twice), and alter discovery to a bifurcated approach.

In seeking this unorthodox approach, HRM Defendants failed to meet their burden to establish good cause for three reasons: (1) they were not diligent and rely on no new information; (2) their erroneous and unfounded confidence that they have a likelihood of success on summary judgment is unsupported by the facts or caselaw; and (3) they misrepresent the prejudice to Plaintiffs from the proposed modification. Furthermore, requested bifurcation is atypical, will make the case more costly for all parties, and is not necessary given the factual setting related to class certification in this case.

The proposed modification should be rejected because it will do nothing but delay the final resolution of the case and prejudice Plaintiffs.

## I.    RELEVANT PROCEDURAL BACKGROUND

As noted above, the parties previously jointly proposed a schedule that provided for the class certification motion to be filed by October 28, 2024; before the close of fact discovery (December 20, 2024) and before the close of expert discovery (May 9, 2025). Proposed Sched. Ord. at 14, ECF 31. The Dispositive Motion Deadline was set "[f]orty-five days after the close of expert discovery or, if a class certification motion is still pending at that time, forty-five days after the class certification motion is decided, whichever is later." *Id.* HRM Defendants agreed to this schedule except they wanted it delayed until

2

after a ruling on their motion to dismiss. *Id.* at 9. They did not mention discovery bifurcation. *See id.* The Court entered the Scheduling Order with the above deadlines as agreed to by the parties. ECF 45.

HRM Defendants moved to stay discovery pending their motion to dismiss, arguing it would be wasteful to conduct discovery and expend judicial resources on claims that might not survive. Mot. to Stay Disc. at 8, ECF 34. In May 2024, the Court granted and denied that motion to stay in part, allowing the parties to proceed with initial disclosures and requests for production until HRM Defendants' motion to dismiss was resolved. Ord. on Mot. to Stay, ECF 51. In early July 2024, HRM Defendants' counsel gathered all of the documents cited in their Motion[1] and by September 2024, HRM Defendants produced all of the emails they cite in their Motion. In October 2024, when the parties again conferred regarding scheduling, HRM Defendants' counsel suggested (via email) the proposal that became part of the parties' joint request to the Court—that the "deadline to file a class certification motion be extended to 30 days following a ruling on the Motion to Dismiss, if denied…." Mot. To Modify Sched. Ord. at 2, ECF 78.[2] HRM Defendants again made no mention at all of discovery bifurcation.

Plaintiffs served HRM Defendants with requests for production of documents, but—contrary to the representations in their motion—HRM Defendants have refused to

---

[1] Per metadata of HRM Defendants' produced documents.

[2] The Court denied the parties' request in part, staying the class certification motion deadline and ordering the parties to schedule a status conference to reset case deadlines. Ord. on Mot. to Modify, ECF 80. At no time did the parties or the Court consider bifurcation or that summary judgment deadlines would precede class certification.

produce many of the documents Plaintiffs requested. Plaintiffs were forced to resort to a discovery conference to address some of the most significant refusals before Magistrate Judge Hegarty in December 2024. During that December hearing, HRM Defendants argued that it would be a waste of resources to provide key categories of Plaintiffs' requested documents and again asked to delay until the Court's ruling on their motion to dismiss. The Court confirmed, however, that some of Plaintiffs' requested discovery was in fact appropriate, and the rest should be resolved after a ruling on the motion to dismiss. Shortly thereafter, on January 14, 2025, the Court denied HRM Defendants' motion to dismiss in its entirety. Ord. on Mot. to Dismiss, ECF 90. But even now, the HRM Defendants continue to refuse to produce documents such as key financial information relevant to the allegations and key communications about the transaction.

Now for the first time—and without good cause—HRM Defendants seek discovery bifurcation and to deviate from the parties' previously agreed sequence of motions.[3]

## II.    LEGAL STANDARD

Pursuant to the Court's direction at the January 29 Scheduling Hearing, HRM Defendants bear the burden of showing good cause to change the sequence of discovery and motion deadlines previously agreed to by both the parties and the Court in the original Scheduling Order.

Rule 16 states that a "schedule may be modified *only* for good cause and with the

---

[3] HRM Defendants purport to have Mr. Hoffman's joinder in their bifurcation request. Motion at 2 n.1. But Mr. Hoffman argued in Court that his priority is to have the litigation proceed as expeditiously as possible. HRM Defendants' proposal nearly guarantees prolonging of this case.

judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). And as courts in this District have repeatedly observed, a "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *See e.g.*, *Washington v. Arapahoe Cnty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000). In determining good cause, courts primarily consider the moving party's diligence, whether the contentions are based on anything new, and the prejudice to the opposing party. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

## III.   HRM DEFENDANTS FAIL TO ESTABLISH GOOD CAUSE

HRM Defendants have not met their burden. They have not established good cause because (1) they were not diligent and they rely on no new information, (2) their argument about the probability of success on a motion for summary judgment is not supported by any (properly or improperly submitted)[4] evidence, and (3) they ignore the prejudice this will cause Plaintiffs. HRM Defendants' Motion does not justify further delays in the schedule of an already year-old case and should be denied.

### A.   HRM Defendants Have Not Been Diligent and Have Been Aware of the Information in Their Motion Since the Start of the Case.

HRM Defendants' delay in seeking bifurcation or postponement of the class certification deadline defeats good cause and dooms their Motion. *See Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (finding that carelessness,

---

[4] HRM Defendants have improperly submitted "evidence" in their motion. The complete facts are of course not yet before the Court and Plaintiffs ask the Court to disregard such fact-based arguments by HRM Defendants.

5

inadvertence, or failure to act promptly will not support a finding of good cause.) HRM Defendants moved after agreeing twice to a schedule that put the class certification motion deadline before summary judgment deadlines without any bifurcation. *See* ECF Nos. 31, 78. They first mentioned bifurcation weeks after the motion to dismiss ruling. This cannot be diligent under any scenario.

More importantly, the documents HRM Defendants rely on in their Motion are all documents that they have always had in their possession and that HRM Defendants' counsel reviewed at least half a year ago. HRM Defendants should not be rewarded for their lack of diligence and delay in making these new contentions. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 990–91 (10th Cir. 2019) (when facts giving rise to the requested modification are known to a party "for some time prior" to the request to modify, an "attorney's lack of experience and knowledge at the beginning of the litigation" does not support good cause); *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (finding lack of good cause because the moving party "knew of the underlying conduct but simply failed to raise [it in its] claims.").

Nor can HRM Defendants truthfully claim they have been diligent because they produced responsive documents to Plaintiffs. First, their production of documents is not relevant to whether they were diligent in conferring about their intent to move for bifurcation or their efforts to address the merits of the case for a possible motion for

summary judgment. Even though HRM Defendants produced the large majority[5] of documents in December 2024, they had possession of (and based on metadata, counsel had reviewed) these documents months ago.

Second, HRM Defendants fail to mention the numerous remaining discovery disputes and document productions owed to Plaintiffs. Even after their motion to dismiss was denied in its entirety, HRM Defendants continue to withhold responsive documents and have produced other documents with significant unilateral relevance redactions in contravention of Judge Hegarty's order.

There is nothing new to support HRM Defendants "newfound" anticipation of a successful motion for summary judgment and instead of diligently pursuing merits discovery and/or class discovery, HRM Defendants did neither while communicating to Plaintiffs that a class certification motion will shortly follow the motion to dismiss ruling, allowing Plaintiffs to expend significant effort in preparing for class certification without any indication that HRM Defendants would move for bifurcation.

**B.    HRM Defendants' Claimed Likelihood of Success on Summary Judgment Is Not Supported by the Evidence Produced to Date.**

HRM Defendants base their Motion on the claim that they are likely to succeed with a motion for summary judgment. In doing so, HRM Defendants rely on documents that have always been in their possession and have been reviewed by their counsel for months. A look at the law and the fuller facts available, which Defendants seem to ignore,

---

[5] HRM Defendants state they "have produced over 8,000 documents" (Motion at 4) but conveniently omit that the majority (specifically 5,664) of those documents are mere images of the wells at issue and the related equipment.

readily refutes their argument.

As an initial matter, it is entirely premature and inappropriate at this stage to ask the Court to draw any conclusions about what the evidence does or does not show. *See Bilek v. Fed. Ins. Co.*, 344 F.R.D. 484, 491 (N.D. Ill. 2023) (denying bifurcation request and stating "[t]his case is only in discovery and plaintiff has not yet moved for class certification [thus] [a]ny concern over disputed facts and speculation at this stage of the case is premature"). The parties have not served interrogatories, requests for admissions, or conducted any depositions or third-party discovery. The factual record is nowhere close to complete.

Furthermore, summary judgment is a high bar and is only appropriate where there is **no genuine issue as to any material fact**. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). HRM Defendants submitted screenshots of five emails and a text message to argue they will overcome this high bar. *See* Motion at 5–8. Even if it were appropriate to examine the merits of the case in a Motion to Amend the Scheduling Order, the HRM Defendants would not be close to meeting their burden.

HRM Defendants' fact-based arguments do not present a clear picture. The documents thus far (including the very ones improperly presented in their Motion) favor Plaintiffs' claims. For example, HRM Defendants argue that the transaction was a standard, arm's-length deal. Motion at 4. But the documents show that this transaction was anything **but** a standard deal. Indeed, far from ordinary, HRM Defendants appear to have **paid** Defendant P3 to take the at-issue wells, which is hardly "standard" as they so confidently assert. *See* Motion at 4. And one of the documents HRM Defendants present

8

(Motion at 7) actually demonstrates that both P3 and HRM were aware that at least "72" of the wells (Plaintiffs argue that this is likely true for many more) were inactive at the time of transfer, meaning that both parties were aware that significant plugging and cleanup costs were imminent and would likely never be paid.

HRM Defendants, citing no case law, argue that just because they met Mr. Hoffman through a website and engaged in negotiations, no fraud or conspiracy could have possibly occurred. Motion at 4–8. But using the internet to meet your conspirators and then negotiating about the terms of the conspiracy is completely plausible (indeed, it likely happened here) and is not at all a defense to the conspiracy itself. More importantly, just because a deal was negotiated, does not mean the parties were not negotiating a deal to commit fraudulent transfer. *See Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673, 675 (Colo. App. 1999) ("liability may be established for civil conspiracy even where only lawful acts were performed if the purpose or goal is unlawful."). As Judge Hegarty stated during the December 23rd Discovery Conference, "sophisticated fraud schemes" are often carried out in a way that appears on the surface to be a perfectly normal situation.

While Plaintiffs could elaborate, this is not a summary judgement motion, and as Judge Hegarty told HRM Defendants already in the December 23rd hearing, the Court "[does not] decide factual disputes in discovery." At minimum, this is a heavily disputed issue that must be decided after all of the evidence is gathered (via a full efficient discovery process). Judge Sweeney's Standing Order Regarding Federal Rule of Civil Procedure 56 Motion clearly states that "where there are obvious disputes as to material facts, summary judgment motions merely burden courts and impose unnecessary costs

on the parties." The basic factual disputes here do not entitle HRM Defendants to summary judgment nor does the Motion show anything to indicate their likelihood of success after more discovery. Moreover, HRM Defendants only argue their "evidence" disproves fraud and conspiracy claims. But this case is also about negligence, trespass, and other claims alleged in the complaint. HRM Defendants' Motion is silent on those claims.

### C.    Delay Would Prejudice Plaintiffs and Putative Class Members.

Each day added to Plaintiffs' effort to resolve this suit is another day they are harmed. In its ruling on the Motions to Dismiss, this Court recognized Plaintiffs have alleged "concrete, actual injuries." ECF 90 at 7. Plaintiffs and the putative class members continue to be harmed by dangerous and trespassory wells and related equipment that block their access to and use of their land, cause aesthetic injury, expose them to unhealthy gasses and pollutants, and lower property values. Compl. ¶¶ 60–73, 151–59, 173, 205, ECF 4. HRM Defendants' proposal will delay the litigation and require duplicative costly discovery.

If the Motion is granted, it is highly likely that the class certification motion would be delayed for many more months.[6] On the other hand, if the Court denies HRM

---

[6] HRM Defendants' proposed date of July 31 for their summary judgment motion (Motion at 2) is undermined because at the recent hearing, counsel acknowledged that if their preparation takes more time, they will ask to further delay that deadline. More importantly, because of the clear factual disputes that exist and the extensive discovery still necessary in this case, the likely denial of early summary judgment motions would delay class certification for many more months and result in duplicative and inefficient discovery in what the HRM Defendants propose would be a second bifurcated discovery phase.

Defendants' Motion here, any party could move for summary judgment as early as they are ready. *See Klassen v. SolidQuote LLC*, 2023 WL 5497865, at *3 (D. Colo. Aug. 23, 2023) (denying request for discovery bifurcation and stating "there is nothing to stop Defendants from targeting their discovery to [specific] issues…and filing an early dispositive motion on that basis.").

It is unfair and prejudicial to Plaintiffs for HRM Defendants to suddenly change their position now to delay class certification and accelerate summary judgment, while evading discovery that would aid in creating a complete record. To fully develop the record, Plaintiffs may need other remedies to compel production of key documents. And Plaintiffs have been operating under the current schedule—preparing to proceed with class certification while simultaneously advancing discovery that supports the merits of their claims and allows assessment of whether additional defendants must be named.

## IV.    HRM DEFENDANTS' PROPOSAL IS INCONSISTENT WITH THE RULE, ATYPICAL, AND INEFFICIENT

### A.    Rule 23 Requires an Early Decision on Class Certification.

Rule 23 is a procedural rule that binds the parties and the Court. It provides that class certification should be decided "[a]t an **early** practicable time after a person sues…." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). HRM Defendants' proposal is inconsistent with that Rule. It is not an "early practicable time" to wait until after HRM Defendants' summary judgment motion to just begin class related discovery and then decide class certification.

The 2003 change in the language of Rule 23 that HRM Defendants raise (Motion at 11) from "as soon as practicable after commencement of an action" to "at an early

practicable time" was a recognition that "[t]ime may be needed to gather information necessary to make the certification decision." *See* Fed. R. Civ. P. 23, 2003 Advisory Committee Notes. Further, "[a]lthough an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial…[so] it is appropriate to conduct controlled discovery into the 'merits,'…relevant to making the certification decision on an informed basis." *Id.* There was no wholesale reversal to decide merits before class certification.

### B.    The Proposed Bifurcation Is Atypical, Inefficient, and Costly.

HRM Defendants' discovery bifurcation request is atypical because when a case is bifurcated, the norm is to resolve class issues ***before*** merits issues. [7] Courts that find exceptions to that norm do so based on case-specific facts that do not exist here. HRM Defendants cite inapposite unpublished or out-of-circuit cases for their bifurcation argument. Motion at 12–13. *Rivera v. Exeter Finance Corporation*, directly undermines their Motion. In *Rivera*, discovery about "the class action requirements of Fed. R. Civ. P. 23" was permitted in their "Phase One Discovery." 2016 WL 374523, at *2. HRM Defendants ask for no class related discovery in their proposed phase one. *Rocha v. Twilleger* was not about discovery bifurcation. 2011 WL 4048789, at *3 (D. Colo. Sept. 12, 2011) (granting in part and denying in part plaintiff's motion to compel). In *Boulter v.*

---

[7] Even when done in the order consistent with the directive of Rule 23, bifurcation of discovery is the exception not the rule. *See, e.g., Marshall v. Grubhub Inc.*, 2022 WL 1055484, at *3 (N.D. Ill. Apr. 5, 2022) ("because bifurcation of discovery risks additional delay, it has remained the exception and not the rule.") (internal quotation marks omitted).

*Noble Energy, Inc.*, the defendant was going to file an **accelerated** motion for summary judgment on the **specific** issue of contractual liability towards the named plaintiffs. 2020 WL 13568320, at *1, *4 (D. Colo. Nov. 16, 2020). HRM Defendants' next case, *Brittingham v. Cerasimo, Inc.*, 2008 WL 5156645 (N.D. Ind. 2008), had flawed reasoning, which is why another case several years later declined to follow it. *See Quinn v. Specialized Loan Servicing, LLC*, 321 F.R.D. 324, 327 (N.D. Ill. 2017) ("Supreme Court and Seventh Circuit cases decided after…*Bettingham* [sic][8] make clear that the 2003 amendments to Rule 23 did not disturb the general rule that the merits are to be addressed only after the issue of certification has been addressed."). In *Authors Guild, Inc. v. Google Inc.*, the defendant asked for resolution of a specific key defense that the court recognized "may carry some force." 721 F.3d 132, 134 (2d Cir. 2013). Here, HRM Defendants' purported defense—that there was no fraud because HRM Defendants did not know who Mr. Hoffman was prior to the transaction does not defeat Plaintiffs' seven claims against them. And *Pumputyte v. United Airlines, Inc.* was not procedurally similar to this case, as the court there was ruling on defendant's summary judgment motion. 2018 WL 1240314, at *5 (N.D. Ill. 2018).

Bifurcation of discovery would also be inefficient because it will inevitably lead to disputes over whether a question is beyond the scope of the current phase of discovery. *See Klassen*, 2023 WL 5497865, at *2 ("bifurcation may give rise to disputes over whether a particular discovery request relates to the merits or to class certification") (internal

---

[8] This court misspelled "Brittingham" as "Bettingham."

quotations and citation omitted). Courts in this District "are reluctant to bifurcate class-related discovery from discovery on the merits...because the distinction between class certification and merits discovery is murky at best and impossible to determine at worst." *Id.*; *see also* Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("Active judicial supervision may be required to achieve the most effective balance that expedites an informed certification determination without forcing an artificial and ultimately wasteful division between 'certification discovery' and 'merits discovery.'"). Bifurcation would cause significant duplication and expense. Deponents would be required to be presented twice during different phases, which increases costs for the parties that must conduct two depositions of the same person.

### C.   Bifurcation Is Unnecessary.

HRM Defendants' claim that class action discovery will be complex and time-consuming is not true.[9]  Plaintiffs' claims are based on long standing statutes and established common law principles. The existence of some limited disputes specifically relevant to the class question (which exist in nearly every class action) is not cause for bifurcation. This is a straightforward case relating to a single transaction that affects class members the same way—all were burdened by abandoned oil and gas wells and related equipment on their property. Extensive class related discovery is not required. Unlike *McEvoy v. Diversified Energy* (Motion at 14-15), the at-issue wells here are located in a

---

[9] If, after Plaintiffs have moved for class certification, and HRM Defendants have good cause to believe they need more discovery, they are free to petition the Court for more time to respond.

small, concentrated geographic area (largely in Adams and Weld counties). Here, the class members may be identified simply through tax rolls or other means,[10] and in fact, Plaintiffs have already produced many of the relevant property records to Defendants. Furthermore, as HRM Defendants pointed out, the mineral owners intervened in *McEvoy*, which they have not here and would be unlikely to given that the at-issue wells are all non-producing and have fallen into Colorado's Orphan Well Program. Motion at 14.

## V.    CONCLUSION

HRM Defendants have not carried their burden to show good cause to deviate from what they previously agreed to and the Court approved. Their merit argument is not only premature and inappropriate, but also wrong. They have not been at all diligent in seeking this proposal that prejudices Plaintiffs and leads to further disputes, delays, inefficiencies, and additional burdens for the Court. The Motion is mere delay. Plaintiffs ask the Court to deny the Motion and set a reasonable case management schedule. Due to the time lapsed by this Motion, Plaintiffs propose to extend their previously proposed deadlines by four weeks to: April 25, 2025 for the class certification motion; August 22, 2025 for the deadline to add parties and request punitive damages; October 24, 2025 for fact discovery cutoff; and March 20, 2026 for expert discovery cutoff.

Dated this 6th day of February, 2025, in Denver, Colorado.

*s/ Zigmas Polinauskas*
Christopher P. Carrington

---

[10] A statutory definition of "surface owner" provides guidance on this issue. *See* Colo. Rev. Stat. § 34-60-103(41) (2024) ("Surface owner" means any person owning all or part of the surface of land…as shown by the tax records of the county…or any person with such rights under a recorded contract to purchase.")

Zigmas Polinauskas
**RICHARDS CARRINGTON, LLC**
1444 Blake Street, Denver, Colorado 80202
Telephone: 303-962-2690
Email: chris@richardscarrington.com
      zigmas@richardscarrington.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2025, I electronically filed the foregoing
**PLAINTIFFS' RESPONSE TO HRM DEFENDANTS' MOTION TO MODIFY
SCHEDULING ORDER** with the Clerk of Court using the CM/ECF system which will
send notification of such filing to the following email addresses:

    Richard B. Benenson
    Justin L. Cohen
    Matthew C. Arentsen
    Robert P. Bacaj
    Max Porteus
    BROWNSTEIN HYATT FARBER SCHRECK, LLP
    rbeneson@bhfs.com
    jcohen@bhfs.com
    marentsen@bhfs.com
    rbacaj@bhfs.com
    mporteus@bhfs.com

    And via electronic mail:
    John Hoffman
    johnghoffman@icloud.com

                          */s/ Zigmas Polinauskas*
                          Zigmas Polinauskas