IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:24-cv-00823-CNS-CYC**

CINDY McCORMICK;
RONALD McCORMICK; and,
TRUPP LAND MANAGEMENT LLC,

    Plaintiffs,

v.

HRM RESOURCES, LLC,
HRM RESOURCES II, LLC,
HRM RESOURCES III, LLC,
HRM RESOURCES IV, LLC,
L. ROGER HUTSON,
TERRY PAPE,
PAINTED PEGASUS PETROLEUM, LLC, and
JOHN HOFFMAN,

    Defendants.

**HRM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO MODIFY SCHEDULING ORDER**

Defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson, and Terry Pape (collectively "HRM Defendants"), through undersigned counsel, submit the following Reply in Support of their Motion to Modify Scheduling Order ("Motion") (ECF No. 96). For the reasons outlined in the Motion and below, the Court should grant the Motion.[1]

## I. INTRODUCTION

The Court should exercise its discretion to bifurcate the case and put summary judgment before class certification because it will promote efficiency, fairness, and conservation of the parties' and judicial resources. The undisputed evidence negating Plaintiffs' fraud theory, the novelty of the claims, the lack of demonstrated prejudice to Plaintiffs, and the complexity of class certification all support this request. These factors significantly outweigh any of Plaintiffs' purported reasons to deny the Motion.

## II. LEGAL STANDARD

To begin, Plaintiffs present a misleading picture of the good cause standard. The courts in *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230 (10th Cir. 2014), *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684 (D. Colo. 2000), *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979 (10th Cir. 2019), and *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000 (10th Cir. 2018) enumerated *some* factors to consider

---

[1] Plaintiffs suggest that Defendant John Hoffman may not actually support this Motion because he "argued in Court that his priority is to have the litigation proceed as expeditiously as possible." (Resp. at 4, n.3.) To be clear, Mr. Hoffman joins in the HRM Defendants' requests in the Motion, which he stated was his position in a conferral with the HRM Defendants. Mr. Hoffman has not changed or withdrawn that position. And in any event, resolving the merits of this case before addressing class certification will be the quickest potential way to dispose of this case.

1

when assessing good cause, including diligence, learning new information, and prejudice. But in all of these cases, the court discussed the diligence inquiry in the context of movant showing that the "scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch*, 771 F.3d at 1240; *Medtronic, Inc.*, 194 F.R.D. at 687; *Tesone*, 942 F.3d at 988; *Husky Ventures, Inc.*, 911 F.3d at 1020.

The inability to meet scheduling deadlines is plainly not at issue here. As the HRM Defendants explained in the Motion, Judge Hegarty *stayed* the deadline to file a class certification motion and ordered the parties to contact chambers within 14 days of a ruling on the Motion to Dismiss to "discuss and reset case deadlines[.]" (ECF No. 80.) In other words, there are no set scheduling deadlines to be met, and thus the diligence inquiry is not relevant here. Moreover, courts may find good cause for bifurcation where other facts support it, like, as is the case here, where bifurcation will promote efficiency and the conservation of judicial resources. *See, e.g.*, *Deleon v. Time Warner Cable LLC*, No. CV 09-2438 AG (RNBx), 2009 WL 10674767, at *2 (C.D. Cal. Nov. 2, 2009) (bifurcation appropriate because resources on class discovery would be saved if plaintiff's individual claims failed on summary judgment).

### III.  THERE IS GOOD CAUSE TO BIFURCATE DISCOVERY

  A.  <u>The HRM Defendants Were Not Aware of All of the Evidence Supporting Their Motion Until Recently.</u>

Even assuming that diligence and learning new information are relevant factors, they favor the HRM Defendants. The timeline here is important. Plaintiffs essentially argue that because the HRM Defendants collected documents in July 2024 and produced, among other documents, the *seven documents* cited in the Motion by

2

September 2024 (Resp. at 3), the HRM Defendants must have had a full grasp of *all of* the evidence by October 2024 to assess whether bifurcation made sense here. Not so.

First, as Plaintiffs admit, the HRM Defendants produced the large majority of their documents in December 2024. Unless Plaintiffs are suggesting that the HRM Defendants reviewed and then sat on documents for months (which is not the case),[2] this data point supports the notion that the HRM Defendants are relying on new information. And just because the specific documents the HRM Defendants cite in their Motion were produced earlier does not mean that no other subsequently produced documents are relevant to their bifurcation and summary judgment analysis, or that the HRM Defendants had a full picture of the evidence in October 2024.

Indeed, this case was filed in March 2024, and the parties focused for months on briefing a complex Motion to Dismiss and Motion to Stay Discovery in April and May 2024, which involved additional briefing for a sur-reply requested by Plaintiffs. Only after the Court ruled on the Motion to Stay Discovery in May did the parties begin engaging in a comprehensive review and production of documents. Thus, when the Court entered the initial Scheduling Order in early May 2024, the HRM Defendants had not collected

---

[2] Without evidence, Plaintiffs assert that the metadata in the HRM Defendants' production shows that their counsel reviewed the documents months before they were produced in December. (Resp. at 7.) Plaintiffs are wrong. First, the metadata does not show when the HRM Defendants' counsel reviewed the documents. Second, the HRM Defendants' counsel reviewed the thousands of documents produced in December in the several weeks leading up to the production and not months before. Third, it makes no sense that the HRM Defendants would deliberately delay in producing documents that disprove Plaintiffs' claims. Rather, the HRM Defendants collected thousands of documents, searched and reviewed these documents, and then produced over 7,000 documents across 7 rolling productions (as is typical in complex class actions)—with most of the documents being produced in December.

3

or reviewed many documents. When Judge Hegarty told the parties in October 2024 to come back after the Motion to Dismiss decision to reset deadlines, that effectively paused all discovery deadlines. So now it is as if the parties are at the initial scheduling conference, except now the parties have the benefit of discovery to inform their position.

While the HRM Defendants have been collecting documents throughout this case, they and their counsel—because of the press of other matters in the case—did not review and produce what they view as the primary documents until December 2024. Put simply, it takes time to gain a thorough understanding of the evidence in a case and make assessments of one's chances on summary judgment. That is especially true when the case turns on evidence from six years prior.[3] As Plaintiffs and this Court are well aware, the entire purpose of discovery is for the parties to learn and develop their understanding of the evidence. That does not and cannot happen right away. In fact, the HRM Defendants' diligence is evidenced by the fact that they took their time to review the documents, understand the facts, and sufficiently assess their chances on summary judgment so that they could come to a reasonable belief that bifurcation would be an efficient and logical manner in which to proceed with this case.

The cases Plaintiffs cite are not on point; indeed, they do not even deal with bifurcation of merits and class discovery. In *Tesone*, the court upheld denial of the plaintiff's request to amend the scheduling order and amend her complaint ten months

---

[3] While the HRM Defendants obviously remembered that this was not a fraudulent transaction, they cannot be expected to recall the individual documents and communications exchanged during this arm's-length deal from six years ago. And those documents and communications prove that there was no fraud here. That is why they collected and reviewed the evidence before thoughtfully making this bifurcation request.

4

after the amendment deadline. 942 F.3d 979. The court found that the plaintiff did not show that the deadlines could not be met despite her diligent efforts and that the plaintiff was aware of the facts on which the amendment was based *eight months* before moving to amend her pleadings. *Id.* at 990-91. And in *Husky Ventures*, which again involved a missed deadline, the court upheld denial of a motion for leave to amend counterclaims because the party knew of the underlying conduct to support its counterclaims but failed to raise its claims timely. 911 F.3d at 1019-21. Here, the HRM Defendants have missed no deadline. And in any event, they have more than an adequate explanation for any "delay" in raising their bifurcation request: they produced 6,378 documents out of 7,969 total documents in December (only one month before their initial request for bifurcation). Further, since the Motion to Modify Scheduling Order was submitted in October, they have had the benefit of digesting *all of their documents* and diligently assessing their chances on summary judgment, especially taking into account the Motion to Dismiss decision, which was issued just one month ago.

Finally, Plaintiffs accuse the HRM Defendants of "refus[ing] to produce many of the documents Plaintiffs requested" and "continu[ing] to withhold responsive documents[.]" (Resp. at 3, 7.) While there are remaining discovery disputes between the parties, Plaintiffs omit a few key details. First, the parties are in the middle of the conferral process on these disputes, including negotiating search terms related to one request, as Judge Hegarty *instructed the parties to do*. Second, while these discovery disputes may relate to Plaintiffs' negligence theory, they do not relate to fraud—they are about ARO calculations, general financial information, ECMC communications, and due

5

diligence for the wells before the P3 transaction. Plaintiffs do not dispute that the HRM Defendants have already produced all of the evidence that could be related to their fraud theory: the diligence file for the P3 transaction and all documents, communications, and text messages exchanged between the HRM Defendants, P3, and John Hoffman.

### B. The Evidence Supports the HRM Defendants' Belief that They Will Prevail on Summary Judgment.

The evidence produced to date supports the HRM Defendants' belief that they have a strong chance of winning on summary judgment. To be clear, the HRM Defendants are not "ask[ing] the Court to draw any conclusions about what the evidence does or does not show," as Plaintiffs suggest. (Resp. at 8.) What the HRM Defendants are asking the Court to do is consider the HRM Defendants' potential for winning on summary judgment (given that no evidence supports Plaintiffs' fraud claim), and the fact that Plaintiffs' claims are novel, as factors favoring bifurcation here. Several courts have done the same. *See, e.g.*, *Pumputyte v. United Airlines, Inc.*, No. 16 C 4868, 2018 WL 1240314, at *5 (N.D. Ill. 2018) ("Because [a] claim can quickly be shown to be groundless, it makes sense to skip certification and proceed directly to the merits" (cleaned up).); *Thomas v. UBS AG*, 706 F.3d 846, 849 (7th Cir. 2013) (discussing that it "may make sense" to proceed to the merits before class certification because the suit can quickly be shown to be groundless and "deciding whether to certify a class can take a long time"); *Deleon*, at *1–2 (allowing bifurcation and noting that "Defendant thinks that Plaintiff's individual claims will be dismissed on summary judgment, and resources can be saved by avoiding class issues and resolving the individual claims at the outset").

Plaintiffs have not brought forth any evidence that supports their conspiracy or

6

fraud theories. All Plaintiffs are able to muster in support of these theories is that "using the internet to meet your conspirators . . . is completely plausible" and "likely happened here." (Resp. at 9.) For one, the website where P3 and the HRM Defendants became acquainted is not some dark web chatroom, but an industry-standard, third-party auction website that facilitates arms' length transactions. And Plaintiffs ignore the fact that the HRM Defendants have already produced *all* of the diligence documents for the transaction *and all* communications with P3, including text messages. If there was a conspiracy (even one where the conspirators met on the internet), it would be evident in those documents. It is not. In short, Plaintiffs' theory at this point boils down to a silent conspiracy. Of course, the parties can fight this out on summary judgment.[4] But the fact that Plaintiffs have no evidence to support their theory strengthens the argument that the summary judgment fight should happen before class certification.

Finally, Plaintiffs claim that this case is "also about negligence, trespass, and other claims[.]" (Resp. at 10.) True, but fraud is the crux of Plaintiffs' case—just look at the very first sentence in the Complaint: "This case concerns a massive fraud[.]" (Compl.

---

[4] While Plaintiffs acknowledge that "this is not a summary judgment motion," and claim (without citing to any authority) that it is improper for the HRM Defendants to submit evidence to the Court at this stage, they also claim that the HRM Defendants did not submit enough evidence to "meet[] their burden" on summary judgment. (Resp. at 8–9.) Plaintiffs cannot have it both ways. The HRM Defendants do not need to prove their summary judgment arguments now, nor have they submitted all of the evidence that would support their summary judgment motion. For example, the parties have yet to take depositions. To be clear, the HRM Defendants also believe the evidence precludes Plaintiffs' other claims, and plan to move for summary judgment on all claims. The HRM Defendants have merely presented a small selection of documents as examples of why Plaintiffs' fraud theory (which this case is mostly about) is unsupported—to which Plaintiffs have presented no counterexamples.

7

¶ 1.) If the fraud and conspiracy claims were gone, this would be a much different case with different issues to be addressed, including on class certification. The *Deleon* court considered this very issue:

> Here, bifurcation is appropriate. If the case is bifurcated and Defendant moves for summary judgment, Plaintiff's individual claims will fail completely, fail in part, or survive completely. With bifurcation, if Plaintiff's claims fail completely, resources that would've been expended on class discovery will be saved. If Plaintiff's claims fail in part, the scope of discovery will be narrowed and resources will be saved. And if they survive completely, legal issues surrounding Plaintiff's theories will be clarified.

*See Deleon*, at *2. This Court should likewise bifurcate because even if some of Plaintiffs' claims survive summary judgment, bifurcation will promote efficiency.

   C. <u>Plaintiffs Have Not Shown that They Would Suffer Prejudice.</u>

Plaintiffs do not provide any strong arguments for why they would suffer actual prejudice, arguing generally that Plaintiffs "continue to be harmed" and that bifurcation will "delay the litigation and require duplicative costly discovery." (Resp. at 10.) Here, there will be minimal duplicative discovery. The HRM Defendants acknowledge that there is overlap between merits and class discovery, and are willing to complete any overlapping discovery along with merits-only discovery in the first stage of bifurcation, leaving only class discovery afterward. And, as Plaintiffs recognize, the parties are still conferring about merits discovery disputes, so a delay of class certification would allow both parties to focus on completing merits discovery. "[I]n light of a lack of demonstrated incurable prejudice," the Court should find that "principles of efficiency lead to the conclusion that discovery should be bifurcated[.]" *Boulter v. Noble Energy, Inc.*, No. 20-cv-00861-WJM-KLM, 2020 WL 13568320, at *1, *4 (D. Colo. Nov. 16, 2020).

8

### D. Bifurcation Is Warranted Under Rule 23, Especially Because Class Discovery Will Be Complex.

Rule 23 provides that a class certification decision should occur at an "early practicable time," which allows courts broad discretion to determine how a case will proceed. *See, e.g.*, *Thomas v. UBS AG*, 706 F.3d 846, 849 (7th Cir. 2013) (emphasizing that "early is often not practicable" when it comes to class certification); Newberg and Rubenstein on Class Actions § 7:8 (6th ed.) (describing rule change to "an early practicable time" language as intended to give courts more time to address certification); *see also* Fed. R. Civ. Proc. 42(b) (granting courts broad discretion to bifurcate proceedings for convenience, to avoid prejudice, or to expedite and economize).

The bifurcation requested here is both permitted and encouraged by the Federal Judicial Center and the Manual for Complex Litigation. For example, the Federal Judicial Center Pocket Guide for Judges states, "Given the flexibility in the rules, the most efficient practice is to rule on motions to dismiss or for summary judgment before addressing class certification." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, at 9 (3d ed. 2010). Likewise, the Manual for Complex Litigation states that "[t]he court may rule on motions pursuant to Rule 12, Rule 56, or other threshold issues before deciding on certification," emphasizing that "[p]recertification rulings frequently dispose of all or part of the litigation," and "[e]arly resolution of [merits] questions may avoid expense for the parties and burdens for the court and … minimize use of the class action process for cases that are weak on the merits." Manual for Complex Litigation, 4th, § 21.133.

Because class discovery will be complex, there is even more reason to assess

9

dispositive motions first. Plaintiffs argue that class discovery will not be complex because their claims are "based on long standing statues and established common law principles" (Resp. at 14), but that directly contravenes their own admission that their legal theory is novel (*see* Compl. ¶ 149). Class certification here will be anything but straightforward for many of the reasons presented in *McEvoy v. Diversified Energy Co.*, No. 5:22-CV-171 (N.D. W. Va.), which this Court recognized bears similarities to this case when it cited *McEvoy* in the Motion to Dismiss Order (ECF No. 90 at 11). The Court will need to address many of the complex issues in *McEvoy*, like title issues, surface use agreements, mineral interests, and real property interests. (*See* Mot. at 14–15.) Plaintiffs do not dispute that, and instead argue that they are right and the HRM Defendants are wrong on these class issues. But that is what the class certification process is for: to fight about potential individual issues and other issues that may prevent a class from being certified. And as much as Plaintiffs would like to argue that this "single transaction" (which involved hundreds of wells) affected likely hundreds of class members the same way (Resp. at 14), that is very likely not the case.

For these reasons, there is good cause to allow discovery and dispositive motions on the merits to "take place before submerging the parties in an ocean of class discovery." *Deleon*, at *1; *see also Boulter*, at *1, *4 (D. Colo. Nov. 16, 2020) (holding that bifurcation will "balance the twin considerations of allowing Plaintiffs' lawsuit to proceed to discovery while doing so in the most efficient way for all parties").

**IV.    CONCLUSION**

For these reasons and those in the Motion, the Court should grant the Motion.

DATED February 13, 2025.

*/s/ Matthew C. Arentsen*

Richard B. Benenson, #32566
Justin L. Cohen, #44811
Matthew C. Arentsen, #45021
Max Porteus, #56405
Madeleine L. Tayer, NY Bar #5683545
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202
Phone: 303-223-1100
Fax: 303-223-1111
Email: marentsen@bhfs.com
         jcohen@bhfs.com
         mporteus@bhfs.com
         mtayer@bhfs.com

*Attorneys for Defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson and Terry Pape*

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2025, I electronically filed a true and correct copy of the foregoing **DEFENDANTS HRM RESOURCES, LLC, HRM RESOURCES II, LLC, HRM RESOURCES III, LLC, HRM RESOURCES IV, LLC, L. ROGER HUTSON AND TERRY PAPE'S REPLY IN SUPPORT OF THEIR MOTION TO MODIFY SCHEDULING ORDER** via the CM/ECF system which will send notification of such filing upon all counsel of record. I further certify that I electronically served a true and correct copy of the foregoing upon John Hoffman, the pro se defendant.

Christopher P. Carrington
Zigmas Polinauskas
Richards Carrington, LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 962-2690
Email: chris@richardscarrington.com
   zigmas@richardcarrington.com

Camille Sippel
ClientEarth USA, INC.
4192 Marcasel Avenue
Los Angelos, CA 90066
Phone: 605-397-7951
Email: csippel@clientearth.org

Scott C. Borison
Borison Firm LLC
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Phone: 301-620-1016
Email: scott@borisonfirm.com

John Stevens Rossiter, Jr.
ClientEarth USA, Inc.
501 Santa Monica Boulevard, Suite 510
Santa Monica, CA 90401
Phone: 925-890-1306
Email: jayrossiter5@gmail.com

*Counsel for Plaintiffs*

John Hoffman
3201 Bayshore Drive
La Porte, TX 77571
Phone: 713-962-0708
Email: johnghoffman@icloud.com

*Pro se Defendant*

                              */s/ Kathleen M. Stehling*
                              Kathleen M. Stehling, Paralegal