**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:24-cv-00823-CNS-CYC**

CINDY McCORMICK;
RONALD McCORMICK; and,
TRUPP LAND MANAGEMENT LLC,

      Plaintiffs,

v.

HRM RESOURCES, LLC,
HRM RESOURCES II, LLC,
HRM RESOURCES III, LLC,
HRM RESOURCES IV, LLC,
L. ROGER HUTSON,
TERRY PAPE,
PAINTED PEGASUS PETROLEUM, LLC, and
JOHN HOFFMAN,

      Defendants.

---

**HRM DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

---

<u>**TABLE OF CONTENTS**</u>

**Page**

I.      INTRODUCTION ................................................................. 1

II.     FACTUAL BACKGROUND ................................................. 1

III.    LEGAL STANDARDS........................................................ 3

IV.     ARGUMENT ..................................................................... 4

        A.     Plaintiffs Have Failed to Satisfy the Requirements of Rule 23(a)............... 4

               Plaintiffs fail to prove numerosity or ascertainability........................ 4

               Plaintiffs fail to prove commonality ................................................. 5

               Plaintiffs fail to prove typicality ....................................................... 6

               Plaintiffs fail to prove adequacy...................................................... 9

        B.     Plaintiffs Have Failed to Satisfy the Requirements of Rule 23(b)(2). ........ 12

               Plaintiffs fail to meet the Specificity Requirement for
               cohesiveness ................................................................. 13

               Plaintiffs fail to meet the Non-Tailored Relief Requirement........... 17

        C.     Plaintiffs Have Failed to Satisfy the Requirements of Rule 23(b)(3). ........ 18

               Individualized issues predominate over common questions ......... 18

               A class action is not superior ....................................................... 24

V.      CONCLUSION.................................................................. 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. WPX Prod. Prods., LLC*,
    317 F.R.D. 169 (D.N.M. 2016) ................................................................ 6

*Ademiluyi v. PennyMac Mortg. Inv. Trudt Holdings*,
    2015 WL 575362 (D. Md. Feb. 10, 2015) ................................................. 11

*Andrews v. Andrews*,
    160 Fed. App'x 798 (10th Cir. 2005) ....................................................... 15

*Bano v. Union Carbide Corp.*,
    361 F.3d 696 (2d Cir. 2004) .............................................................. 16, 17

*Barnes v. Dresser, LLC*,
    2023 WL 4980240 (W.D. La. Aug. 3, 2023) ............................................ 24

*Black v. Occidental Petrol. Corp.*,
    69 F.4th 1161 (10th Cir. 2023) ...................................................... 3, 19, 24

*Bodner v. Oreck Direct, LLC*,
    2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) .......................................... 7, 8

*CMI Roadbuilding, Inc. v. SpecSys, Inc.*,
    2024 WL 4256709 (W.D. Okla. Sept. 20, 2024) ...................................... 15

*CO Craft, LLC v. Grubhub Inc.*,
    2023 WL 3763525 (D. Colo. June 1, 2023) ............................................. 18

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .................................................................. 18, 22, 24

*Cunningham v. Vivint, Inc.*,
    2022 WL 2291669 (D. Utah June 24, 2022) ........................................... 11

*D.B.U. v. Trump*,
    349 F.R.D. 228 (D. Colo. 2025) .............................................................. 15

*Doe v. MG Freesites, LTD*,
    707 F. Supp. 3d 1157 (N.D. Ala. 2023) ................................................... 23

*English v. Griffith*,
    99 P.3d 90 (Colo. 2004) ........................................................................ 21

*Fisher v. United States*,
    69 Fed. Cl. 193 (Fed. Cl. 2006) ............................................................ 11

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
    304 F.R.D. 601 (D. Colo. 2015) ............................................................ 19

*Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*,
    573 F.3d 947 (10th Cir. 2009) ................................................................ 6

*Healey v. Murphy*,
    2009 WL 6613209 (D. Mass. Jan. 14, 2009) ........................................ 10

*Hoery v. United States*,
    64 P.3d 214 (Colo. 2003) ...................................................................... 20

*Hunter v. Romero*,
    2021 WL 11634479 (D. Colo. June 8, 2021) ......................................... 15

*Kartman v. State Farm Mut. Auto. Ins.*,
    634 F.3d 883 (7th Cir. 2011) ................................................................. 17

*Kelley v. Mid-Am. Racing Stables, Inc.*,
    139 F.R.D. 405 (W.D. Okla. 1990) .................................................... 9, 10

*Menocal v. GEO Grp., Inc.*,
    882 F.3d 905 (10th Cir. 2018) ................................................................. 6

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ...................................................... 14, 17

*N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*,
    710 F. Supp. 3d 1090 (D. Utah 2023) ................................................ 8, 14

*Navelski v. Int'l Paper Co.*,
    244 F. Supp. 3d 1275 (N.D. Fla. 2017) ................................................... 6

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
    923 F.3d 779 (10th Cir. 2019) .............................................................. 22

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ................................................................................ 16

*Prantil v. Arkema France S.A.*,
  2022 WL 1570022 (S.D. Tex. May 18, 2022).................................................... 20, 22

*In re Propulsid Prods. Liab. Litig.*,
  *208 F.R.D. 133 (E.D. La. 2002)* ............................................................... 16

*Quinn v. Nationwide Ins.*,
  281 F. App'x 771 (10th Cir. 2008).......................................................... 3, 7

*Ramos v. Banner Health*,
  2019 WL 646082 (D. Colo. Jan. 29, 2019)......................................................... 9, 10

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002)........................................................... 9, 10

*Seabron v. Am. Fam. Mut. Ins.*,
  2013 WL 3713652 (D. Colo. July 16, 2013) ...................................................... 21, 22

*Sherman v. Trinity Teen Sols., Inc.*,
  84 F.4th 1182 (10th Cir. 2023).................................................................. 23

*Shook v. Bd. of Cnty. Comm'rs*,
  543 F.3d 597 (10th Cir. 2008)........................................................... 12, 13

*Shook v. El Paso Cnty.*,
  386 F.3d 963 (10th Cir. 2004)................................................................... 3

*Steering Comm. v. Exxon Mobil Corp.*,
  461 F.3d 598 (5th Cir. 2006)................................................................... 25

*Swanson v. Mountain View*,
  2008 WL 786315 (D. Colo. Mar. 20, 2008) ........................................................ 4

*Tarrify Props., LLC v. Cuyahoga Cnty.*,
  37 F.4th 1101 (6th Cir. 2022).................................................................. 24

*B.K. ex rel. Tinsley v. Snyder*,
  922 F.3d 957 (9th Cir. 2019)................................................................... 15

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)........................................................................... 20

*Trevizo v. Adams*,
  455 F.3d 1155 (10th Cir. 2006) ................................................................ 6

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ........................................................................... 18, 19

*United States v. Jud. Watch, Inc.*,
    266 F. Supp. 2d 1 (D.D.C. 2002) ............................................................ 11

*In re Urethane Antitrust Litig.*,
    768 F.3d 1245 (10th Cir. 2014) .............................................................. 22

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ................................................................ 4

*Vickery v. Evelyn V. Trumble Living Tr.*,
    277 P.3d 864 (Colo. App. 2011) ............................................................ 20

*Vreeland v. Jacobson*,
    2025 WL 560068 (D. Colo. Feb. 20, 2025) ............................................ 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................. 3, 5

*Wallace B. Roderick Rev. Living Tr. v. XTO Energy, Inc.*,
    725 F.3d 1213 (10th Cir. 2013) ........................................................... 3, 19

*Wesley v. Snap Fin. LLC*,
    339 F.R.D. 277 (D. Utah 2021) ................................................................ 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................. 15, 16

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................... 24

**Statutes**

C.R.S. §§ 38-8-102, -105 ............................................................................ 20

28 U.S.C. § 1332(d)(5)(B) ............................................................................. 4

**Rules**

Fed. R. Civ. P. 23 .................................................................... 1, 2, 3, 24

Fed. R. Civ. P. 23(a) ................................................... 3, 4, 5, 9, 10, 12, 18

Fed. R. Civ. P. 23(b)(2) ......................................... 2, 4, 12, 13, 15, 17, 18

v

Fed. R. Civ. P. 23(b)(3) ................................................................ 2, 4, 18, 24, 25

Fed. R. Civ. P. 23(g)......................................................................... 10

Fed. R. Civ. P. 65(d)...................................................................... 12, 13

**Other Authorities**

Rev. Proc. 92-59, 1992-2 C.B. 411 (1992)............................................. 11, 12

Defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson, and Terry Pape (collectively "HRM Defendants"), through undersigned counsel, submit the following Response in Opposition to Plaintiffs' Motion for Class Certification filed May 9, 2025 ("Motion" or "Mot.") [Dkt. 107].

## I.    INTRODUCTION

Plaintiffs' putative class action centers on the status of orphaned oil and gas wells in Colorado. Plaintiffs would have this Court believe the sky is falling. It is not. All of the putative class members' wells are in Colorado's Orphaned Well Program ("OWP"), which is administered by Colorado's Energy and Carbon Management Commission ("ECMC"). That means the wells are being routinely monitored by experts for health and safety risks, prioritized for plugging based on their status and risk profile, and then plugged and abandoned with the surface land being reclaimed and restored. Indeed, the well on two of the named Plaintiffs' property has already been plugged and abandoned, and their land will be reclaimed and restored by ECMC. In their Motion, Plaintiffs merely recite black letter class action law, and then conclude that they satisfy Rule 23's requirements for class certification. But Plaintiffs do not meet Rule 23's rigorous evidentiary and legal standards, relying almost entirely on self-serving declarations and speculative assertions. Class certification thus is not appropriate here, and the Court should deny the Motion.

## II.    FACTUAL BACKGROUND

Plaintiffs—Cindy McCormick and Ronald McCormick ("McCormicks") and Trupp Land Management LLC ("Trupp")—are landowners with orphaned wells ("Wells") on their properties that were last operated by Defendant Painted Pegasus Petroleum ("P3"), which

1

went bankrupt in 2021. (Compl. [Dkt. 4] ¶¶ 102, 120.) Defendant HRM Resources II, LLC ("HRM II") and an entity operated by Defendant Terry Pape owned the Wells before P3, and sold them to P3 in a 2018 transaction that involved about 200 other Wells ("P3 Transaction"). (*Id.* ¶¶ 10, 78.) The Complaint centers on an unsubstantiated conspiracy whereby the HRM Defendants allegedly offloaded the Wells onto P3, which was allegedly "structured to go bankrupt" to avoid plugging costs. (*Id.* ¶¶ 101–102.)[1] Plaintiffs move under Rules 23(b)(2) and 23(b)(3) to certify a class of all "surface owners in…Colorado where such surface land has or had an oil or gas Well that was transferred by HRM to P3," as well as surface owners who do not have a Well on their property but have "unreclaimed land, related equipment, structures, or pits that remain on the lands." (Mot. at 2.) Plaintiffs seek (for all class members) individualized personal and property-related damages, and an injunction to make the HRM Defendants clean up the Wells. (*Id.* ¶ 158.)

While Plaintiffs satisfy none of Rule 23's requirements, three facts are particularly damning for them. ***First***, all the Wells are indisputably in ECMC's exclusive control in the OWP. (ECMC Decl. ¶¶ 7, 15; Compl. ¶¶ 54, 120.) The injunctive relief Plaintiffs seek related to the Wells (i.e., plugging, abandoning, remediating, and reclaiming ("PA&R")) raises serious separation-of-powers and safety concerns, as it would require this Court to oversee ECMC (a state agency) and interfere with the OWP. (*See* ECMC Decl. ¶¶ 7, 15, 18.) Moreover, ECMC has confirmed that it will PA&R all the class members' Wells and indeed already has plugged some Wells—including the McCormicks'. (*Id.* ¶¶ 15–17.)

---

[1] Plaintiffs allege trespass; conspiracy to commit trespass; aiding and abetting trespass; violation of Colorado's Uniform Fraudulent Transfer Act ("CUFTA"); conspiracy to violate CUFTA; unjust enrichment; and negligence. (Compl. ¶¶ 151–209.)

**Second**, the Wells are subject to different contracts with distinct provisions that vary Plaintiffs' rights, including limiting the damages that can be sought related to Well operations. (*See infra* nn.6, 20; Exs. A–C.[2]) Though Plaintiffs' Motion is silent on this, it is highly likely that every other Well in the putative class is governed by some type of agreement that is specific to the Well or landowner. (*See* Ex. D (Carleton Rpt.) pp. 8–10.)

**Finally**, Plaintiffs have repeatedly recognized the "unique" nature of their properties and that the damages associated with each Well are (1) specific to each class member and (2) will require individualized expert analysis to calculate the damages suffered as a result of the properties' alleged diminution of value and loss of use. (*See infra* n.22.) Plaintiffs have not yet disclosed who this expert will be, nor have they offered any method, formula, or model for calculating these varying damages across the class.

## III.    LEGAL STANDARDS

Rule 23 has a "strict burden of proof," *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013), that cannot be "relax[ed] or shift[ed]…to liberally construe Rule 23's requirements," *Black v. Occidental Petrol. Corp.*, 69 F.4th 1161, 1174 (10th Cir. 2023). "[C]ertification is proper only if the trial court is satisfied, after *a rigorous analysis*" that Rule 23(a)'s prerequisites are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (emphasis added). The party seeking class certification has the burden to prove that Rule 23(a) is satisfied, *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004), and must provide *evidence*, not "speculation," *Quinn v. Nationwide Ins.*, 281 F. App'x 771, 776 (10th Cir. 2008). They also must provide

---

[2] "Ex." citations in this brief refer to exhibits attached to the Declaration of M. Arentsen.

evidence satisfying the requirements of Rule 23(b)(2) ("the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief…is appropriate") and/or Rule 23(b)(3) (i.e., predominance and superiority).

## IV.    ARGUMENT

### A.    Plaintiffs Have Failed to Satisfy the Requirements of Rule 23(a).

**Plaintiffs fail to prove numerosity and ascertainability.** Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. There must be "evidence of established, ascertainable numbers constituting the class," and the impracticability of joinder must be shown and cannot be speculative. *Swanson v. Mountain View*, 2008 WL 786315, at *2 (D. Colo. Mar. 20, 2008).

Plaintiffs claim that class members are "identifiable via objective criteria, namely whether they own the surface land where the Wells are located, which can be readily established through tax records."[3] (Mot. at 6.) But the only "evidence" Plaintiffs submit to support numerosity is a list of supposed putative class members identified by non-expert Devin Dickey. Plaintiffs attached Mr. Dickey's declaration to their Motion, and he attempted to identify the putative class members via a tax record search—which he admitted was a flawed method—based on properties with either a Well or oil and gas equipment that appeared related to the Well on adjoining property. (Ex. E (Dickey Tr.) at 68:16–69:10.) Critically, Mr. Dickey did not perform a title search, which would have been

---

[3] Plaintiffs also suggest that because the HRM Defendants removed this action under the Class Action Fairness Act ("CAFA"), which requires at least 100 putative class members, 28 U.S.C. § 1332(d)(5)(B), that such removal establishes numerosity under Rule 23(a)(1). Plaintiffs are wrong. *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267–68 & n.12 (11th Cir. 2009) (CAFA numerosity distinct from class certification numerosity).

the only method that would have caught the numerous errors in Mr. Dickey's class list.[4]
(Dickey Decl. [Dkt. 107-7] at Ex. 2; Ex. D (Carleton Rpt.) pp. 4–5.) Even more alarming is
Mr. Dickey's admission that he included alleged surface owners in his list who only have
oil and gas equipment on their properties (no Well), which Plaintiffs *assumed* was related
to a Well on an adjacent property, even though they have no idea if that is the case.[5] (Ex.
E (Dickey Tr.) at 60:7–17, 61:1–19.) Plaintiffs have not done the work necessary to meet
the requirements of numerosity or ascertainability under Rule 23(a)(1).

   **Plaintiffs fail to prove commonality.** Commonality requires proof of a "common
contention" that is "capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350.
Commonality exists only when "a classwide proceeding [can] generate common *answers*
apt to drive the resolution of the litigation." *Id*. "Dissimilarities within the proposed
class…have the potential to impede the generation of common answers." *Id*.

   Plaintiffs offer no evidence to prove commonality and instead summarily conclude
that commonality is met because their claims "depend on the same facts and legal
analysis." (*See* Mot. at 7–8.) That is not enough for class certification. *Wal-Mart*, 564 U.S.
at 347, 350 (requiring *evidence* that "common answers" will "drive the resolution" of the
lawsuit). Indeed, the evidence shows that Plaintiffs cannot prove commonality. As
explained in detail in the predominance section (*infra* p. 18–24), likely all putative class

---

[4] The HRM Defendants' expert, Elaine Carleton, did perform title searches on a sample
of the putative surface owners identified by Mr. Dickey, and Ms. Carleton identified
multiple instances where Mr. Dickey's alleged surface owners are not actually surface
owners based on the title search, and that someone else owns the land. (Ex. D (Carleton
Rpt.) pp. 4–5.)
[5] Ms. Carleton explains why one cannot assume equipment near a well is related. (Ex. D
(Carleton Rpt.) pp. 10–12.) And Mr. Dickey agrees. (Ex. E (Dickey Tr.) at 111:16–112:14.)

members' Wells are subject to some contract that varies obligations,[6] requiring Plaintiffs to identify each applicable contract and the Court to examine each contract to determine whether Plaintiffs' claims are contractually barred or limited.[7]

Additionally, because each property and Well are unique, dissimilarities across the class impede the generation of common answers. *See Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 261 (D.N.M. 2016) (no commonality where factual and legal differences pervaded among class members); *Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006) (no commonality where plaintiffs presented "divergent fact patterns"). The named Plaintiffs apparently agree, as they (and their counsel) have recognized that their injuries differ across the class and that they need expert testimony to determine the extent of their alleged damages.[8] Plaintiffs needed to provide that expert analysis in support of their Motion, but they did not. *See Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1309 (N.D. Fla. 2017) (plaintiffs used expert testimony and models to prove commonality).

**Plaintiffs fail to prove typicality.** Typicality requires that "the claims or defenses of the representative parties are typical" of those of the class. *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018). The named plaintiffs must provide *evidence*, not

---

[6] These contracts are likely surface use agreements ("SUAs"), surface damage agreements ("SDAs"), or plugging agreements that control the rights and obligations of the parties, successors, and assigns. (*See* Ex. D (Carleton Rpt.) pp. 8–10; Exs. A–C, P.)

[7] For example, these contracts implicate the economic loss rule: a "party suffering only economic loss from the breach of a[] contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.'" *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009).

[8] *See, e.g.*, Ex. F (C. McCormick Tr.) at 141:22–142:1, 289:24–290:4, 332:3–10; Ex. G (R. McCormick Tr.) at 35:13–15, 83:10–17, 92:10–21, 95:1–6, 235:11–15; Ex. H (Trupp Tr.) at 53:21–54:6, 257:11–260:12, 299:1–9, 301:19–304:2.

"speculation," that their claims are typical. *Quinn*, 281 F. App'x at 776. Without a single

citation to evidence, Plaintiffs state that "typicality…is met" because "all Named Plaintiffs

and Class members own surface land that is adversely affected by the transaction

between HRM and P3." (Mot. at 9.) But even if Plaintiffs cited evidence for this bald

assertion, when—as here—the named plaintiffs are "ignora[nt] regarding the nature of

th[e] action, the facts alleged, and the theories of relief against [the] defendant," the court

"[should] not conclude that [the plaintiff] has met the threshold typicality…requirement[.]"

*Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007).

Cindy McCormick does not know the nature of the lawsuit, facts alleged, or

theories of relief asserted.[9] Ronald McCormick knows even less about the lawsuit[10] and

admitted that he relies entirely on his wife, Ms. McCormick, to do the work for them as

named Plaintiffs.[11] Mr. Trupp fares no better.[12] Mr. Trupp also admitted that he "didn't want

---

[9] Ms. McCormick stated over *120 times* that she did not know the answer to the HRM Defendants' counsel's questions, including questions about (1) the number of Wells on her land (Ex. F (C. McCormick Tr.) at 74:18–25); (2) P3's alleged scheme to go bankrupt (*id.* at 41:11–42:19); (3) who owns the Well on her land (*id.* at 75:1–5); and (4) the P3 Transaction (*id.* at 77:14–20). These topics form the core allegations of the Complaint (and there are dozens more material questions that Ms. McCormick could not answer), yet Ms. McCormick knows nothing about them.

[10] For example, Mr. McCormick responded "I don't know" over *200 times* in his deposition, and does not know who the defendants are, whether a complaint has been filed in this case, whether he ever read the Complaint, or what the Complaint alleges. (*See, e.g.*, Ex. G (R. McCormick Tr.) at 7:22–25, 26:21–27:18, 35:10–12, 51:2–8, 57:16–22, 60:2–7, 127:5–128:2, 131:9–133:13, 133:14–23, 243:11–24, 245:14–16.)

[11] Mr. McCormick stated several times that he relies on his wife for everything with respect to this lawsuit, and that Ms. McCormick is the one who handles the lawsuit. (*See, e.g.*, *id.* at 21:15–24, 52:5–21, 128:3–129:10, 130:19–22, 131:5–8, 134:5–21, 163:19–25, 175:21–24, 292:16–18.)

[12] Mr. Trupp admitted that he only "vaguely" believes he reviewed the Complaint, did not help draft it or suggest edits to it, does not know if he agrees with the allegations in the

7

to be [a named Plaintiff] from the very beginning, but a lawyer convinced [him] to," and that he would rather have someone else be a named plaintiff (Ex. H (Trupp Tr.) at 96:9–14, 236:20–237:2.) Each of the named Plaintiffs also admitted that their attorneys are in control of and are directing this lawsuit, they are involved only because their attorneys solicited them, and "virtually all of [their] knowledge regarding this matter has come from [their] attorneys."[13] *Bodner*, 2007 WL 1223777, at *1.

The McCormicks' claims are also not typical of the putative class because the Well on their property has already been plugged and ECMC plans to reclaim their land by the end of 2026. (ECMC Decl. ¶ 16.) "[A] proposed class representative is not 'typical' [if he] is subject to a unique defense that is likely to become a major focus of the litigation." *N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*, 710 F. Supp. 3d 1090, 1102 (D. Utah 2023).[14] Because the McCormicks' Well has already been plugged and will soon be remediated— but other Wells in the P3 transaction have not been plugged or remediated yet (*see* Ex. D (Carleton Rpt.) at pp. 5–7)—the HRM Defendants will defend against the McCormicks' claims by arguing the PA&R remedies the McCormicks seek under their CUFTA, trespass, and negligence claims have already been (or will soon be) achieved, the cost of which will be borne by ECMC, not the McCormicks. (ECMC Decl. ¶ 8.) The McCormicks will

---

Complaint, and does not know what relief he is seeking in this case. (Ex. H (Trupp Tr.) at 58:22–59:15, 60:2–8, 85:4–9, 122:10–15, 126:18–127:6, 130:7–131:1.)

[13] *See, e.g.*, Ex. F (C. McCormick Tr.) at 26:127:2, 28:1–20, 32:13–33:8, 54:5–7, 89:12–23, 110:3–113:4, 118:22–119:5, 230:20–231:4, 300:3–302:4, 323:24–324:10; Ex. G (R. McCormick Tr.) at 292:12–18; Ex. H (Trupp Tr.) at 36:4–38:6, 62:4–15, 64:19–22, 100:15–18, 101:13–18, 115:18–22, 130:14–131:1.

[14] This is because the named plaintiff "might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 293 (D. Utah 2021).

devote time to these issues at the expense of putative class members. Further, only Cindy McCormick has alleged emotional distress damages; Mr. McCormick and Trupp have not, rendering Ms. McCormick atypical even of the other named Plaintiffs, let alone the putative class members.[15] (Ex. I at 4; Ex. J at 5–8.) Typicality is not satisfied.

**Plaintiffs fail to prove adequacy.** The class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

Plaintiffs are not adequate representatives. Plaintiffs' lack of knowledge relating to their claims and allegations renders them inadequate class representatives. *Ramos v. Banner Health*, 2019 WL 646082, at *4 (D. Colo. Jan. 29, 2019) (named plaintiffs inadequate where they lacked "meaningful knowledge" of defendant's conduct, alleged statutory violations, and basic factual allegations); *Kelley v. Mid-Am. Racing Stables, Inc.*, 139 F.R.D. 405, 410 (W.D. Okla. 1990) (named plaintiffs inadequate where they had "an almost total lack of personal knowledge of their claims"). Though Plaintiffs at times articulated a rudimentary understanding of certain aspects of the lawsuit, could name some defendants (though often mispronounced their names (*see, e.g.*, Ex. G (R. McCormick Tr.) at 7:22–25)), and Ms. McCormick read the Complaint, that is not enough

---

[15] Assessment of Ms. McCormick's alleged emotional distress is a highly individualized inquiry, likely requiring medical records and testimony from medical professionals.

to demonstrate adequacy. *See Ramos*, 2019 WL 646082, at *4 (named plaintiff's ability to identify a defendant, articulate generic basis for claim, and confirmation that he read multiple versions of the complaint were insufficient to establish adequacy). And, critically, class counsel cannot substitute their own theories to prove the claims for Plaintiffs. *Kelley*, 139 F.R.D. at 409–10. That is exactly what happened here. *See supra* pp. 7–8.

Plaintiffs have also not shown that class counsel are adequate representatives. Rule 23(a)(4) requires that class counsel fairly and adequately protect the interests of the class, which turns on whether any conflicts exist and whether counsel will prosecute the action vigorously. *Rutter*, 314 F.3d at 1187–88. In appointing class counsel, courts must consider (i) the work done to investigate potential claims; (ii) counsel's experience handling class actions, other complex litigation, and the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. F.R.C.P. 23(g). Courts also may consider any other matter pertinent to counsel's ability to adequately represent the class. *Id.*

First, the declarations submitted by the three firms seeking to be class counsel suggest that only one has any experience as class counsel: Scott Borison. (*See* Borison Decl. [Dkt. 107-1] ¶ 10.) The lawyers from the other firms—Richards Carrington and ClientEarth—do not appear to have such experience. (*See* Rossiter Decl. [Dkt. 107-2]; Carrington Decl. [Dkt. 107-3].) Even if counsel demonstrates that they can adequately represent their clients and are well-versed in the relevant issues of law, being "well-versed in class action litigation is needed as well." *Healey v. Murphy*, 2009 WL 6613209, at *10 (D. Mass. Jan. 14, 2009). The attorneys from Richards Carrington and ClientEarth are

not well-versed in class action litigation and thus do not meet the adequacy requirement.

And while Mr. Borison has prior class counsel experience, he has not been sufficiently involved in this case and has not yet shown that he will commit sufficient resources to vigorously represent the class.[16] "[L]eisurely and limited efforts" do not meet the vigorous standard for class certification. *Cunningham v. Vivint, Inc.*, 2022 WL 2291669, at *12 (D. Utah June 24, 2022). There is also no evidence that Mr. Borison "has the resources necessary to litigate on behalf [the] class." *Fisher v. United States*, 69 Fed. Cl. 193, 201 (Fed. Cl. 2006); *see also Ademiluyi v. PennyMac Mortg. Inv. Trudt Holdings*, 2015 WL 575362, at *8 (D. Md. Feb. 10, 2015) (lacking adequacy where "no information about what resources [lawyer] may call upon…to aid…prosecution of this case").

Beyond its lack of experience, ClientEarth's status as a 501(c)(3) charitable organization (*see* Ex. K) also casts doubt on its ability to adequately represent the putative class, especially because Plaintiffs (and the putative class) have significant financial interests at stake in this lawsuit. (*See* Compl. ¶¶ 49, 158–59, 169, 177, 183, 191, 198, 208–09.) "[C]haritable organizations that litigate must establish that its litigation is in furtherance of a charitable purpose. To do so, they generally adhere to guidance set out in Rev. Proc 92-59 for public interest law firms." *United States v. Jud. Watch, Inc.*, 266 F. Supp. 2d 1, 13 n.16 (D.D.C. 2002). Under Revenue Procedure 92-59, litigation by a public interest law firm "does not normally extend to direct representation of litigants in actions

---

[16] Mr. Borison has not appeared in any conferral calls, has not been involved (other than being copied) in conferral emails, has only appeared telephonically (if at all) at discovery hearings, and did not meet the McCormicks in person until the day of their depositions (Ex. F (C. McCormick Tr.) at 230:20–231:4); Ex. G (R. McCormick Tr.) at 132:6–12.)

between private persons where the financial interests at stake would warrant representation from private legal sources." Rev. Proc. 92-59, 1992-2 C.B. 411 (1992). ClientEarth's representation of Plaintiffs does not further a charitable purpose—it furthers counsel's and Plaintiffs' financial interests (*See* Ex. I.)

**B.    Plaintiffs Have Failed to Satisfy the Requirements of Rule 23(b)(2).**

Plaintiffs seek to certify a class under Rule 23(b)(2), which requires that the elements of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." F.R.C.P. 23(b)(2). Rule 23(b)(2) imposes two independent but related requirements: (1) the defendants' actions or inactions must be based on grounds generally applicable to all class members, and (2) the final injunctive relief must be appropriate for the class as a whole. *Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008).

To assess whether these requirements have been met, Tenth Circuit courts analyze "the relationship between the class, its injuries, and the relief sought" and "require that a class must be amenable to uniform group remedies." *Id.* "Put differently, Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification." *Id.*

To prove cohesiveness, (1) the classwide injunctive relief must satisfy the limitations of Rule 65(d), namely that the relief "state its terms specifically; and describe in reasonable detail…the act or acts restrained or required" ("Specificity Requirement"); and (2) relief specifically tailored to each class member must not be necessary to correct

the defendants' allegedly wrongful conduct ("Non-Tailored Relief Requirement"). *Id.* If "redressing the class members' injuries requires time-consuming inquiry into individual circumstances…of class members, the suit could become unmanageable and little value would be gained in proceeding as a class." *Id*. "[I]ndividual issues cannot be avoided simply by formulating an injunction at a stratospheric level of abstraction." *Id.*

Plaintiffs devote just one paragraph to Rule 23(b)(2), arguing that they seek to remedy Defendants' actions via injunctive and declaratory relief that need not differentiate between class members. (Mot. at 12.) But Plaintiffs do not try to explain or support their assertion, perhaps because they cannot. Nor do Plaintiffs explain the actions required for the injunctive relief they seek. Simply put, Plaintiffs do not come close to demonstrating the requisite cohesiveness for certifying a Rule 23(b)(2) class.

**Plaintiffs fail to meet the Specificity Requirement for cohesiveness.** Plaintiffs do not state the specific terms of the injunctive relief they seek or describe the acts required in reasonable detail.[17] They have barely even attempted to formulate an injunction—even at "a stratospheric level of abstraction." *Shook*, 543 F.3d at 604. All that the HRM Defendants know about Plaintiffs' injunctive relief plan is what is in the Complaint's barebones relief section. (*See* Compl. at 36 (requesting (1) declaration of "continuing trespass such that Plaintiffs are entitled to an injunction or other relief directing

---

[17] Unsurprisingly, the named Plaintiffs could not articulate this in their depositions; aside from claiming that the HRM Defendants should fund the injunctive relief, Plaintiffs could not explain what exact injunctive relief they wanted for the class or whom they wanted to perform and/or oversee that injunctive relief, and how. (*See, e.g.*, Ex. F (C. McCormick Tr.) at 142:13–143:3, 143:12–144:20; Ex. G (R. McCormick Tr.) at 44:22–45:23, 183:8–185:23; Ex. H (Trupp Tr.) at 53:10–20, 122:5–19, 125:24–128:6, 130:7–131:9.)

Defendants to abate the trespass"; (2) "reimpos[ition of] the plugging, reclamation, and remediation obligations associated with the fraudulently transferred wells back onto transferor HRM"; and (3) and injunction "directing Defendants to abate the trespass").)

Plaintiffs have not proposed any way to accomplish this vague injunctive relief, which alone bars certification. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 346 (S.D.N.Y. 2002) (proposed injunction to remediate contaminated wells did not meet specificity requirement because it was too broad); *N. Brevard Cnty.*, 710 F. Supp. 3d at 1115 (denying Rule 23(b)(2) certification where single paragraph in motion lacked reasonably particular detail as to injunctive relief sought).

That Plaintiffs have put no thought into this element is especially concerning given the complexities attendant to the relief they seek: the PA&R of roughly 200 Wells by the HRM Defendants (wells that are already set to be reclaimed by ECMC). That effort would require the approval of non-party ECMC—which currently manages the Wells and oversees their PA&R—to remove the Wells from the OWP. (ECMC Decl. ¶¶ 15, 18.[18]) It would then involve a long, complex process, which would require figuring out what work needs to be done for each Well (which are at different stages in the clean-up process with ECMC); prioritizing that work; obtaining authority from each landowner to work on the Well on their property; and engaging experts to conduct safety and environmental inspections—all before anyone could even begin PA&R work. (*See id.* ¶¶ 7, 11–14.)

<u>First</u>, Plaintiffs' failure to acknowledge the initial giant hurdle they need to

---

[18] The Declaration of ECMC Director J. Murphy, filed along with this brief, sets out the contours, funding, and history of the OWP, as well as relevant rules, ECMC's process and directive for managing orphaned wells, and the status and plan for the Wells.

overcome—that they need ECMC's (a non-party state agency) acquiescence and oversight to accomplish any of the injunctive relief they seek—dooms their Rule 23(b)(2) class. When, as here, a proposed injunction requires action from a non-party (i.e., ECMC), it "heightens the hurdle that must be cleared to obtain the injunction: not only must the motion advance considerations satisfying the traditional injunction factors…but those considerations must also constitute the appropriate circumstances" to justify issuing the injunction. *Andrews v. Andrews*, 160 Fed. App'x 798, 800 (10th Cir. 2005). Because Plaintiffs have not advanced any such considerations, the inquiry should end there. *CMI Roadbuilding, Inc. v. SpecSys, Inc.*, 2024 WL 4256709, *6 (W.D. Okla. Sept. 20, 2024).

But even if Plaintiffs had done so, courts routinely refuse to grant injunctive relief where such an order would require the action of a non-party state agency. *See Vreeland v. Jacobson*, 2025 WL 560068, at *6 n.5 (D. Colo. Feb. 20, 2025) (denying TRO where plaintiff sought restraining order against CDOC); *Hunter v. Romero*, 2021 WL 11634479, *5 (D. Colo. June 8, 2021) (noting court has no jurisdiction over nonparty agency). Not only would the state agency need to be a party (which ECMC is not), there would need to be allegations that the state agency has violated federal law (which Plaintiffs do not allege, nor could they). *See, e.g.*, *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (affirming "single, indivisible injunction" ordering defendant state agency to abate constitutional and Medicaid Act violations); *D.B.U. v. Trump*, 349 F.R.D. 228, 241 (D. Colo. 2025) (citing *Tinsley* for the same proposition).

Second, such an injunction is not in the public interest, given ECMC's careful prioritization of orphaned wells (ECMC Decl. ¶ 11). *Winter v. Nat. Res. Def. Council, Inc.*,

555 U.S. 7, 24 (2008) (courts "pay particular regard for the public consequences" in employing injunctions). Plaintiffs do not acknowledge the practical impact of the relief they seek in reimposing the PA&R obligations onto the HRM Defendants (Compl. p. 36), which will disrupt ECMC's thorough orphaned well procedure (ECMC Decl. ¶¶ 11–14.). Plaintiffs seek to take the Wells out of ECMC's purview, where they are already prioritized for PA&R based on a well-defined ranking system (some of which have already been plugged and will be remediated by next year) (*id.* ¶¶ 11, 16–17, 20), and supplant ECMC's process with whatever injunctive process the Court may eventually order. Plaintiffs thus ask the Court to substitute its judgment for that of a state regulator specifically tasked with cleaning up orphaned wells, remove wells from its control, and force it to comply with whatever procedure the Court orders—all when it is a non-party. That is not a role the Court should play. *See In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 147 (E.D. La. 2002) (denying class certification where requested injunction would require court to "lead the scientific community in an area of medical science" where scientific community had not recommended it); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

ECMC has "neither been made a party to this lawsuit nor sought to intervene" and there is no indication that ECMC is "receptiv[e] to a[] [court] order…compelling work" on the Wells. *Bano v. Union Carbide Corp.*, 361 F.3d 696, 717 (2d Cir. 2004). Thus, if the HRM Defendants were ordered to PA&R the Wells, their "ability to comply" would depend on "permission from an entity that is not a party to this lawsuit" and that "cannot be subject"

to the Court's injunction.[19] *Id.* For these reasons alone, the injunctive relief Plaintiffs seek is impracticable. *See id.* Plaintiffs thus cannot prove the Specificity Requirement.

**Plaintiffs fail to meet the Non-Tailored Relief Requirement.** The relief here would also need to be specifically tailored to each class member, which defeats cohesiveness. As discussed *supra* pp. 8 and 16, some of the Wells have already been plugged (including the McCormicks' Well, which will be fully reclaimed this year or next); and every month this case progresses, more work will be completed by ECMC across the class. (*See* ECMC Decl. ¶¶ 15–16). As ECMC's declaration makes clear, myriad other obstacles stand in the way of the requested relief, which will require a specifically tailored process to, among other things, inspect each Well and related property, identify what work needs to be done to PA&R each site, figure out how to do that work, what approvals are required, and whether and how ECMC will monitor the process. (ECMC Decl. ¶¶ 7, 11–14.) This specifically tailored inquiry for each putative class member's property bars certification of a Rule 23(b)(2) class. *See In re Methyl*, 209 F.R.D. at 344 (no 23(b)(2) class based on "variances among class members" and "many obstacles" to order directing defendants to remediate wells where each site required investigation); *Kartman v. State Farm Mut. Auto. Ins.*, 634 F.3d 883, 893 (7th Cir. 2011) (no 23(b)(2) class where "[s]upervising compliance with the…injunction would be administratively challenging" and would require reinspecting class members' property).

---

[19] Additionally, of the HRM Defendants, only HRM Resources, LLC and HRM II are active operators (though both entities have been dissolved). Inactive operators cannot PA&R wells in the OWP, and active operators cannot PA&R wells without ECMC's permission. (ECMC Decl. ¶¶ 18–19.)

The relief would also require specific tailoring because each individual landowner should be allowed to opt out of (or at least weigh in on) the injunctive relief that will occur on *their property*. *See CO Craft, LLC v. Grubhub Inc.*, 2023 WL 3763525, at \*21–22 (D. Colo. June 1, 2023) (class members may weigh in on relief). Plaintiffs (and the Court) cannot assume that every landowner with a Well on their property wants the HRM Defendants and the Court to oversee the PA&R of their Wells. Surely many landowners want their Well PA&R by ECMC, as currently planned. So this issue would require individualized assessments to allow each landowner to make an informed decision on whether they want to opt out of the proposed class and allow ECMC to PA&R.

**C.**  **Plaintiffs Have Failed to Satisfy the Requirements of Rule 23(b)(3).**

Plaintiffs also seek to certify a damages class under Rule 23(b)(3). If the Rule 23(a) requirements are satisfied, a class action may proceed if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." F.R.C.P. 23(b)(3).

**Individualized issues predominate over common issues.** "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and requires courts to give "careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). It is "more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). It asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating,

individual issues." *Tyson Foods*, 577 U.S. at 453. In the Tenth Circuit, courts "characterize the issues in the case as common or not" and then "weigh which issues predominate." *Black*, 69 F.4th at 1175. "Common issues are those for which the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, classwide proof." *Id.* "Individual issues are those for which members of the proposed class will need to present evidence that varies from member to member." *Id.* "[P]redominance may be destroyed if individualized issues will overwhelm" common issues. *Wallace B. Roderick*, 725 F.3d at 1220.

Plaintiffs do not even attempt to characterize the issues as common or not (or "weigh which issues predominate"). Instead they simply conclude that predominance is satisfied because (1) the Wells were transferred as a package, rather than individually, and (2) the putative class members' claims all rely on "the circumstances around Defendants' transaction and the resulting trespass." (Mot. at 12–13.) Plaintiffs do not offer even a single piece of evidence in support of their argument: they recite black letter law on class certification and then conclude they have met the standard. (*Id.*) Considering it is Plaintiffs' burden to prove this element, such a failure is fatal to proving predominance.

The predominance inquiry "begins with the elements of the underlying cause of action." *Black*, 69 F.4th at 1175. Plaintiffs allege claims relating to trespass, CUFTA, unjust enrichment, and negligence.

For the trespass claims, Plaintiffs must prove "a physical intrusion upon the property of another without…proper permission." *Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003). A continuing trespass occurs when a person "fail[s] to remove a thing

tortiously placed on another's land." *Id.* at 218. Plaintiffs do not show any trespass-related damages across the class, and the nature of trespass is a factual, individualized inquiry. *See Prantil v. Arkema France S.A.*, 2022 WL 1570022, at *34 (S.D. Tex. May 18, 2022) (denying class certification for trespass claims because plaintiffs "cannot use common evidence to show that [defendant] physically, intentionally, and voluntarily entered each of their properties in a manner that injured them"). Here, Plaintiffs' counsel has said that they cannot estimate the damages for "trespass related harm" because that is "clearly within the ambit of expert analysis." (Ex. L (Hearing Tr.) at 151:9–18).) But Plaintiffs have offered no such expert analysis, and even if they did, it would be individualized.

The same is true of Plaintiffs' CUFTA and negligence claims. Plaintiffs will have to prove they and the putative class members have standing under CUFTA, which will require hundreds of mini-trials. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation."). Under CUFTA, Plaintiffs must also show that they are "creditors," the HRM Defendants are "debtors," and that a fraudulent transfer—as to Plaintiffs and the putative class—occurred. *See generally* C.R.S. §§ 38-8-102, -105. Plaintiffs and the putative class members further need to show that a fraudulent transfer "hindered or delayed [their] ability to collect what [the debtor] owed [them]." *Vickery v. Evelyn V. Trumble Living Tr.*, 277 P.3d 864, 869 (Colo. App. 2011). This will require an individualized assessment of damages for each class member to figure out what the HRM Defendants allegedly owed them, if anything. *See, e.g.*, *Seabron v. Am. Fam. Mut. Ins.*, 2013 WL 3713652, at *7 (D. Colo. July 16, 2013) ("If, to

make a prima facie showing…, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.").

The Court will also have to undertake individualized inquiries to determine what contractual rights or limitations (if any) each class member has, how those contracts account for PA&R obligations, and whether the claims can proceed despite those contracts. That is because most Wells have SUAs or SDAs that control the rights of the parties to those agreements and differ across the putative class.[20] The HRM Defendants only have a sampling of Well-related contracts, and they all create different rights and obligations, which would need to be examined in hundreds of mini-trials.

The negligence claim requires breach of a legal duty, causation, and damages. *English v. Griffith*, 99 P.3d 90, 93 (Colo. 2004). Negligence also requires proof that the defendant failed to act reasonably, which is inherently fact-specific as to each putative class member. *Seabron*, 2013 WL 3713652, at *9 (a defendant's reasonableness "is judged by the entire course of conduct between the parties"). "Given the extreme levels of individualized proof attendant to showing causation for [all] properties, [the causation]

---

[20] *See, e.g.*, Ex. A at 1 (SDA that discharges operator from claims arising out of occupancy of well site); Ex. B at 1 (SUA with provision that provides one-time payment as full and final settlement and satisfaction for detriment, depreciation, injury or damage of any nature that may occur as a result of operator's operations); Ex. C at 2 (SDA that provides for remediation as provided for by [ECMC] regulations). Additionally, all three named Plaintiffs either agreed or contemplated agreeing to a third party plugging the well on their property. (*See* Exs. M–N (agreement between McCormicks and Civitas); Ex. O (partially executed agreement between Randall Trupp and Carbon Shield).) It is very likely other putative class members did the same, which will require mini-trials. ECMC also executed an agreement with Civitas to plug certain orphaned wells, including the one on the McCormicks' property. (Exs. P–Q.) That is another complicating factor in certifying this class and ordering the relief Plaintiffs seek.

prong weighs heavily against predominance." *Prantil*, 2022 WL 1570022, at *31.

Lastly, "unjust enrichment claims are not appropriately certified for class treatment, as common questions will rarely, if ever, predominate." *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 304 F.R.D. 601, 611 (D. Colo. 2015). Plaintiffs' and the putative class members' unjust enrichment claims are no different, making class certification inappropriate.

Plaintiffs also did not—and cannot—provide a common method of measuring damages. Plaintiffs must provide "evidence of classwide damages," *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1258 (10th Cir. 2014), including "a single or common *method* that can be used to measure and quantify the damages of each class member," Newberg and Rubenstein on Class Actions § 12:4 (6th ed.). Whether through a methodology, formula, or model, damages must be measurable on a classwide basis to meet the predominance requirement. *See Comcast*, 569 U.S. at 34 ("[R]espondents' model falls far short of establishing that damages are capable of measurement on a classwide basis."). That is because "material differences in damages determinations will…destroy predominance if those individualized issues…overwhelm questions common to the class." *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019) (predominance satisfied where plaintiff "provided evidence that its expert can determine damages on a classwide basis through use of a model") (cleaned up).

Plaintiffs seek myriad damages for themselves and putative class members, including diminution in property values, loss of property use and enjoyment, home construction costs, emotional distress, trash disposal fees, PA&R costs, and lost opportunity damages. (Ex. I; Ex. F (C. McCormick Tr.) at 332:3–10.) Yet Plaintiffs did not

provide any damages methodology or other way of measuring classwide damages. In fact, the Motion is nearly silent on damages: Plaintiffs state in a footnote that "[d]amages between class members may vary and a difference in damages does not prevent class certification." (Mot. at 5, n.5.)[21] But, tellingly, Plaintiffs have repeatedly admitted that they cannot provide any damages methodology because the calculation is so individualized and complex that it will require expert analysis—which Plaintiffs have chosen not to conduct at this stage.[22] And even if the Court were to "create a fund from damages awarded against the Defendants" to be used to PA&R the Wells and "appoint a receiver" to administer that fund (Compl. at pp. 36–37), that would still require individual damages determinations not suitable for class certification because the Wells and surface lands are unique and are in different stages of PA&R. (ECMC Decl. ¶ 15; Ex. D (Carleton Rpt.)

---

[21] Plaintiffs cite two irrelevant cases to support this argument. (*Id.*) The plaintiffs in those cases sought to certify a class of people asserting claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *See Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1196 (10th Cir. 2023); *Doe v. MG Freesites, LTD*, 707 F. Supp. 3d 1157, 1183 (N.D. Ala. 2023). The TVPRA provides that victims can recover either actual damages *or statutory damages*. Thus, the plaintiffs there had quantified a damages amount that they had suffered. But no statutory damages are alleged here.

[22] Plaintiffs and their counsel admit that each class member's damages are (1) specific to each person and (2) require expert analysis to calculate. (*See, e.g.*, Ex. F (C. McCormick Tr.) at 141:22–142:1, 178:4–15, 286:12–19, 289:12–291:4, 293:24–294:15, 295:3–8; Ex. G (R. McCormick Tr.) at 35:10–15, 73:15–23, 86:2–89:24, 91:7–93:17, 97:1–99:1, 293:20–294:2; Ex. H (Trupp Tr.) at 54:2–10, 257:25–258:4, 258:20–260:12, 262:6–14, 299:1–5; Ex. L (Hearing Tr.) at 151:13–24 (stating PA&R costs and "loss of value" are "within the ambit of expert analysis"); *id.* at 152:22–25 (explaining that "economic analysis of…loss of use and marketability…of the property would be something that an expert does"); Ex. I at 1–6 (alleging damages in disclosures, which are unique to Plaintiffs and admitting that "Named plaintiffs are unable to quantify [their] loss-of-use related losses on their own and require expert analysis" and "Plaintiffs require expert assistance to estimate any damages that may be discovered as a result of the trespass on their lands"); Ex. J at 2–12 (interrogatory responses alleging unique damages requiring expert analysis).)

at pp. 5–7.[23]) The precise event that the predominance requirement is meant to prevent—hundreds of mini-trials—would need to occur here. Rule 23 does not merely impose a "pleading standard." *Black*, 69 F.4th at 1173. Plaintiffs have the burden and must support their position with evidence, which they have failed to do. *See Comcast*, 569 U.S. at 34.

**A class action is not superior.** Rule 23(b)(3) lists four non-exhaustive factors to consider in assessing superiority: (a) the class members' interests in individually controlling the prosecution of separate actions; (b) the extent of any litigation concerning the controversy already begun by class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not superior." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).

A class action is not superior for plaintiffs who have suffered property-related damages like diminution in value, loss of enjoyment, nuisance, and remediation costs because such damages are not "susceptible to a classwide assessment, and their availability will instead depend upon individualized, [p]laintiff-specific proof as to each element of the claimed damages." *Barnes v. Dresser, LLC*, 2023 WL 4980240, at *6 (W.D. La. Aug. 3, 2023); *see also Tarrify Props., LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1106 (6th Cir. 2022) (no superiority where "shifting facts and circumstances about the value of each property" would likely "dominate" proceedings). As in *Tarrify*, the Court here would need to "conduct an individualized, fact-intensive…process to determine the fair market

---

[23] Mr. Trupp agrees. (*See* Ex. H (Trupp Tr.) at 301:19–304:2.)

value for each property," as Plaintiffs are seeking damages for loss of property value. *Id.*

Plaintiffs do not meaningfully address Rule 23(b)(3)'s four superiority factors. As to the **first factor**, Plaintiffs argue that no class member would want to individually sue the HRM Defendants because they "would have to examine the entire transaction of around 200 wells, and the thousands of documents related to it, even though that plaintiff may only be burdened by a single Well[.]" (Mot. at 14.) Plaintiffs do not explain why this is so, nor do they explain why an individual plaintiff could obtain only a "small recover[y]." (*Id.*) Plaintiffs do not address the **second factor**. As to the **third factor**, Plaintiffs argue that a class action will concentrate all relevant litigation in a single forum. (*Id.*) But the HRM Defendants are not aware of any other threatened or pending lawsuits. Plaintiffs also do not address the **final factor**: "the likely difficulties in managing a class action." F.R.C.P. 23(b)(3). As discussed *supra* pp. 22–24, myriad difficulties will arise if this case proceeds as a class action because it will devolve into hundreds of mini-trials to calculate individualized damages. *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604–05 (5th Cir. 2006) ("[T]he predominance of individual issues relating to the plaintiffs' claims for…damages detracts from the superiority of [a] class action."). Again, Plaintiffs have repeatedly told the HRM Defendants and this Court that they have no damages methodology or other measure of classwide damages, that the damages are unique to each property and putative class member, and that each putative class member will require expert analysis to calculate any damages. A class action thus is not superior.

## V.    CONCLUSION

The Court should deny Plaintiffs' Motion for Class Certification.

DATED June 30, 2025.

_/s/ Matthew C. Arentsen_
Richard B. Benenson, #32566
Justin L. Cohen, #44811
Matthew C. Arentsen, #45021
Max Porteus, #56405
Madeleine L. Tayer, NY Bar #5683545
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202
Phone: 303-223-1100
Fax: 303-223-1111
Email: marentsen@bhfs.com
        jcohen@bhfs.com
        mporteus@bhfs.com
        mtayer@bhfs.com

_Attorneys for Defendants HRM Resources, LLC, HRM_
_Resources II, LLC, HRM Resources III, LLC, HRM_
_Resources IV, LLC, L. Roger Hutson and Terry Pape_

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2025, I electronically filed a true and correct copy of the foregoing **HRM DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** via the CM/ECF system which will send notification of such filing upon all counsel of record. I further certify that I electronically served a true and correct copy of the foregoing upon John Hoffman, the pro se defendant.

Christopher P. Carrington
Ben Hudgens
Zigmas Polinauskas
Richards Carrington, LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 962-2690
Email: chris@richardscarrington.com
ben@richardscarrington.com
zigmas@richardcarrington.com

Scott C. Borison
Borison Firm LLC
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Phone:301-620-1016
Email: scott@borisonfirm.com

Camille Sippel
Setareh Homayoni
Benjamin Segal
ClientEarth USA, INC.
4192 Marcasel Avenue
Los Angeles, CA 90066
Phone: 605-397-7951
Email: csippel@clientearth.org
shomayoni@clientearth.org
bsegal@clientearth.org

John Stevens Rossiter, Jr.
ClientEarth USA, Inc.
501 Santa Monica Boulevard, Suite 510
Santa Monica, CA 90401
Phone: 925-890-1306
Email: jayrossiter5@gmail.com

*Counsel for Plaintiffs*

John Hoffman
3201 Bayshore Drive
La Porte, TX 77571
Phone: 713-962-0708
johnghoffman@icloud.com

*Pro se Defendant*

*/s/ Kate M. Meade*
Kate M. Meade, Paralegal

27