**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:24-cv-00823-CNS-CYC**

CINDY McCORMICK; RONALD McCORMICK; and TRUPP LAND MANAGEMENT
LLC,
      Plaintiffs,

v.

HRM RESOURCES, LLC, a Delaware limited liability company;
HRM RESOURCES II, LLC, a Delaware limited liability company;
HRM RESOURCES III, LLC, a Delaware limited liability company;
HRM RESOURCES IV, LLC, a Delaware limited liability company;
L. ROGER HUTSON, an individual; TERRY PAPE, an individual;
PAINTED PEGASUS PETROLEUM, LLC, a Texas limited liability company;
and JOHN HOFFMAN, an individual,
      Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

---

**<u>TABLE OF CONTENTS</u>**

**Page**

I.  INTRODUCTION………………………………………………………..   1

II.  THE PROPOSED CLASS SATISFIES RULE 23(A) REQUIREMENTS..   2

   A.  The Class meets numerosity and ascertainability under both HRM
      and Plaintiffs' proposed methodologies………………………………..   2

   B.  Commonality exists regarding the nature of Defendants'
      scheme……………………………………………………………………   3

      i.   Unidentified variations in contracts are no barrier to certification.   3

      ii.  Differences in damages are common and do not bar
         certification……………………………………………………………   4

   C.  The Class meets typicality……………………………………………   5

   D.  Named Plaintiffs are adequate………………………………………   7

   E.  Class Counsel is adequate……………………………………………   9

III.  THE CLASS SATISFIES RULE 23(b)(2)………………………………..   10

   A.  Plaintiffs' request for injunctive relief is sufficiently specific………….   11

   B.  ECMC's role does not preclude and public interest favors
      certification…………………………………………………………………...   12

   C.  Plaintiffs' injunction would not require tailored relief…………………   13

IV.  THE CLASS SATISFIES RULE 23(b)(3)………………………………..   14

   A.  Common Class questions predominate…………………………………   14

   B.  A Class action is superior………………………………………………   18

V.  CONCLUSION…………………………………………………………..   20

# TABLE OF AUTHORITIES

**Cases**                                                        **Page**

*Abraham v. WPX Production Productions, LLC,*
317 F.R.D. 169 (D.N.M. 2016)…………………………………………………  5

*Ademiluvi v. PennyMac Mortg. Inv. Trudt Holdings,*
2015 WL 575362 (D. Md. Feb. 10, 2015) ……………………………………  10

*Anderson Living Tr. v. Energen Res. Corp.,*
2019 WL 6618168 (D.N.M. Dec. 5, 2019) …………………………………..  4

*Andrews v. Andrews,*
160 F. App'x 798 (10th Cir. 2005)…………………………………………...  12

*Bano v. Union Carbide Corp.,*
361 F.3d 696 (2d Cir. 2004) …………………………………………………  13

*Barnes v. Dresser, LLC,*
2023 WL 4980240 (W.D. La., Aug. 3, 2023) ………………………………  18,19

*Black Lives Matter 5280 v. City & Cnty. of Denver,*
338 F.R.D. 506 (D. Colo. 2021) ……………………………………………  9

*Bodner v. Oreck Direct, LLC,*
2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ………………………………  6

*Bruzek v. Husky Oil Operations Ltd.,*
520 F. Supp. 3d 1079 (W.D. Wis. 2021) ……………………………………  5

*CMI Roadbuilding, Inc. v. SpecSys, Inc.,*
2024WL4256709 (W.D. Okla. Sept. 20, 2024) ………………………………  12,13

*CO Craft, LLC. v. Grubhub Inc.,*
2023 WL 3763525 (D. Colo. June 1, 2023) …………………………………..  14

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) …………………………………………………………  16,17

*D.B.U. v. Trump,*
349 F.R.D. 228 (D. Colo. 2025)……………………………………………  13

*Douglas Cnty. Fed'n v. Douglas Cnty. Sch. Dist. RE-1,*
325 F.R.D. 355 (D. Colo. 2018) …………………………………………….  9

*Fager v. CenturyLink Commc'ns, LLC,*
854 F.3d 1167 (10th Cir. 2016) ……………………………………………..  2

*Francisco v. Susano,*
525 F. App'x 828 (10th Cir. 2013) …………………………………………...  10

*Friedman v. Dollar Thrifty Auto. Grp., Inc.,*
304 F.R.D. 601 (D. Colo. 2015) …………………………………………….  16

*Gamboa v. KISS Nutraceuticals,*
2025 WL 1088066 (D. Colo. Apr. 2, 2025) …………………………………  7

*Gulick v. State Farm Mut. Auto. Ins. Co.,*
2025 WL 1262552 (D. Kan. Apr. 30, 2025)…………………………………  6

*Hunter v. Romero,*
2021 WL 11634479 (D. Colo. June 8, 2021)…………………………………  13

*In Re Integra Realty Res., Inc.,*
179 B.R. 264 (Bankr. D. Colo. 1995) ………………………………………  6

*In Re Oil Spill by Oil Rig Deepwater Horizon,*
295 F.R.D. 112 (E.D. La. 2013) …………………………………………….  5

*In re Propulsid Prods. Liab. Litig.,*
208 F.R.D. 133 (E.D. La. 2002) …………………………………………….  13

*In re Storage Tech. Corp. Sec. Litig.,*
113 F.R.D. 113 (D. Colo. 1986) …………………………………………...  9

*In re Urethane Antitrust Litig.,*
768 F.3d 1245 (10th Cir. 2014) …………………………………………...  16,17

*Kartman v. State Farm Mut. Auto. Ins. Co.,*
634 F.3d 883 (7th Cir. 2011) ………………………………………………  13

*Lopez v. Next Generation Constr. & Env't, LLC,*
2017 WL 10311220 (D. Colo. Feb. 10, 2017)…………………………………  2

*Lyall v. City of Denver,*
319 F.R.D. 558 (D. Colo. 2017) …………………………………………….  9

*McDonald v. Lab. Corp. of Am. Holdings,*
2024 WL 4513580 (M.D.N.C. Oct. 17, 2024)…………………………………  7

*Menocal v. GEO Grp., Inc.,*
320 F.R.D. 258 (D. Colo. 2017) …………………………………………    16

*In re Methyl Teriarty Butyl Ether Prods. Liab. Litig.,*
209 F.R.D. 323 (S.D.N.Y. 2002) …………………………………………    12

*Miller v. Crested Butte, LLC,*
549 P.3d 228 (Colo. 2024) …………………………………………...    3

*N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.,*
710 F. Supp. 3d 1090 (D. Utah 2023) …………………………………    6,11

*Naylor Farms, Inc. v. Chaparral Energy, LLC,*
923 F.3d 779 (10th Cir. 2019) …………………………………………    2, 17, 18

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984) ……………………………………………………...    13

*Pliego v. Los Arcos Mex. Rests., Inc.,*
313 F.R.D. 117 (D. Colo. 2016) …………………………………………    9

*Prantil v. Arkema France S.A.,*
2022 WL 1570022 (S.D. Tex. May 18, 2022)…………………………    14,15

*Ramos v. Banner Health,*
325 F.R.D. 382 (D. Colo. 2018) …………………………………………    8

*Redmond v. Bigelow,*
2014 WL 2765469 (D. Utah June 18, 2014)…………………………..    10

*Rose Nulman Park Found. ex. rel. Nulman v. Four Twenty Corp.,*
 93 A.3d 25 (R.I. 2014) …………………………………………………    12

*Seabron v. Am. Fam. Mut. Ins. Co.,*
2013 WL 3713652 (D. Colo. July 16, 2013)…………………………..    15

*Sherman v. Trinity Teen Sols., Inc.,*
84 F.4th 1182 (10th Cir. 2023) …………………………………………    4, 18

*Shook v. Bd. of Cnty. Comm'rs of Cnty. Of El Paso,*
543 F.3d 597 (10th Cir. 2008) …………………………………………    11

*Smith v. LifeVantage Corp.,*
341 F.R.D. 82 (D. Utah 2022) …………………………………………    4

*Steering Comm. v. Exxon Mobile Corp.,*
461 F.3d 598 (5th Cir. 2006) …………………………………………………………… 20

*Surowitz v. Hilton Hotels Corp.,*
383 U.S. 363 (1966) ………………………………………………………………. 7,8

*Tarrify Props., LLC v. Cuyahoga Cnty., Ohio,*
37 F.4th 1101 (6th Cir. 2022) …………………………………………………... 19

*Trevizo v. Adams*,
455 F.3d 1155 (10th Cir. 2006)…………………………………………………… 5

*Van v. LLR, Inc.,*
61 F.4th 1053 (9th Cir. 2023) ………………………………………………….. 4

*Vreeland v. Jacobson,*
2025 WL 560068 (D. Colo. Feb. 20, 2025) …………………………………….. 13

*Zinser v. Accufix Rsch. Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001) …………………………………………………… 19

**Rules**                                                                            **Page**

Fed. R. Civ. P. 23………………………………………………………………….. 2,10,
14,17

**Other Authorities**                                                                **Page**

2 Colo. Code Regs. (2018)………………………………………………………... 4

4 Newberg and Rubenstein on Class Action (6th ed.)……………............... 16,17

I.    INTRODUCTION

Knowing full well the dangers of unplugged wells, Defendants schemed to leave hundreds of them on surface owner's properties in order to duck cleanup responsibilities and dump the costs onto private landowners and the State. Now they argue that class-wide relief is inappropriate because the State was indeed forced to pick up the tab. The argument is as unpersuasive as it is perverse. This case is tailor-made for resolution on a class basis. Liability can be determined in a single stroke with respect to all purported Class members, and doing so in a single proceeding is the most just and efficient way to move forward.

HRM[1] makes three primary objections to class certification, while also raising speculative claims to evade accountability. None are persuasive. First, HRM argues the Class[2] cannot be certified because the Orphaned Well Program ("OWP") may eventually clean up Defendants' mess. But the OWP does not absolve HRM of responsibility for abandoning Wells and injuring surface owners, nor is there any assurance as to when or even if the OWP will address HRM's abandoned Wells. Second, HRM argues that contracts relating to the Wells create individualized issues that preclude certification. But those contracts are irrelevant to abandoned Wells. Third, HRM repeatedly argues that a class cannot be certified where Class members' damages are for different amounts. This argument—and the majority of HRM's brief—conflates cause and injury with the

---

[1] "HRM" refers collectively to HRM Defendants.
[2] Unless defined otherwise here, capitalized terms are defined the same as in Plaintiffs' Motion for Class Certification. ECF 107.

calculation of individual damage amounts; Courts regularly hold that differences in damages calculations do not prevent certification. *See, e.g., Lopez v. Next Generation Constr. & Env't, LLC*, 2017 WL 10311220, at *4 (D. Colo. Feb. 10, 2017) ("[T]he fact that damage calculations would require individualized inquiries does not defeat certification.") (citation omitted).[3] This litigation is ideally suited to proceed as a class action. Failure to certify the Class would leave Class members without a practical avenue to seek redress.

## II.    THE PROPOSED CLASS SATISFIES RULE 23(a) REQUIREMENTS

### A. The Class meets numerosity and ascertainability under both HRM and Plaintiffs' proposed methodologies.

Numerosity and ascertainability should not be in dispute. HRM's own expert[4] accurately identified over 40 members of the Class, *see* ECF 117 ("Resp.") Ex. D-2.1, whom she identified by sampling less than a third of the property records for the at-issue locations. *Id.* at 4-5. In other words, the parties agree the Class is substantially larger than the typical threshold for numerosity. *See* Mot. at 7.

HRM argues that use of tax records to identify class members is inappropriate because it may not be 100% accurate. Resp. at 4-5. As Plaintiffs explained, Colorado law, as accepted by the Tenth Circuit, states surface ownership is determined by tax records and are suitable for ascertaining a class. *See Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016) (affirming class certification where members were

---

[3] *See also Naylor Farms, Inc. v. Chaparral Energy*, LLC, 923 F.3d 779, 789 (10th Cir. 2019) ("[S]o long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately.").
[4] Plaintiffs learned of HRM's purported expert the same day HRM submitted its Response. Plaintiffs believe the report is inadmissible and intend to challenge it on various grounds.

identified via tax records). The Class is clearly ascertainable.[5]

**B. Commonality exists regarding the nature of Defendants' scheme.**

The parties agree that commonality is met when common answers will drive the resolution of the litigation. *See* Resp. at 5. That is the case here. A class action centered on questions related to Defendants' scheme to dump liabilities will resolve the question of liability with respect to all Class members in a single stroke. Refusing to address this central argument, HRM instead offers two red herrings: (1) surface use contracts, and (2) variation of damages between Class members.

*i.  Unidentified variations in contracts are no barrier to certification.*

HRM claims that "individualized inquiries [into] contractual rights or limitations" would be required (Resp. at 21), but points to minor variations between contracts[6] without explaining any impact on commonality. *See* Resp. at n.20. The contracts do not address the legal duties at issue; even if they did, they do not pose a barrier to class certification.

First, it is "settled precedent . . . that a party cannot discharge its obligation to perform a statutory duty by way of an exculpatory agreement." *Miller v. Crested Butte, LLC*, 549 P.3d 228, 235-36 (Colo. 2024). As the Court has acknowledged, operators have an obligation to plug and remediate their wellsites, and that duty is derived from both

---

[5] HRM also suggests Plaintiffs cannot identify what infrastructure was abandoned by Defendants. Resp. at 5. This is nonsense. The State has records of ownership and the Well-infrastructure have legally required signage of ownership.

[6] These contracts are surface owner agreements that govern land access during the drilling/operation of wellsites. They are typically entered into to avoid disputes when a mineral rights owner is routinely, legitimately accessing the surface of the estate to carry out drilling and production operations.

common law and statute. *See* ECF 90 at 13.[7]

Second, the two surface agreements HRM presented do not materially modify Plaintiffs' rights. Neither mention plugging and abandoning, nor the removal of equipment and reclamation of the lands after production ends. If contracts affecting such rights existed, it would be HRMs' burden to identify them and explain how they modify the rights of the Class members. *See, e.g.*, *Van v. LLR, Inc.*, 61 F.4th 1053, 1068 (9th Cir. 2023) ("We do not permit a defendant to support its invocation of individualized issues with mere speculation.").[8] HRM has not done so.

Third, even if HRM identified material and enforceable clauses, that would not defeat class certification. Where differences in contract language are material, courts allow plaintiffs to "review and categorize" the agreements so that adjustments to recovery may be made if needed. *Anderson Living Tr. v. Energen Res. Corp.*, 2019 WL 6618168, at *4 (D.N.M. Dec. 5, 2019) (collecting cases).

> ii. *Differences in damages are common and do not bar certification.*

HRM argues that Class members' varying damages defeat commonality. This misstates the law (Mot. at n.5) and would set dangerous precedent by insulating the oil and gas industry from environmental class actions. Whenever a large group of people is harmed by environmental catastrophe, individual damages naturally vary. If differences in damages defeated certification, environmental issues could never be resolved on a class

---

[7] *See also* 2 Colo. Code Regs. § 404-1:320 and § 404-1:1003(b) (2018).
[8] *See also Smith v. LifeVantage Corp.*, 341 F.R.D. 82, 109 (D. Utah 2022) (speculation about defenses against some class members "is not enough"); *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1193 (10th Cir. 2023) ("It is reversible error to 'scrutinize[e] the proposed class for noncommon issues, rather than common ones.'").

basis. But such actions are common, and class members routinely receive different amounts of relief. *See, e.g.*, *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 135–37 (E.D. La. 2013) (approving class exposed to range of petroleum substances, exhibiting varying degrees of injury).[9]

HRM's cases are readily distinguishable. Resp. at 6. In *Trevizo v. Adams*, the court found no commonality because determination of liability required individualized analysis of how police officers detained each class member during a raid. 455 F.3d 1155, 1163 (10th Cir. 2006). And in *Abraham v. WPX Production Productions LLC*, 317 F.R.D. 169 (D.N.M. 2016), the "central issue in th[e] case" was how the defendants should have paid the plaintiffs under leases that provided varying royalty provisions. *Id.* at 175. Here, the Wells were transferred as a package and Defendants did not treat any Class members differently.

### C. The Class meets typicality.

Typicality is met because the claims of Named Plaintiffs and the putative Class are based on the same legal theory. Mot. at 8-9. Rather than engage this argument, HRM contends that Named Plaintiffs are atypical because the OWP initiated some cleanup on the McCormicks' land. *See* Resp. at 1-2, 8, 21. HRM ignores that the McCormicks' land is still burdened by infrastructure, equipment, and a pit, and no land remediation has even begun (despite the odor of oil around that Well). Appx. A row 11. HRM ignores that it already inflicted harm on the McCormicks. Named Plaintiffs, and all Class members, have

---

[9] *See also Bruzek v. Husky Oil Operations Ltd.*, 520 F. Supp. 3d 1079, 1083–84, 1094 (W.D. Wis. 2021) (certifying class after an explosion, with individualized damages to be determined separately).

been suffering from trespassory Wells. *See, e.g.*, Resp. Ex. J at 3-7 (detailing harms suffered and expenses incurred). Even if cleanup happened today, the Class members would still have claims for damages.

Despite this, HRM insists that the plugging of the McCormicks' Well renders them atypical. Resp. at 8 (citing *N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*, 710 F. Supp. 3d 1090 (D. Utah 2023)). Unlike in *Bard*, where defendants had a unique defense against a plaintiff who "ha[d] suffered no antitrust injury," *Bard*, 710 F. Supp. 3d at 1103, Named Plaintiffs and the entire Class suffered trespass due to Defendants' conduct. HRM's "defense" here is not a defense to liability, but merely a repackaging of their recurring fallacy that differing damages preclude certification. Where, as here, the class action revolves around answering common questions as to liability, differences in damages do not render a representative atypical. *See Gulick v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 1262552, at *18 (D. Kan. Apr. 30, 2025) (relying on the distinction between variation in injury versus variation in relief to distinguish *Bard* and grant certification). Typicality is satisfied because "there is a nexus between class representatives/claims or defenses and common questions of fact or law which unite the class." *In re Integra Realty Res., Inc.*, 179 B.R. 264, 270 (Bankr. D. Colo. 1995), *aff'd*, 354 F.3d 1246 (10th Cir. 2004).

Additionally, although a plaintiff's knowledge is not normally part of the typicality analysis, HRM found an outlier California case, *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *1-2 (N.D. Cal. Apr. 25, 2007), where the court discussed plaintiffs' knowledge in that context. But the *Bodner* plaintiff's ignorance was "undeniable and overwhelming" and there were questions about the ethical conduct of proposed class

counsel. *Id.* As discussed next, Named Plaintiffs here have the requisite knowledge.

### D. Named Plaintiffs are adequate.

A class representative "need only demonstrate a basic understanding of the class claims as well as an understanding of his or her duties as the class representative and a willingness to fulfill those duties." *Gamboa v. KISS Nutraceuticals*, 2025 WL 1088066, at *11 (D. Colo. Apr. 2, 2025) (citations omitted). Named Plaintiffs readily clear this bar. HRM cherry-picks a few moments from long depositions to claim Named Plaintiffs lack knowledge and are acting at the direction of counsel. Not so; Named Plaintiffs understand the nature of their claims and fully accept their duties as representatives.

For example, HRM notes that Cindy and Ronald McCormick could not answer 120 and 200 deposition questions, respectively. Resp. at 7. But the McCormicks fielded over a *thousand* questions each.[10] All Named Plaintiffs were able to answer questions about the nature of the suit, and all embraced their part in standing up to vindicate the rights of other injured landowners. *See* Appx. A & B. That is more than sufficient. Relatedly, HRM argues that Named Plaintiffs only know facts their counsel provided them. But Named Plaintiffs showed personal, prior knowledge of harms and the responsible entities. Appx. A. HRM faults them for not uncovering Defendants' complex fraudulent scheme before counsel shared relevant information. Resp. at 8, 10. This is typical and does not render Named Plaintiffs inadequate class representatives. *See McDonald v. Lab. Corp. of Am. Holdings*, 2024 WL 4513580, at *5 (M.D.N.C. Oct. 17, 2024) (citing *Surowitz v. Hilton*

---

[10] Most of the questions they did not answer related to legal theory or facts about other Class members, which they had no reason to know. *See* Appx. C.

*Hotels Corp.,* 383 U.S. 363, 371 (1966)). And reliance on counsel is especially appropriate where, as here, "the legal and factual complexity of Plaintiffs' claims makes it highly unlikely they could be discovered without the investigation of experienced counsel." *Ramos v. Banner Health*, 325 F.R.D. 382, 396 (D. Colo. 2018).

HRM relies on *Ramos* to attack Named Plaintiffs' knowledge, but that court rejected virtually identical arguments and noted that the Supreme Court "expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance." *Id.* at 394 (D. Colo. 2018) (citation omitted).[11] Consistent with the standard explained in *Ramos*,[12] Named Plaintiffs understand the harm done to them and Defendants' role in inflicting it. Appx. A. And Named Plaintiffs have devoted significant time and effort to this lawsuit, and will continue to do so. Appx. B.

Likewise, HRM suggests that counsel is "directing this lawsuit" and that Named Plaintiffs are "involved only because their attorneys solicited them,"[13] but they all sought redress via other avenues *before* they ever met counsel. *See* Appx. A at Rows 1, 25-26.

---

[11] HRM cites the 2019 *Ramos* decision, an order denying plaintiffs' motion to modify class certification that effectively upheld the 2018 decision Plaintiffs cite here. *See Ramos v. Banner Health*, 2019 WL 646082, at *1 (D. Colo. Jan. 29, 2019). That court deemed plaintiffs adequate to represent claims against their former employer and its officers, and only found inadequacy with respect to claims against the employer's consultant, whom plaintiffs were entirely unaware of. 325 F.R.D. at 398.

[12] *See Ramos*, 325 F.R.D. at 394 ("[T]he correct analysis is not [w]hether . . . the class representative is familiar with the specifics of the complaint, but is instead . . . whether that individual will adequately represent the claims of the class by devoting time and effort to the lawsuit.'") (quotation marks omitted).

[13] HRM emphasizes that Mr. Trupp said he "didn't want to be" a named plaintiff. But he explained that was because he disliked being deposed and (immediately after) said he still became a Class representative "[b]ecause . . . it was the right thing to do." ECF 117-5 at 31.

And Named Plaintiffs have all demonstrated their commitment to this case. Appx. B.

### E. Class Counsel is adequate.

Counsel is also adequate. "Absent evidence to the contrary," Plaintiffs have "a presumption of adequate representation," such that "the burden shifts to the defendant," and any "doubt regarding adequacy of representation should be resolved in favor of upholding the class." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 127 (D. Colo. 2016) (citation omitted). Where adequacy is challenged, courts look to counsel's conduct in the litigation, and competent work weighs in favor of adequacy. *In re Storage Tech. Corp. Sec. Litig.*, 113 F.R.D. 113, 119 (D. Colo. 1986) (noting that "experience and commitment" to the suit is relevant to competence).[14] Counsel's conduct here, including surviving Defendants' motion to dismiss on all counts, favors finding adequacy.

HRM makes three arguments. First, HRM says only one of Plaintiffs' firms (Borison) has class experience. Resp. at 10-11. But the relevant inquiry is whether Class counsel, collectively, is adequate, not whether each individual lawyer could represent the Class alone.[15] The remaining Class counsel have extensive relevant experience, including some class experience. ECF 107-3 ¶12; *see also id.* ¶¶ 4-8, 11, 13 & 107-2 ¶¶

---

[14] *See also Black Lives Matter 5280 v. City & Cnty. of Denver*, 338 F.R.D. 506, 511 (D. Colo. 2021) (counsel demonstrated ability through "thoughtful affidavits," "briefs," and "mounds of evidence they have sought to obtain through discovery").

[15] Courts evaluate class counsel adequacy by looking at all counsel collectively. *See, e.g.*, *Douglas Cnty. Fed'n v. Douglas Cnty. Sch. Dist. RE-1*, 325 F.R.D. 355, 365 (D. Colo. 2018) (finding adequacy where 2 of 3 attorneys had class experience); *Lyall v. City of Denver*, 319 F.R.D. 558, 570 (D. Colo. 2017) (appointing solo practitioner as class counsel in a "very close call," but advising him to seek co-counsel to address any future concerns with his representation).

3-7, 11-13. Second, HRM claims Mr. Borison "has not been sufficiently involved." Resp. at 11. This is false. Mr. Borison has been extensively involved since before the suit was filed, as well as in every facet of this case thereafter. Moreover, HRM's cases are readily distinguishable. Both cases involved solo practitioners seeking to represent a class. In one, the proposed class was over 1,000 times larger than here. *Fisher v. United States*, 69 Fed. Cl. 193, 201 (2006). In the other, the class certification motion presented zero arguments as to counsel's adequacy. *Ademiluyi v. PennyMac Mortg. Inv. Trudt Holdings*, 2015 WL 575362, at *8 (D. Md. Feb. 10, 2015). Mr. Borison is not litigating alone, and his extensive experience litigating large complex class actions combined with the other Class counsel's relevant experience and resources establish adequacy. Third, HRM seems to suggest that non-profits may not serve as class counsel where Plaintiffs have financial interests in a case. *See* Resp. at 11-12. But tax status has absolutely no bearing on the adequacy analysis. Indeed, Plaintiffs are not aware of *any* court ever opining that organizational tax status could be relevant to adequacy.[16]

## III.  THE CLASS SATISFIES RULE 23(b)(2)

HRM's challenge under Rule 23(b)(2) misstates the nature of Plaintiffs' proposed injunctive relief and confuses the law. The rule requires that defendants "acted . . . on grounds that apply generally to the class" and "that final injunctive relief or corresponding

---

[16] Nonprofits regularly represent classes in cases with both financial and public interest implications. *See, e.g., Francisco v. Susano*, 525 F. App'x 828 (10th Cir. 2013) (finding compensatory and statutory damages for plaintiffs represented by attorneys from Colorado Legal Services); *Redmond v. Bigelow*, 2014 WL 2765469 (D. Utah June 18, 2014) (certifying class, including damages subclass, represented by the ACLU).

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). HRM only addresses the second prong (thus conceding the first), arguing injunctive relief is inappropriate due to: (1) lack of specificity, (2) the ECMC's role and public interest, and (3) the need for tailored inquiries. These arguments all fail.

### A. Plaintiffs' request for injunctive relief is sufficiently specific.

Plaintiffs seek abatement of trespass by avoiding the transfer of the Wells to reimpose the cleanup obligations onto HRM, and the creation of a third-party administered fund to be used for plugging, reclamation, and remediation of Wells that still require cleanup. *See* Compl. at 36-37.[17] This relief imposes the same concrete clean-up obligations applicable to all oil and gas operators, which the Court can order.

HRM's cases are distinguishable. In *Shook v. Board of County Commissioners*, 543 F.3d 597 (10th Cir. 2008), the court declined to craft an injunction that distinguished "*between*" how prison officials must treat each prisoner (based on inmates' unique circumstances), "rather than prescribing a standard of conduct applicable to *all* class members." *Id.* at 605. Here, Plaintiffs seek relief that is uniform across the Class: abatement of the trespass via a fund created to cleanup the Wells.[18] In HRM's next case, the plaintiff sought to enjoin defendant's potential "exclusionary conduct," without specifying the conduct to restrain. *Bard*, 710 F. Supp. 3d at 1115. Here, Plaintiffs seek to abate Defendants' trespass, which can be accomplished via full cleanup of the Wells.

---

[17] Plaintiffs also seek corresponding declaratory relief and monetary damages. *See* Compl. at 36-37.
[18] Named Plaintiffs understand the injunctive relief sought in this case. Appx. A at Rows 2, 13-14, 21-22.

*In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 209 F.R.D. 323 (S.D.N.Y. 2002), supports Plaintiffs' position, not HRM's. There, the class consisted of owners of MTBE-contaminated water wells across multiple states. The variance in allowable MTBE levels between states, differing cleanup standards, multiple pollution sources, and the dispersed nature of the class-raised certification issues. Here, Plaintiffs merely ask those responsible for orphaning geographically concentrated Wells to pay to have them cleaned up sufficiently to pass the ECMC's standard inspection. And *Methyl* recognized that injunctions are allowed where relief is tied to compliance with an already existing regulatory scheme—exactly what Plaintiffs seek here. *See Methyl*, 209 F.R.D. at 345 (citing cases where injunction "amounted to enforcement of existing agency guidelines, and hence met Rule 65(d)'s specificity requirement").

### B. ECMC's role does not preclude and public interest favors certification.

Plaintiffs' proposed injunction is centered on Defendants' liability. It does not require anything from ECMC that is different from, or inconsistent with, the normal oversight duties the agency has over the proper cleanup of every oil/gas well in the State. Courts regularly impose injunctions where the underlying relief requires incidental administrative implementation or involvement. *See, e.g.*, *Rose Nulman Park Found. ex rel. Nulman v. Four Twenty Corp.*, 93 A.3d 25, 28 (R.I. 2014) (mandatory injunction to remove trespassing building, which required obtaining city permits).[19] And HRM cannot

---

[19] HRM's cases all required non-routine direct action from nonparties or are otherwise distinguishable. *See, e.g., Andrews v. Andrews*, 160 F. App'x 798 (10th Cir. 2005) (rejecting request to stop child custody proceedings where pro se plaintiffs presented "rambling, vague, and conclusory submissions"); *CMI Roadbuilding, Inc. v. SpecSys, Inc.*,

reasonably suggest that ECMC would disapprove the cleanup of the Wells.[20]

Cleaning up orphan wells is clearly in the public interest. An injunction would both ensure faster cleanup of these Wells and free up resources for the OWP to more rapidly cleanup hundreds of other hazardous wells. None of the cases HRM cites support the argument that this injunction is contrary to public interest.[21]

### C. Plaintiffs' injunction would not require tailored relief.

HRM again exhibits misplaced reliance on variations in the degree of cleanup required. *See* Resp. at 17-18. Plaintiffs agree the Wells are not identical, but the cleanup would ***follow*** the Court's injunction ordering Defendants to pay. *See D.B.U. v. Trump*, 349 F.R.D. 228, 241 (D. Colo. 2025) ("Respondents confuse the individualized nature of any class member's habeas proceedings that would ***follow*** any injunctive relief . . ."). Plaintiffs do not seek to tailor obligations Well-by-Well, but to enforce a duty owed uniformly to the Class: that Defendants clean up their mess. This provides final, appropriate relief for the entire Class.[22]

---

2024 WL 4256709, at *6 (W.D. Okla. Sept. 20, 2024) (enjoining defendants from using confidential information but refusing to order the same for nonparties); *Vreeland v. Jacobson*, 2025 WL 560068, at *5 (D. Colo. Feb. 20, 2025) (plaintiff could not demonstrate good cause to reopen case); *Hunter v. Romero*, 2021 WL 11634479, at *6 (D. Colo. June 8, 2021) (plaintiff failed to satisfy Prison Litigation Reform Act).

[20] ECMC's Murphy merely states that ECMC must approve the Wells' cleanup; she never indicates the ECMC would withhold approval for these Wells. ECF 116-21 ¶ 18.

[21] Neither *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 147 (E.D. La. 2002) nor *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) discuss public interest. In *Bano v. Union Carbide Corp.*, 361 F.3d 696, 717 (2d Cir. 2004), the injunction was not granted because of "the difficulty that a United States court would have in controlling and overseeing the progress of remediation ***in India***." *Id.* at 717 (emphasis added).

[22] *Kartman v. State Farm Mut. Auto. Ins.,* 634 F.3d 883 (7th Cir. 2011) is distinguishable.

Finally, HRM argues that individual Class members might prefer to opt out. It is implausible that anyone would prefer to delay plugging and remediation to ensure the State pays instead of those who profited from the Wells. The case HRM cites for this argument required notice to class members to allow participation at the final approval and fairness hearing. Resp. at 18 (citing *CO Craft, LLC v. Grubhub Inc.*, 2023 WL 3763525 (D. Colo. June 1, 2023)). Because this Class would also be certified under Rule 23(b)(3), members would receive notice and thus have the same opportunity to participate.

## IV.    THE CLASS SATISFIES RULE 23(b)(3).

### A.  Common Class questions predominate.

Common issues predominate because if the Defendants are liable to the Named Plaintiffs', they are liable to each Class member. When common proof establishes liability on a class-wide basis, predominance is routinely found. Mot. at 13. Instead of addressing this, HRM complains Plaintiffs have not marched element-by-element through each claim, Resp. at 18-22; doing so, however, affirms the appropriateness of certification.

As to Plaintiffs' Trespass claim, HRM (again) argues: (1) trespass damages may vary, and (2) the class vehicle is inappropriate because "the nature of trespass is a factual, individualized inquiry." *Id.* at 20. Plaintiffs reiterate that classes are regularly certified despite non-identical damages. *See* II.B.ii, *supra*; Mot. at n.5. HRM's second argument is equally meritless. It relies on a single unreported Texas case that does not support the proposition for which it is cited. *Prantil v. Arkema France S.A.*, 2022 WL 1570022, (S.D.

---

That court rejected an injunction to require an insurer to develop a standard methodology for roof inspections, which would not have provided final relief but would be the first step "for subsequent determinations of . . . liability." *Id.* at 893.

Tex. May 18, 2022) concerned pollution that escaped a chemical plant, and there were significant factual questions about whether trespass occurred with respect to different properties, requiring individualized inquiry. *Id.* at *33-34. This concern is not present here: trespass has occurred on every property with an abandoned Well and the surface owners of those properties are all entitled to the same relief.

With respect to the CUFTA claim HRM baldly asserts that proving standing will require "hundreds of mini-trials" to show each class member is a creditor. Resp. at 20. This is wrong. As the Court already recognized, "plaintiffs . . . are creditors and [the HRM] Defendants are debtors for purposes of CUFTA." ECF 90 at 11. There is no need for individualized inquiry.

Turning to negligence, HRM argues that negligence requires individualized proof that the defendant failed to act reasonably as to each Class member. Resp. at 21. That is incorrect. A single standard is applicable to the Defendants' conduct; dumping liabilities onto a bankruptcy-destined entity was unreasonable and contrary to Defendants' statutory and common law duties as to every Class member. HRM mischaracterizes *Seabron v. Am. Fam. Mut. Ins.* 2013 WL 3713652 (D. Colo. July 16, 2013).[23] There, plaintiffs alleged that an insurer underpaid claims, in part because it lacked uniform processing standards. Unlike here, that defendant acted differently toward different purported class members, such that it was plausible some were treated reasonably and

---

[23] HRM's only other citations here are to a case laying out the well-accepted standard for negligence and to *Prantil*, which, as discussed above, is non-controlling and in any case turned on individualized questions regarding causation which are not present here. *See Prantil*, 2022 WL 1570022 at *33-34.

others were not. *Id.* at *7-8. Crucially, the court suggested it may have reached a different result had class members been treated similarly and liability with respect to all could be determined by analysis of the common question of whether the policy at issue was unreasonable. *Id.* In other words, *Seabron* supports Plaintiffs' position: certification is warranted here, where common questions predominate because they will establish liability under the same standards with respect to the entire class.

Finally, HRM turns to Plaintiffs' unjust enrichment claim. Citing *Friedman v. Dollar Thrifty Automotive Group, Inc.,* 304 F.R.D. 601 (D. Colo. 2015), HRM asserts "unjust enrichment claims are not appropriately certified for class treatment, as common questions will rarely, if ever, predominate." HRM's entire discussion of the case consists of saying the claims here "are no different." HRM is wrong on both points. Classes are indeed certified in unjust enrichment cases. *See, e.g.*, *Menocal v. GEO Grp., Inc.*, 320 F.R.D. 258 (D. Colo. 2017), *aff'd*, 882 F.3d 905 (10th Cir. 2018). And *Friedman* is easily distinguishable. There, liability determination required analyzing whether a customer was deceived in each (of the millions) of separate transactions. In fact, two years later this District Court explicitly distinguished *Friedman* to certify a class with an unjust enrichment claim where, as here, "the extent to which [Defendant] was unjustly enriched would require individualized inquiries, but whether it was unjust at all could be determined on a classwide basis." *Menocal*, 320 F.R.D. at 269.

With respect to all claims, HRM cites *In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014), 4 Newberg and Rubenstein on Class Actions § 12:4 (6th ed.), and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) to argue damages must be measurable

on a classwide basis. Resp. at 22. This misrepresents the authority cited. *Urethane* explicitly holds that evidence of classwide damages is not required. That court stated, "*Comcast* did not rest on the ability to measure damages on a class-wide basis." *Urethane,* 768 F.3d at 1257-58. Rather, that "decision turned on a concession [relating to damages]" that was "an 'oddity' specific to that case [and] was outcome determinative." *Id.* (citing *Comcast*, 569 U.S. at 41-42). The *Urethane* court affirmed that, although "determination of damages might be individualized," class certification was appropriate for resolution of liability issues, *id.* at 1251,[24] and further held that "[t]he presence of individualized damages issues would not change this result." *Id.* at 1255.[25]

HRM's insistence that classes cannot be certified absent a "single or common" method to quantify damages also fails. As the treatise HRM relies on explains, "where individual damage calculations are more complex and nuanced . . . problems [of varying damages] can be avoided if class certification is granted solely on the question of liability, with damages determined in another proceeding." 4 Newberg and Rubenstein on Class Actions § 12:4 (6th ed.). Likewise, *Naylor Farms* did not require a model for classwide damages; it merely recognized such model's existence weighed against finding that individualized issues predominated. 923 F.3d at 779. That court stated that classes can be certified where damages vary between individuals and that, ultimately, Plaintiffs' model

---

[24] The *Urethane* court also noted that it had mechanisms to handle differences in damages between class members.

[25] That the 10th Circuit refused to expand *Comcast* is not surprising, given that, "it remains the black letter rule that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." *Comcast*, 569 U.S. at 42-43 (Ginsburg & Breyer, JJ., dissenting).

for class-wide damages was not determinative of whether to certify the class because, even if it was insufficient, the court could grant certification and then stage the proceedings "for the purposes of determining damages." *Id.* at 798.

**B.  A Class action is superior.**

Like the majority of its other contentions, HRM's superiority argument continues to rest on the conflation of damages and *causation.* This case turns on factfinding around Defendants' misconduct, and that factfinding does not change with respect to different Class members. The *only* variations between Class members relate to damages calculations, as is typical in environmental class actions. And as even HRM's own cherrypicked authority recognizes: "'individual questions [] not capable of class-wide resolution . . . [are] not fatal to class certification,' particularly where 'virtually every issue prior to damages is a common issue.'" *Barnes v. Dresser, LLC*, 2023 WL 4980240, at *6 (W.D. La. Aug. 3, 2023).

HRM relies on three out-of-circuit authorities, only discussing the controlling 10th Circuit precedent in an unpersuasive footnote that does not explain why this Court should ignore that "[t]he black letter rule is that individual damage calculations generally do not defeat a finding that common issues predominate, and courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations." *Sherman*, 84 F.4th at 1182 (citation omitted).

None of these cases, even if controlling, require HRM's desired result because they all involve individualized issues related to *liability*. In *Zinser v. Accufix Research*

*Institute, Inc.*, 253 F.3d 1180, (9th Cir. 2001), the putative class consisted of over 60,000 medical device recipients. *Id.* at 1192. Each would have to establish whether the device caused harm, and multiple confounding factors required complicated, individualized causation analysis. The court declined to certify a class due to these individualized questions related to liability and causation. *Id.* at 1197. In *Barnes*, the court recognized that individual differences in damages do not necessarily defeat class certification, but found that individual assessments would be required to determine causation as to each individual class member. 2023 WL 4980240, at *6-7.[26] Finally, *Tarrify Properties, LLC v. Cuyahoga County, Ohio*, 37 F.4th 1101 (6th Cir. 2022), involved properties transferred to banks after years of unpaid taxes, and the proposed class consisted of those with equity in the seized properties in excess of taxes owed. Determining class membership required individualized analysis of each property's value at time of seizure, so the class was impractical to ascertain. *Id.* at 1106.

In short, the smattering of out-of-circuit cases HRM assembled do not show that differences in damages defeat superiority; at most they reiterate that individualized inquiries with respect to *liability* sometimes defeat certification. This is not an issue here, where there are only differences in damages. As Plaintiffs showed (Mot. at 13-14), and reiterate here, superiority factors here all support certification.

A class action is superior here for reasons of efficiency and access to justice. This complex case requires extensive discovery, and is time-consuming and expensive,

---

[26] *Barnes* also noted possibility of bifurcating liabilities and damages, but declined to do so because the parties conceded "a partial Rule 42 consolidation presents an alternative, viable path forward in resolving common issues[.]" *Barnes*, 2023 WL 4980240, at *7.

making it difficult for individuals to pursue litigation absent certification. And if multiple people brought separate suits, it would be inefficient to repeatedly litigate the same questions about liability, and the duplicative actions could lead to inconsistent judgments.

HRM does not meaningfully engage these arguments. The first factor (whether plaintiffs would prefer multiple suits), weighs in favor of certification. HRM claims Plaintiffs failed to address "the extent of any litigation . . . already begun by class members." Resp. at 25 (referring to "the second factor"). But Plaintiffs explained that, due to the complication and expense, "unsurprisingly, no one has expressed any interest in litigating separate actions." Mot. at 14. This weighs in favor of certification. Despite this, HRM argues the lack of other litigation moots the "third factor" (desirability of concentrating the litigation in the particular forum). But HRM implicitly proves Plaintiffs' point: absent a class action, Class members have no access to justice. Finally, HRM offers another variation on its baseless argument that differences in damages prevent certification.[27]

In short: a class action is superior. With a geographically concentrated, and readily ascertainable class, the benefits of determining liability in a single proceeding greatly outweigh any administrative concerns related to calculating damages.

V.    **CONCLUSION**

For the foregoing reasons, the Class should be certified.

---

[27] HRM's only new citation here fails. *Steering Committee v. Exxon Mobile Corp.*, required individualized inquiry to determine causation—not merely calculation—of damages. 461 F.3d 598 (5th Cir. 2006). That court recognized bifurcating damages and liability phases may have obviated the problem, but Plaintiffs' counsel never raised the possibility.

Respectfully submitted this 28th day of July, 2025.

**BORISON FIRM, LLC**

By: */s/ Scott C. Borison*
    Scott C. Borison

**RICHARDS CARRINGTON, LLC**

By: */s/ Benjamin W. Hudgens*
    Christopher P. Carrington
    Benjamin W. Hudgens
    Zigmas Polinauskas

**CLIENTEARTH USA, INC.**

By: */s/ John S. Rossiter Jr.*
    John S. Rossiter Jr.
    Camille Sippel
    Setareh Homayoni

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2025, I electronically filed the foregoing
**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** with
the Clerk of Court using the CM/ECF system which will send notification of such filing to
the following email addresses:

Richard B. Benenson
Justin L. Cohen
Matthew C. Arentsen
Max Porteus
Madeleine L. Tayer
BROWNSTEIN HYATT FARBER SCHRECK, LLP
rbenenson@bhfs.com
jcohen@bhfs.com
marentsen@bhfs.com
mporteus@bhfs.com
mtayer@bhfs.com


And via electronic mail:
John Hoffman
johnghoffman@icloud.com


*s/ Dyanna Spicher*
Dyanna Spicher, Paralegal