UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:24-cv-00823-CNS-CYC**

CINDY McCORMICK; RONALD McCORMICK; and TRUPP LAND MANAGEMENT LLC,
   Plaintiffs,

v.

HRM RESOURCES, LLC, a Delaware limited liability company;
HRM RESOURCES II, LLC, a Delaware limited liability company;
HRM RESOURCES III, LLC, a Delaware limited liability company;
HRM RESOURCES IV, LLC, a Delaware limited liability company;
L. ROGER HUTSON, an individual; TERRY PAPE, an individual;
PAINTED PEGASUS PETROLEUM, LLC, a Texas limited liability company;
and JOHN HOFFMAN, an individual
   Defendants.

---

## PLAINTIFFS' MOTION TO EXCLUDE OPINIONS OF C. ELAINE CARLETON

---

Plaintiffs, through counsel, respectfully submit their *Motion to Exclude Opinions of C. Elaine Carleton* ("Motion"). Plaintiffs do not request a hearing.

Certification Pursuant to D.C.COLO.LCivR 7.1(a): Following conferral, HRM Defendants'[1] oppose the requested relief; Mr. Hoffman has not provided his position.

### INTRODUCTION

In opposition to class certification, HRM Defendants submitted a report by C. Elaine Carleton ("Carleton"). The report, attached as Exhibit 1, ***should be excluded***

---

[1]   "HRM Defendants" collectively refers to defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson, and Terry Pape.

*from consideration in any part of this case.*[2] Carleton is an oil and gas lawyer whose opinions consist primarily of legal arguments. Carleton is unqualified and many of her opinions are unreliable, irrelevant to class certification, or cross into the province of the Court by asserting legal conclusions. The legal conclusions are also unreliable because several are simply wrong.

## CIV. PRACTICE STANDARD 7.1C(b) STATEMENT OF OPINIONS & CHALLENGES

Carleton presents five enumerated opinions, each supported by underlying sub-opinions. *See* Ex. 1 at 3-13. This Motion challenges the following opinions:

1. **Opinion 1**: "Mr. Dickey's method of reviewing County Tax Records does not definitively or accurately identify Surface Owners." Ex. 1 at 4.

    a. **Sub-Opinions**: Underlying opinions used to support Opinion 1. For example, that "[t]he only true and accurate method for identification of . . . surface owners is to run a title chain of the names through the deeds of record[,]" or that the standard of care for county employees' data entry is much lower compared to the standard for entering grantee and grantor names in recorded documents. *Id.*; *see also id.* at 5, 12.

    **Challenge**: Will not assist trier of fact (*i.e.*, not helpful) (§§ A.i. & A.iii.). Improper (§ A.ii.). Unreliable (§ A.iv.). Unqualified (§ A.v.).

2. **Opinion 2**: "ECMC records detail a robust plugging and abandoning plan for the P3 Wells in ECMC's Orphaned Well Program." Ex. 1 at 5.

    a. **Sub-Opinions**: Underlying opinions used to support Opinion 2. For example, that the OWP is "robust," "active and ongoing," or "thorough and diligent." *Id.* at 5, 7, 12.

    **Challenge**: Unqualified (§ B.i.). Unreliable (§ B.i.). Not helpful (§ B.ii.).

3. **Opinion 3**: "Differing land classifications highlight individualized issues with P&A of the P3 Wells." Ex. 1 at 7.

---

[2] An unredacted version of Exhibit 1 is on file at ECF No. 117-3.

2

   a. ***Sub-Opinions***: Underlying opinions used to support Opinion 3. For example, that "land types, uses, and structures . . . need to be [considered as they] can impact the complexity, cost, and length of time of the P&A." *Id.* at 7; *see also id.* at 12.

   ***Challenge***: Unqualified (§ C.i.). Unreliable (§ C.ii.). Not helpful (§ C.ii.).

4. ***Opinion 4***: "Various agreements may control the rights and obligations of the surface owners and operators." Ex. 1 at 8.

   a. ***Sub-Opinions***: Underlying opinions to support Opinion 4. For example, "these . . . agreements typically . . . release [claims,]" or bind "successors and assigns." *Id.* at 9; *see also id.* at 12–13.

   ***Challenge***: Unreliable (§ D.i.). Not helpful (§ D.ii.). Improper (§ D.ii.).

5. ***Opinion 5***: "Plaintiffs' methods cannot tie oil and gas-related equipment to P3 Wells." Ex. 1 at 10.

   a. ***Sub-Opinions***: Opinions used to support Opinion 5. For example, "tank batteries and equipment are not necessarily associated with the P3 Wells. . . ." *Id.* at 11; *see also id.* at 13.

   ***Challenge***: Unreliable and will not assist trier of fact (§ E.i.).

## LEGAL STANDARD

The "[p]roponent of expert testimony bears the burden of showing that [their] proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (internal citation omitted). To evaluate admissibility, the Court engages in a "two-step analysis." *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022).

**First**, the Court must decide whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render the opinion. Fed. R. Evid. 702; *see also Roe*, 42 F.4th at 1180. **Second**, the Court must resolve whether opinions

are reliable by asking whether the expert's methodology is valid, "that is, whether it is based on sufficient data, sound methods, and the facts of the case." *Id.* at 1180–81.

To be admissible, not only must the expert be qualified, and her opinions be reliable, but the opinions must also "assist the trier of fact." *Nacchio*, 555 F.3d at 1241. "[E]xpert testimony is not necessary where the matter in issue is such that the jury can be expected to draw the correct inferences from the facts presented." *United Telecomms., Inc. v. Am. Television & Commc'ns Corp.*, 536 F.2d 1310, 1317 (10th Cir. 1976). Additionally, "[e]xpert testimony which does not relate to any issue in the case is **not relevant** and, ergo, **non-helpful**." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (internal citation omitted) (emphasis added). Finally, "[t]he Tenth Circuit has explained that expert testimony that 'articulates the ultimate principles of law governing the deliberations of the jury' is inadmissible." *Milanes v. Am. Family Mut. Ins. Co.*, 2016 WL 9735791, at *3 (D. Colo. June 24, 2016) (citation omitted).

**RULE 702 EVIDENTIARY STANDARDS APPLY TO CLASS CERTIFICATION**

Rule 702 principles apply to cases where the fact finder is the Court, as is the case here, while the Court is considering class certification. *See Balakrishnan v. TTEC Digital LLC*, 2025 WL 414445, at *4 (D. Colo. Feb. 6, 2025) ("the scientific reliability requirement is [not] lessened in [bench trials]") (internal citation omitted). While the Tenth Circuit has not ruled on the issue, a plurality of circuits have held that unlike for fact evidence, evidentiary standards apply to expert reports in class certification proceedings. *See Prantil v. Arkema Inc.*, 986 F.3d 570, 575–76 (5th Cir. 2021); *Grodzitsky v. Am. Honda Motor Co., Inc.*, 957 F.3d 979, 984 (9th Cir. 2020); *In re Blood*

4

*Reagents Antitrust Litig.*, 783 F.3d 183, 187–88 (3rd Cir. 2015); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 813 (7th Cir. 2012); *Sher v. Raytheon Co.*, 419 F. App'x 887, 890–91 (11th Cir. 2011). Some circuit and district courts follow a more relaxed *Daubert* analysis focused on class issues due to the "evidentiary uncertainty" at this stage. *See In Re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613-14 (8th Cir. 2011). However, given HRM Defendants' access to documents (in their own files, in discovery, and in public records) related to issues in Carleton's report, such evidentiary uncertainty does not exist here. Even so, Carleton's opinions would be inadmissible or unworthy of consideration even under a relaxed *Daubert* analysis.

## ARGUMENT

**A.   Opinion 1 and related sub-opinions will not assist the trier of fact, invade the province of the Court, and are unreliable.**

> i. <u>Carleton's opinions about surface owner identification are not relevant to class certification because they ignore the standard set by statute and accepted by courts.</u>

Carleton opines that "[t]he only true and accurate method for identification of the legal names of the surface owners is to run a title chain of the names through the deeds of record." Ex. 1 at 4. However, Colorado law identifies surface owners by tax records:

> "Surface owner" means any person owning . . . surface of land upon which energy and carbon management operations are conducted, **as shown by the tax records of the county in which the tract of land is situated**, or any person with such rights under a recorded contract to purchase.

Colo. Rev. Stat. § 34-60-103(41) (2025) (emphasis added). This statute provides a straight-forward objective method to identify all surface owners who are class members. This practice has been accepted and applied without issue in class actions. *See e.g.,*

5

*Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016) (upholding settlement approval appealed on other grounds, where "[t]o identify the class members and provide notice, . . . county tax records" were used).

Via legal argument, Carleton tells the Court to ignore a controlling statute and common class action practice affirmed by courts, and instead apply her own standard. Such "opinion" will not assist the trier of fact as it applies the incorrect standard.

> ii. *Carleton tells the Court what legal standard to apply to an ultimate issue.*

The Court decides the legal standards that apply to ultimate issues. Suggestions as to the applicable standard are reserved for legal arguments, not expert opinions. "[T]estimony on ultimate questions of law is not favored." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). Here, class certification is an ultimate issue for which a decision has monumental effects. *See e.g., Anderson Living Tr. v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 377–78 n.39 (D.N.M. Jan. 6, 2014) ("Class certification is an important stage of a case: a certified class action often settles . . . [while] a rejected . . . class action is difficult to settle . . . . The importance of the class certification determination led Congress, the Supreme Court, and the drafters of the Rules to avail litigants to an interlocutory appeal of the district court's determination—a rare exception to the final-judgment rule.").

Carleton's opinion not only "instructs" the Court as the fact-finder about what standard to apply, it also invades the province of the Court, as the decider of all legal issues, by telling it what to to decide as to the legal standard that it should apply.

6

### iii. *The trier of fact can identify clerical errors without expert opinion.*

Opining about Plaintiffs' methodology to identify surface owners, Carleton relies on a limited number of discrepancies in Plaintiffs' surface owner list. For example, Carleton highlights a land record that shows "Trupp Land Management" as the surface owner of record versus a tax record that shows "Land Trupp Management." Ex. 1, Ex. D-2.1. Carleton also complains that one parcel includes only one of several owners but does not address that all of the owners share the same mailing address and notice will be sent to that address. Only one entry actually identified the incorrect surface owner, which was due to a human search error—an incorrect parcel of land was reviewed— that would have the same chance to occur regardless of the method applied.

While presented as "expert" opinions, Carleton's observations do nothing more than highlight clerical or other mistakes, which any person can observe. Moreover, the alleged deficiencies are easily remedied, e.g., by changing Land Trupp Management to Trupp Land Management or adding the names of the additional owners. Carleton's lay observations do not assist the trier of fact and should be excluded.

### iv. *Carleton speculates about differences between tax payors and surface owners.*

In addition to other Opinion 1 sub-opinions, Carleton also opines that "[i]n checking the tax assessors' records for surface owners, there may be discrepancies between the payor of the taxes and the actual legal record title names." Ex. 1 at 4.

As explained above, identifying basic discrepancies in documents is not an expert opinion and should be excluded. However, if Carleton's opinion implies that there may be differences in who owns the surface land and who pays the taxes, Carleton's

report does not provide any basis for such an opinion. Carleton's report does not show a single instance where a tax payor and an owner were two different people or entities and she does not show that her experience could alone support such an opinion.

In addition to other reasons, this sub-opinion should be disregarded because it provides no support that tax payors and owners of the same parcel of land are different.

      *v. <u>Carleton is unqualified to opine about the standard of care for county data entry.</u>*

Carleton also opines that "the standard of care and attention to detail when drafting grantor and grantee names in a legal document to be recorded is much higher than the standard for data input for tax records." Ex. 1 at 4. The statute adopts the tax records to determine surface owners. If HRM disagrees with this method, they can lobby the legislature but cannot change the law through an "expert" opinion. In any event, Carleton is unqualified to offer this opinion. Carleton does not appear to have any experience working for any government agency and does not explain the source of her alleged knowledge of the applicable standard of care in a government setting or any error-checking procedures or other systems used in that county to ensure accuracy.

HRM Defendants have not met their burden to show that Carleton is sufficiently experienced—her opinion about county data entry standard of care should be excluded.

**B.    Opinion 2 and the related sub-opinions are unqualified, unreliable, and will not help the trier of fact.**

      *i. <u>Carleton is unqualified to opine about the ECMC's Orphan Well Program and her opinion about the program's sufficiency is speculative.</u>*

Opinion 2 is another example of HRM Defendants using Carleton's expert report to expand their briefing on class certification. In her report, Carleton restates information

8

from the ECMC website and from two agreements between the ECMC and operators for P&A to conclude that the ECMC's Orphan Well Program is "robust," "active and ongoing," "active and continuous," "diligent," or "thorough and diligent[.]" Ex. 1 at 5, 7.

First, HRM cannot establish, with a lawyer's opinion or otherwise, that they can avoid their statutory responsibilities to P&A because there is a state program. Even if it could, Carleton does not list any experience in managing large-scale P&A, overseeing regulatory agency management of natural resources, evaluating what would be considered a "robust" or "diligent" program, or any other experience that would qualify her to make these broad conclusions. It is unclear what qualifications would even be necessary for a person to opine about such matters, but regardless, it is HRM Defendants' burden to establish those qualifications and they have not met that burden.

Further, Carleton's assessment includes virtually no actual analysis, and only minimal review of available information. Numerous documents (that are publicly available or were produced in this case) detail budgetary allocations for all wells in the OWP, plugging totals compared to the total number of wells in the OWP, sources of funding for the OWP, and the extent of orphaned well issues in Colorado and nationwide. Yet Carleton did not review or address any of these in her report.

Opinion 2 and the underlying opinions should be disregarded as irrelevant and the unqualified and speculative arguments of a ghostwriter.

> ii. <u>Carleton restates what OWP records show, and those records are not relevant.</u>

As highlighted above, Carleton's opinions about the OWP restate information from the ECMC website or produced documents. Carleton does not analyze this

9

information beyond what a trier of fact can reasonably infer when presented with the same.

Additionally, the opinion has no bearing on class certification because whether HRM Defendants can evade liability by invoking the OWP's authority is a common issue for all class members. It is also irrelevant that some surface owners may have their wells plugged by the OWP—they have already been harmed by the same common liability-shedding actions of the Defendants. This opinion does not help resolve the class certification issue and does not provide anything more than lay observations. Opinion 2 and the underlying opinions should be excluded.

**C.      Opinion 3 and the related sub-opinions are unqualified, unreliable, and will not help the trier of fact.**

>    i. <u>Carleton is not qualified to opine about plugging & abandonment operations or the impact of land variation on the same.</u>

Carleton presents opinions related to oil and gas operations, specifically P&A, and that different land uses or classifications may have an impact on those P&A operations. *See* Ex. 1 at 7, 12. However, she is not an engineer or environmental scientist, and lawyers are commonly not experts in the *underlying subject matter* of their practice. To know how land variation may "impact the complexity, cost, and length of P&A operations[,]" *id.* at 7, Carleton would need to know *how* to P&A and reclaim a well—not just that such work must be done. In ignorance of their burden, HRM Defendants have not given any reason to think that Carleton has any expert knowledge of the P&A process and all the complexity it entails. Opinion 3, with its related

10

unenumerated opinions, should be excluded both from trial and from consideration related to class certification.

> ii. *Carleton offers only lay speculations about the effect of different land on P&A.*

From public records, Carleton identifies different land classifications present in the potential class and, without analysis or explanation, concludes that various types of land may impact P&A. She does not describe experience, principles, or methods for her conclusions. She is making lay observations, unhelpful to the factfinder and thus, not permitted as expert opinions. Any person can understand that differences in land use can impact physical operations on that land. Her conclusory and unhelpful statements must be excluded.

**D.    Opinion 4 and the related sub-opinions are unreliable, improper, and will not help the trier of fact.**

> i. *Carleton speculates about the effect, and even existence, of surface agreements.*

The opinion itself implies speculation: "Opinion 4: Various agreements *may* control the rights and obligations of the surface owners . . . ." Ex. 1 at 8 (emphasis added). This is a legal argument, not an expert opinion, and the argument is also wrong.

Carleton recites general real property legal concepts, like split estate ownership, and points to one claim release and one successor assignment provision, neither of which has any clear effect on the current claims at issue here. *Id.* at 8–10. Using this, Carleton says that "there *can* be differing agreements that *can* affect the rights and obligations of [the] surface owner[.]" *Id.* at 9 (emphasis added). Then, she claims that "many of the claims Plaintiffs bring . . . *may* be barred." *Id.* at 10 (emphasis added).

11

First, simply saying agreements *may* exist is speculation. Further, if contracts affecting such rights existed, it would be Defendants' burden to identify them and explain how they modify the rights of the potential class members, which they have not done here. *See, e.g.*, *Van v. LLR, Inc.*, 61 F.4th 1053, 1068 (9th Cir. 2023) ("[W]e do not consider . . . defenses that [the defendant] *might* advance or for which it has presented no evidence.") (emphasis in original) (internal citation omitted).

Second, Carleton found "two of the surface owner agreements by running a title chain on the surface owner as identified in Dickey Ex-2" and reviewed a third one from discovery. Ex. 1 at 9. But, she "did a chain of title analysis" on about fifty parcels (roughly 25% of the proposed class). *See id.* at 4. While opinions stating agreements *may* exist are speculative by their very nature, this one is particularly unreliable as it appears that out of fifty in-depth searches, Carleton only found two surface agreements.

Third, cited language does not affect claims at issue—that is why Carleton (and HRM Defendants in their response) speculated as to the potential effect of these types of agreements. She could not opine that they have an effect because that conclusion is not supported by what she cited. Such agreements typically focus on drilling and operation, and neither agreement clearly mentions P&A after production ends.

More importantly, Defendants cannot contract away their cleanup obligations. Any "opinion" that the Defendants can contract away their statutory and common law duties is contrary to controlling Colorado law. *See Miller v. Crested Butte*, *LLC*, 549 P.3d 228, 235–36 (Colo. 2024) ("settled precedent . . . that a party cannot discharge its obligation to perform a statutory duty by way of an exculpatory agreement.")

Instead of pointing to specific language in all existing agreements, HRM Defendants chose to rely on an expert speculating about agreements that *may or may not* exist and *may or may not* have an effect. This choice is even more damning—further showing that hypothesized agreements do not affect this litigation—because surface agreements are included in the documents that accompany asset transfers, meaning that for years, HRM Defendants have had all of the agreements for each of the wells at issue. If something was there, it would be on the front page of their response.

Several layers of speculation permeate Opinion 4 and its underlying opinions, overwhelmingly supporting exclusion. They should also be excluded because even if agreements sought to delegate responsibilities, they would not be *legally* effective.

> ii. <u>Interpreting regular contract terms is unhelpful and deciding whether contracts provide a defense is within the province of the Court.</u>

Whether tried to a court or a jury, understanding and interpreting common contract terms is within the province of the fact finder and expert testimony regarding the same is not helpful to the trier of fact. "In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language." *Sparton Corp. v. United States*, 77 Fed.Cl. 1, 8 (2007) (citing several circuit and district court opinions).

Additionally, whether a particular contract affects any of the claims in the case is a legal question for the Court to decide, a legal opinion is both improper and unhelpful.

13

**E.      Opinion 5 and related sub-opinions are speculative and unhelpful.**

   *i. <u>Lay speculation about the ownership of tank batteries & related equipment.</u>*

To support her opinion that "Plaintiffs' methods cannot tie oil and gas-related equipment to P3 Wells" and her related sub-opinions, Carleton states that "[a]lthough [she] did not review in depth records associated with the non-well lands identified in Dickey Ex-2, the ECMC database reflected that there are wells and operators not associated with P3 that likely relate to the oil and gas equipment or tank batteries for these non-well lands." Ex. 1 at 10. This is speculation. Without any investigation or consideration of the public records and physical information, she merely opines, in general terms, about who may or may not own and be responsible for the tank batteries and related equipment. None of this speculation supports denial of class certification. The speculation raised can be answered through various objective means.

First, and most importantly, HRM Defendants previously owned these wells and have records related to them—they have access to records that can identify off-site equipment or tank batteries. Second, HRM Defendants and Carleton have access to the ECMC database which, while imperfect, tracks off-site tank battery locations and flowlines (along with a smattering of other related information Carleton fails to consider), permitting someone to determine who owns those assets. Finally, due to statutorily required signage, an in-person inspection of the equipment would show the last operator. *See* 2 Colo. Code Regs. § 404-1:605 (requiring identifying signage).

Opinion 5 and its underlying opinions are unreliable because Carleton ignored almost all of the information relevant to the issue. Additionally, any variation of this

14

opinion would not assist the trier of fact because after review of available documents, there would be no opinion, just a recitation of documents. Reading what documents say does not require expert opinion.

## CONCLUSION

Plaintiffs respectfully request that this Court exclude all of Carleton's opinions from any proceeding in this case, including class certification. The report, which HRM Defendants use as a second brief to oppose class certification, presents opinions that are not only unsupported in relation to class certification, but also, with respect to trial, carry a high risk of confusing the jury even if vigorously attacked on cross-examination.

Dated this 31st day of July, 2025, in Denver, Colorado.

> *s/ Zigmas Polinauskas*
> Christopher P. Carrington
> Benjamin W. Hudgens
> Zigmas Polinauskas
> **RICHARDS CARRINGTON, LLC**
> 1444 Blake Street, Denver, Colorado 80202
> Telephone: 303-962-2690
> Email: chris@richardscarrington.com
>             ben@richardscarrington.com
>             zigmas@richardscarrington.com
> *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2025, I electronically filed the foregoing **PLAINTIFFS' MOTION TO EXCLUDE OPINIONS OF C. ELAINE CARLETON** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Richard B. Benenson
Justin L. Cohen
Matthew C. Arentsen
Max Porteus
Madeleine L. Tayer
BROWNSTEIN HYATT FARBER SCHRECK, LLP
rbenenson@bhfs.com
jcohen@bhfs.com
marentsen@bhfs.com
mporteus@bhfs.com
mtayer@bhfs.com

And via electronic mail:
John Hoffman
johnghoffman@icloud.com

*s/ Dyanna Spicher*
Dyanna Spicher, Paralegal