UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:24-cv-00823-CNS-CYC**

CINDY McCORMICK; RONALD McCORMICK; and TRUPP LAND MANAGEMENT LLC,

    Plaintiffs,

v.

HRM RESOURCES, LLC, a Delaware limited liability company;
HRM RESOURCES II, LLC, a Delaware limited liability company;
HRM RESOURCES III, LLC, a Delaware limited liability company;
HRM RESOURCES IV, LLC, a Delaware limited liability company;
L. ROGER HUTSON, an individual; TERRY PAPE, an individual;
PAINTED PEGASUS PETROLEUM, LLC, a Texas limited liability company;
and JOHN HOFFMAN, an individual

    Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR FIRST MOTION FOR LEAVE TO AMEND THE COMPLAINT**

---

Plaintiffs, through counsel, respectfully submit this Reply to *HRM Defendants'*[1] *Response in Opposition to Plaintiffs' First Motion for Leave to Amend Complaint*, filed September 26, 2025 (ECF No. 144) ("Response"), replying in support of *Plaintiffs' First Motion for Leave to Amend the Complaint*, filed September 5, 2025 (ECF No. 133) ("Motion"). Defendant John Hoffman and defaulted defendant Painted Pegasus Petroleum, LLC ("P3") did not respond to the Motion.

---

[1] "HRM Defendants" collectively refers to defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson, and Terry Pape.

## Reply

HRM Defendants' Response is grounded in a single argument: the Court should deny Plaintiffs' motion to amend because certain factual allegations should be disregarded—ostensibly because they violate Rule 11. Resp. at 15. HRM Defendants' arguments are without merit, and they rest on flawed misunderstandings of both the facts and the law. But the Court need not address those issues because the Response suffers from an even more fundamental defect: In the context of a motion to amend pleadings, it is not appropriate to consider Rule 11 arguments at all, let alone the evidence-assessment on which they are based. On a motion to amend to add punitive damages, the law is clear that the Court cannot consider contrary evidence and, instead, must construe all factual allegations in Plaintiffs' favor.

HRM Defendants attempt to convert this motion into an evidentiary contest—even requesting a hearing on the at-issue allegations. That is not permitted. Accordingly, the Court can grant Plaintiffs' motion on any of several grounds: (1) the Court *cannot* consider any of the evidence proffered by HRM Defendants, and, without the evidentiary issues raised by the HRM Defendants there is no substantive opposition to the Motion; (2) the Response impermissibly seeks relief under Rule 11, which can only be provided by the filing of an appropriate motion; and (3) the substantive issues raised by HRM Defendants demonstrate, at best, the existence of disputed facts for a future factfinder to resolve.

1. **The Court must disregard all 83 exhibits and related arguments, leaving no basis on which to deny the Motion.**

A motion to amend to add exemplary damages, like any other motion to amend, does not invite an evidentiary back-and-forth. Instead, "in the context of an assessment of the *prima facie* case for exemplary damages amendment purposes, [the Court] need only look at the evidence presented by the Plaintiff and take all reasonable inferences in the Plaintiff's favor. Contrary evidence is not part of the equation." *Affordify, Inc. v. Medac, Inc.*, 2020 WL 6290375, at *5 (D. Colo. Oct. 27, 2020). Fundamentally, the Court is applying a pleading standard and determining only "whether the evidence, when viewed in the light most favorable to Plaintiff, is sufficient to make out a prima facie case of willful and wanton behavior for the purpose of allowing Plaintiff to amend its Amended Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to prevail on the issue at trial." *Bituminous Cas. Corp. v. Hartford Cas. Ins. Co.*, 2013 WL 6676157, at *3 (D. Colo. Dec. 18, 2013).

Contrary evidence cannot be considered when ruling on whether to grant leave to amend to add exemplary damages. HRM Defendants cannot circumvent that standard by inviting this Court to engage in fact-finding at this stage—asserting that Plaintiffs' allegations "are entirely inconsistent with the evidence collected in discovery"—or claiming Rule 11 violations. To be sure, Plaintiffs dispute the purported Rule 11 allegations, but for purposes of this motion, that is of no moment. A trial court must accept the pleadings as true and construe them in the movant's favor. Under that standard, the Motion must be granted.

### 2. The Court cannot grant Rule 11 relief requested in a response brief.

Requesting Rule 11 relief in a response is not appropriate. "A motion shall not be included in a response or reply to the original motion." D.C.COLO.LCivR 7.1(d). Yet, HRM Defendants' Response is actually a motion for relief by another name. Rather than address Plaintiffs' Motion and its legal arguments, the Response is a motion for the Court to find certain allegations insufficiently supported. Local procedure is clear that such requests, contained in a response or a reply, shall be disregarded or stricken. *See Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, 2020 WL 10142458, at *3 (D. Colo. Dec. 8, 2020) (refusing to require a party to amend their complaint pursuant to Rule 11 because "[d]efendants' arguments are, in effect, a Rule 11 Motion inappropriately included within a Response" and explaining that the court would consider that issue at a later date upon filing of a "separate motion") (citing D.C.COLO.LCivR 7.1(d)); *see also Connolly v. Toll Bros., Inc.*, 2015 WL 2345639, at *1 (D. Colo. May 14, 2015) (striking response to the extent it sought fees under Rule 11).

Whether viewed as a Rule 11, 12, or 56 motion, the Response makes a separate request for relief and, in that respect, is improper and should be ignored. *See, e.g., Affordify*, 2020 WL 6290375, at *6 (rejecting an argument that was "more of a motion to dismiss or summary judgment argument than an argument against allowing an amendment to add a request for exemplary damages" where the defendants "did not challenge the original . . . claim with a Rule 12(b) motion" and noting that "briefing on the Motion to Amend [was] no place to be making summary judgment arguments").

4

### 3. The substantive issues raised by HRM Defendants demonstrate, at most, only the existence of factual disputes, not a basis to deny leave to amend.

Finally, and only if the Court were to venture into the procedurally improper arguments raised in the Response, the issues presented by HRM Defendants demonstrate, at most, the existence of factual disputes in this case.

HRM Defendants raise factual disputes in five categories of allegations: (1) whether Defendants knew P3 would go bankrupt; (2) that P3 engaged in "significantly more business operations in Colorado than Plaintiffs allege"; (3) that the Orphan Well Program includes economically viable wells; (4) that there was no post-bankruptcy transfer from HRM Defendants to P3; and (5) that certain wells have been plugged. These are factual claims, and HRM Defendants are entitled to raise such disputes, but only at the proper time and place. This is not it.

To be sure, Plaintiffs disagree with HRM Defendants' interpretation of the evidence. Because this is not the place for a detailed discussion and presentation of contested evidence, Plaintiffs do not here provide full briefing to contest HRM Defendants' evidentiary assertions. That said, a cursory review of Plaintiffs' Motion, a few of HRM Defendants' assertions, and a bit of further context reveals that, at most, HRM Defendants have identified factual disputes, not reasons to deny amendment.

Indeed, as to the **first** category of allegations, the Motion already explains in detail that P3's actual projections for plugging costs and liabilities for the wells at issue would leave P3 underwater according to both their contemporaneous communications and their CEO's sworn testimony. *See* Mot. at 9–10. Defendant John Hoffman

5

described P3 as "undercapitalized" and testified that the company would not be able to afford a bond call, which eventual bond call was a leading cause of P3's bankruptcy. *Id*. at 9. The Motion describes both actual testimony and circumstantial evidence suggesting that Defendants never intended to plug the wells. *See id*. at 10. Indeed, that is precisely why HRM Defendants paid P3 to take the wells off their books. *See id*. at 11. Notably, the terms of the deal to take on *all* the wells were negotiated at an in-person meeting and no witness has yet testified as to what was discussed at that meeting.[2] HRM Defendants' evidence does not contradict *any* of the above. Although HRM Defendants contend that there is not "one iota of evidence showing the HRM Defendants knew or constructively knew P3 would go bankrupt . . . or analyzed P3's financial condition" (Resp. at 9), HRM Defendants have disclosed that they collected balance sheets from P3 prior to the transaction and that defendant John Hoffman expressed concerns about P3's solvency and ability to handle liabilities and bonding obligations. *See* Mot. at 9–10; *id.* at **Exhibit C**; **Exhibit L** at 12:1–12 (Excerpts of P. McGraw Deposition).

As to HRM Defendants' **second** category of allegations, it is unclear how the extent of P3's operations in Colorado have anything to do with the request to add

---

[2] There is significant ongoing discovery, including of key HRM executives, that continues to yield important evidence. Indeed, at his deposition, taken after Plaintiffs filed their Motion, HRM's Vice President Patrick McGraw admitted that ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* **Exhibit L** at 72:22–74:23 (Excerpts of P. McGraw Deposition). To date, no witness has testified to the details that were discussed during that meeting that led P3 to take on additional pure-liability wells. *See* Mot. at 12.

punitive damages. The Motion does not turn on or even make reference to the *extent* of P3's operations as a basis for punitive damages. But taking the Response at face value, HRM Defendants contend that P3 "operated, produced minerals . . . and made money from wells." Resp. at 11. That is precisely what Plaintiffs argue was the plan: "Hoffman pocketed the money and P3 squeezed whatever revenues it could from the wells, without attending to any clean-up liabilities it knew were already past due." Mot. at 13. The semantics around the extent of P3's operations are irrelevant to the Motion, but even a casual review of either the Motion or the proposed amended complaint makes clear that the scheme involved *some* operation of the wells.

**Third**, HRM Defendants state that there is no basis for asserting that "Orphaned Wells" are by definition non-viable. Resp. at 11–12. The Motion makes no reference to the Orphan Well Program, so it is unclear what this argument has to do with the Motion. But the Response quotes the proffered definition of an Orphan Well and then argues that the definition is wrong. *Id.* The parties will be free to argue over the definitions of key terms in advance of trial, but the definition has nothing to do with the Motion.

**Fourth**, HRM Defendants contend that a post-bankruptcy transfer of the Evans Well was merely an administrative error rather than proof that they used P3 as a dumping ground for their liabilities. *Id*. at 12–14. Although HRM Defendants argue that this transfer was merely an "administrative error", the available evidence tells a different story, confirms that HRM materially benefitted from the Evans Well's classification as a P3 well, and that, shortly after the lawsuit was filed and no doubt realizing how damning a post-bankruptcy transfer would be to their defense, HRM Defendants, through their

7

attorneys, took steps to have the transfer "corrected" in the ECMC records. For context, a more complete history of the Evans Well is as follows:

- The Evans Well has been shut-in (or non-producing) since July 2000 according to ECMC records. **Exhibit M**. The Evans Well was plugged in August 2009 by Samson Resources Company. **Exhibit N**.

- In 2017, Samson Resources Company requested a bond release (state regulators often require oil and gas companies to provide "bonding" for the clean-up liabilities associated with wells, and those bonds are released once clean-up obligations are addressed or passed on to another responsible operator). The Evans Well was listed on Samson's Bond Release Inspection(s) report, **Exhibit O**, and subsequently failed inspection. **Exhibit N**. This failure meant that the Evans Well had remaining clean-up obligations.

- In 2019, the Evans Well was transferred from Samson Resources Company to HRM. **Exhibit P**.

- In August of 2022, HRM employee Gina Payne emailed a request to the ECMC for a release of HRM's bonds. The ECMC, via Debbie Lutz, responded: "The bonds cannot be released at this time. The bonds will be released when the well has passed final reclamation inspection and the operator has met any other obligations covered by the bonds or all liability against the bonds has been transferred and/or has been properly closed out." **Exhibit Q**. Debbie Lutz is referring to the Evans Well, which failed reclamation inspection.

- On October 3, 2023, a different HRM employee, Patrick McGraw, emailed Debbie Lutz at the ECMC again asking for the release of the same bonds, stating: "My understanding is that any/all outstanding items related to the Evans #1 well (API #081-06984) have been resolved. The Evans well was the only remaining well in HRM III's name." **Exhibit R**.

- A week later, on October 10, 2023, Debbie Lutz emailed Patrick McGraw, cc'ing Roger Hutson, stating: "Blanket Surface Surety ID 2018-0016, Instrument #B011234 and Blanket Plugging Surety ID 2018-0017, Instrument #B011235 cannot be released at this time. The bond can not be released until the well has passed final reclamation inspection, and the operator has met any other obligations covered by the bond, or all liability against the bond has been transferred and/or has been properly closed out. Initial review indicates the operator has 1 Failed Well, API 081-06984, Evans 1. The operator was made aware of this on 8/26/22 and again 7/7/23 when they requested the bonds to be released. The well will require a Final Reclamation Inspection and submission of the Form 4 Sundry Notice." **Exhibit S**.

8

- On that same day, Roger Hutson, HRM's CEO, forwarded Debbie Lutz's email directly to Julie Murphy, the Director of the ECMC, with the text "Fuuuuuuuck". **Exhibit T**. This email is one of several times Mr. Hutson reached out to Julie Murphy about this issue.

- The ECMC then transferred the Evans Well from HRM to P3 in the ECMC system **Exhibit U** (Plaintiffs_017810–14) & **Exhibit V** (Plaintiffs_0820–24), which resulted in the release of the bonds two days later, on October 12, 2023. **Exhibit R**.

- Plaintiffs filed the Complaint in this case a few months later, in February of 2024.

- Less than two weeks after Plaintiffs filed the Complaint, attorney Julia Rhine at Brownstein Hyatt Farber Schreck (the same firm representing the HRM Defendants here) sent a letter to Director Murphy at the ECMC, asking Director Murphy to correct this "inadvertent mistake." **Exhibit W**. In this letter, Ms. Rhine writes that "HRM III never had asset retirement obligations associated with the Evans #1 Well". *Id*. This statement is contrary to ECMC records.

HRM Defendants may dispute why or how the transfer happened, but it is undisputed that ECMC records showed a post-bankruptcy transfer of the Evans Well from HRM to P3, that there were a multitude of conversations between the ECMC and HRM related to this well that resulted in the transfer of the Evans Well to P3 and the release of the bonds to HRM, and that the transfer of the Evans Well to P3 materially benefitted HRM Defendants by shifting the reclamation obligations to P3, mid-bankruptcy. *See* **Exhibit U**; **Exhibit V**; **Exhibit T**. HRM Defendants' insistence that there is "no objectively reasonable basis" to claim that the Evans Well was transferred to P3 (Response at 14) is, itself, lacking any reasonable basis when juxtaposed with the undisputed evidence.

**Fifth** and finally, HRM Defendants argue that one of the named Plaintiffs' wells was plugged during the pendency of this litigation (referring to the McCormicks). Resp.

at 14–15. This assertion appears to have no tether to the Motion. In any event, the First Amended Complaint is brought on behalf of a class, the vast majority of whom have unplugged wells. Further, the First Amended Complaint, in addition to addressing unplugged wells, addresses associated equipment and materials, which still remain on the McCormicks' property. The allegations in the First Amended Complaint remain accurate.

## Conclusion

Plaintiffs' motion for leave to amend to add exemplary damages has made as sufficient prima facie showing for exemplary damages. HRM Defendants' Response is based exclusively on improper evidence, an improper request for relief, and arguments that have nothing to do with the substantive bases for exemplary damages set forth in the Motion. Accordingly, Plaintiffs respectfully request this Court grant the Motion.

Dated this 10th day of October, 2025, in Denver, Colorado.

*s/ Christopher P. Carrington*
Christopher P. Carrington
Benjamin W. Hudgens
Zigmas Polinauskas
**RICHARDS CARRINGTON, LLC**
1444 Blake Street, Denver, Colorado 80202
Telephone: 303-962-2690
Email: chris@richardscarrington.com
      ben@richardscarrington.com
      zigmas@richardscarrington.com

                    <u>*/s/ John S. Rossiter*</u>
                    John S. Rossiter Jr.
                    Setareh Homayoni
                    Camille Sippel
                    Benjamin Segal
                    **CLIENTEARTH USA, INC.**
                    501 Santa Monica Blvd., Suite 510
                    Santa Monica, CA 90401
                    Email: jrossiter@clientearth.org
                            shomayoni@clientearth.org
                            csippel@clientearth.org
                            bsegal@clientearth.org


                    <u>*/s/ Scott C. Borison*</u>
                    Scott C. Borison
                    **BORISON FIRM, LLC**
                    Email: scott@borisonfirm.com

                    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on October 10, 2025, I electronically filed the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF THEIR FIRST MOTION FOR LEAVE TO AMEND THE COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Richard B. Benenson
Justin L. Cohen
Matthew C. Arentsen
Max Porteus
Madeleine L. Tayer
BROWNSTEIN HYATT FARBER SCHRECK, LLP
rbenenson@bhfs.com
jcohen@bhfs.com
marentsen@bhfs.com
mporteus@bhfs.com
mtayer@bhfs.com

And via electronic mail:
John Hoffman
johnghoffman@icloud.com

                                                *s/ Dyanna Spicher*
                                                Dyanna Spicher, Paralegal