IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:24-cv-00823-CNS-CYC**

CINDY McCORMICK;
RONALD McCORMICK; and,
TRUPP LAND MANAGEMENT LLC,

    Plaintiffs,

v.

HRM RESOURCES, LLC,
HRM RESOURCES II, LLC,
HRM RESOURCES III, LLC,
HRM RESOURCES IV, LLC,
L. ROGER HUTSON,
TERRY PAPE,
PAINTED PEGASUS PETROLEUM, LLC, and
JOHN HOFFMAN,

    Defendants.

**HRM DEFENDANTS' BRIEF RELATING TO IN CAMERA DOCUMENTS**

## I.  BACKGROUND

In August 2024, the HRM Defendants sent Plaintiffs Requests for Production of Documents ("RFPs"), which requested, *inter alia*, communications with Carbon Tracker Initiative, Inc. ("CT"). In March 2025, the HRM Defendants sent third-party subpoenas to CT and three individuals (Dwayne Purvis, Theron Horton, and Greg Rogers) who contributed to the January 11, 2023 analyst report published on CT's website entitled "A New Theory of ARO[1] Creditor Rights"[2] ("Report).[3] The HRM Defendants sent these RFPs and subpoenas because, based on rudimentary research, it appeared that the Report formed the basis of Plaintiffs' Complaint. The HRM Defendants were surprised when, in April 2025, Plaintiffs' counsel informed them for the first time that they (1) would seek a protective order related to the subpoenas because CT, Purvis, Horton, and Rogers were all experts retained by Plaintiffs' counsel; and (2) anticipated designating Purvis as a testifying expert "when disclosures of expert witnesses are required."

In May 2025, the parties brought several discovery disputes to the Court, including Plaintiffs' refusal to produce communications with CT (Issue 7). After a hearing on May 14, 2025, the Court ordered Plaintiffs to produce a relevance log with communications between ClientEarth (Plaintiffs' counsel) and CT before expert retention on June 5, 2023.

Plaintiffs produced an initial log in August and an amended log in September

---

[1] ARO stands for asset retirement obligations and associated costs of retiring a well.
[2] Available for download at https://carbontracker.org/reports/a-new-theory-of-aro-creditor-rights/ (last visited October 22, 2025).
[3] Dwayne Purvis, Theron Horton, and Greg Rogers were all listed on the Report as contributors or advisors. In August 2025, the HRM Defendants also sent a third-party subpoena to Robert Schuwerk, who was the Executive Director of CT from 2014 to 2025 and appeared to also contribute to the publication of the Report.

1

2025.[4] Those logs revealed that before the lawsuit (1) Rogers and Schuwerk communicated with ClientEarth about "ARO creditor rights"; (2) Rogers and Schuwerk communicated with ClientEarth and a litigation funder about "litigation selection" and "potential funding sources"; and (3) there was a monthly non-profit call between CT and ClientEarth (and possibly others).[5] Without the benefit of reviewing these documents, they appear to be highly relevant to the credibility of CT and its employees and advisors to act as experts here, and are not likely protected by the work product ("WP") doctrine.

Finally, the fact that Plaintiffs have not yet designated their testifying experts—but are trying to shield production of documents with all consulting and potential testifying experts—puts the HRM Defendants in a quandary. The discovery cutoff is December 19, 2025, yet Plaintiffs do not need to disclose their testifying expert(s) until February 27, 2026. This allows Plaintiffs to wait until the discovery deadline passes to designate a testifying expert, and then prevent the HRM Defendants from obtaining discovery from the nontestifying experts, even though such information is discoverable. The Court should preempt any such gamesmanship by ordering the production of the communications set out below and making clear that communications between Plaintiffs' counsel and CT or any individual involved in the Report before retention are relevant and discoverable.

---

[4] The HRM Defendants refer the Court to the HRM Defendants' Summary of Remaining Disputes re: Discovery Issue No. 7, which the HRM Defendants submitted to the Court via email on September 5, 2025, and which sets out Plaintiffs' shifting narrative on these communications (from first saying there were a "couple" emails to then saying at the hearing that there were nearly 40, to then producing a log with around 20 entries), as well as deficiencies in Plaintiffs' relevance logs and the relevance issues raised in the log.
[5] Plaintiffs did not list the invitees of these calls on their relevance log.

2

## II. **LEGAL STANDARDS**

Relevance is broadly construed at the discovery stage. *United States ex rel. Schroeder v. Medtronic, Inc.*, 2023 WL 4864983, at *3 (D. Kan. July 31, 2023). Different discovery rules apply depending on whether an expert is deemed a testifying or consulting (i.e., nontestifying) expert. *Compare* F.R.C.P. 26(b)(4)(C) *with* F.R.C.P. 26(b)(4)(D). For a testifying expert, parties may discover, among other things, any nonprivileged document or communication that reveals that expert's bias or otherwise bears on that expert's credibility because a witness's bias is relevant, admissible, and can be used to impeach that witness. *See, e.g.*, *Mascenti v. Baker*, 237 F.3d 1223, 1240 (10th Cir. 2001) ("Proof of bias of a witness is almost always relevant[.]"); *Evans v. Colo. Permanente Med. Grp.*, 902 P.2d 867, 874 (Colo. App. 1995) (expert's board position was probative of bias).

For nontestifying experts, pre-retention communications are discoverable. *See, e.g.*, *Eliasen v. Hamilton*, 111 F.R.D. 396, 403 (N.D. Ill. 1986) ("[A nontestifying] expert may be deposed about information acquired or opinions formed prior to his employment by a party."); *Marine Petro. v. Champlin Petro.*, 641 F.2d 984, 991 (D.C. Cir. 1979) (same).

Courts do not allow a party or attorney to "effectively extend[] work product protection to anything [a party's] employees write or say about the litigation, and in doing so convert[] every waiver of privilege into an invocation of work product protection." *Beltran v. InterExchange, Inc.*, 2018 WL 839927, at *8 (D. Colo. Feb. 12, 2018). While some courts have found that the WP protection is not automatically waived by any disclosure to third parties, there is a definite waiver if the disclosure "substantially increases the opportunity for potential adversaries to obtain the information." *Id.*, at *4.

3

### III.    ARGUMENT

A.    <u>Experts' "ARO Creditor Rights Litigation" Communication Before Engagement</u>

The relevance log entry between Rogers, Schuwerk, and ClientEarth with the subject line "ARO creditor rights litigation" regarding "general litigation strategies and potential funding sources" appears to be highly relevant. To begin, from a subject matter perspective, the subject is nearly identical to the Report title ("A New Theory of ARO Creditor Rights"). And both the Report and Complaint are based on the same novel theory of recovery relating to abandoned oil and gas wells and AROs, and have several instances of identical or substantively similar language, images, data, and citations.

Rogers' and Schuwerk's involvement in litigation and funding strategy for ClientEarth relating to ARO creditor rights—even if not directly related to this lawsuit—is relevant and discoverable. If Rogers is designated a testifying expert, that could bear on his bias or credibility, for example, by showing Plaintiffs' counsel's attempts to influence his opinion, or that he is an advocate disguised as an "expert." *See, e.g.*, Adv. Comm. Note, 2010 Amend., F.R.C.P. 26(b)(4) (expert discovery "permit[s] full inquiry into…potential sources of bias"). But even if Rogers (and CT) remain nontestifying experts and another person affiliated with the Report (like Purvis) is designated as a testifying expert, this communication would still be relevant because Purvis worked with CT on their Report, which appears to have a stake in strategy and funding for ARO creditor rights lawsuits like this one. Purvis' credibility and bias thus would be implicated.

This communication is also not likely protected by WP, as it is from a non-party (Rogers) and copies another non-party (Schuwerk). *See Beltran*, 2018 WL 839927, at

4

*6–8; *Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 539 (D. Kan. 1989) (WP "status does not apply to documents…from a third party."). Indeed, it is not clear who the client or matter is, as these communications were *before* Plaintiffs were solicited in this case.

B.    Experts' Communications with Litigation Financier Before Engagement

The relevance log entries with subject descriptions "Privileged communications re litigation selection", "RE: Introduction," and "Re: Litigation Options" concern "litigation strategies" and "potential funding sources," making them highly relevant. Despite Plaintiffs asserting some of the communications are WP, none are. The communications are between a litigation financier (Omni Bridgeway),[6] unretained witnesses (Rogers and Schuwerk), and ClientEarth (long before it represented Plaintiffs)—and appear to be advocacy efforts to get money for a lawsuit, not represent a client. Even if the emails are unrelated to this litigation, Rogers and Schuwerk are still communicating with ClientEarth about "general litigation strategies" and "potential funding sources" with a litigation funder. For the reasons explained in Section A, that implicates credibility and bias for any expert associated with CT or involved in the Report, and it is not protected by WP.

C.    Monthly Non-Profit Calls

Without the benefit of knowing what these "[n]on-profit coalition call[s]" are about and who they are with (other than CT and ClientEarth), it is difficult to assess relevance. But, again, if CT and ClientEarth are jointly strategizing about environmental impact litigation, that implicates bias and credibility for any expert associated with CT.

---

[6] The "Re: Litigation Options" communication is not with Omni Bridgeway, but is about "potential funding sources."

5

DATED October 22, 2025.

*/s/ Matthew C. Arentsen*
Richard B. Benenson, #32566
Justin L. Cohen, #44811
Matthew C. Arentsen, #45021
Max Porteus, #56405
Madeleine L. Tayer, #61762
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202
Phone: 303-223-1100
Fax: 303-223-1111
Email: rbenenson@bhfs.com
   marentsen@bhfs.com
   jcohen@bhfs.com
   mporteus@bhfs.com
   mtayer@bhfs.com

*Attorneys for Defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson and Terry Pape*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 22, 2025, I electronically filed a true and correct copy of the foregoing **HRM DEFENDANTS' BRIEF RELATING TO IN CAMERA DOCUMENTS** via the CM/ECF system which will send notification of such filing upon all counsel of record. I further certify that I electronically served a true and correct copy of the foregoing upon John Hoffman, the pro se defendant.

Christopher P. Carrington
Ben Hudgens
Zigmas Polinauskas
Richards Carrington, LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 962-2690
Email: chris@richardscarrington.com
ben@richardscarrington.com
zigmas@richardcarrington.com

Scott C. Borison
Borison Firm LLC
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Phone:301-620-1016
Email: scott@borisonfirm.com

Camille Sippel
Setareh Homayoni
Benjamin Segal
ClientEarth USA, INC.
4192 Marcasel Avenue
Los Angeles, CA 90066
Phone: 605-397-7951
Email: csippel@clientearth.org
shomayoni@clientearth.org
bsegal@clientearth.org

John Stevens Rossiter, Jr.
ClientEarth USA, Inc.
501 Santa Monica Boulevard, Suite 510
Santa Monica, CA 90401
Phone: 925-890-1306
Email: jayrossiter5@gmail.com
*Counsel for Plaintiffs*

John Hoffman
3201 Bayshore Drive
La Porte, TX 77571
Phone: 713-962-0708
johnghoffman@icloud.com

*Pro se Defendant*

                    */s/ Kathleen M. Stehling*
                    Kathleen M. Stehling, Paralegal

7