UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00823-CNS-CYC

CINDY McCORMICK; RONALD McCORMICK; and TRUPP LAND MANAGEMENT LLC,
    Plaintiffs,

v.

HRM RESOURCES, LLC, a Delaware limited liability company;
HRM RESOURCES II, LLC, a Delaware limited liability company;
HRM RESOURCES III, LLC, a Delaware limited liability company;
HRM RESOURCES IV, LLC, a Delaware limited liability company;
L. ROGER HUTSON, an individual; TERRY PAPE, an individual;
PAINTED PEGASUS PETROLEUM, LLC, a Texas limited liability company;
and JOHN HOFFMAN, an individual
    Defendants.

---

**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA ISSUED TO NON-PARTY KAYNE ANDERSON CAPITAL ADVISORS, L.P.**

---

Plaintiffs Cindy McCormick, Ronald McCormick, and Trupp Land Management, LLC (collectively "Plaintiffs"), through counsel, respectfully move to compel Non-Party Kayne Anderson Capital Advisors, L.P. to comply with the Subpoena to Produce issued by Plaintiffs pursuant to Fed. R. Civ. P. 45. In support, Plaintiffs state as follows:

**Certification Pursuant to D.C. COLO. L.CivR 7.1(a):** Plaintiffs' counsel certifies that they have conferred with counsel for non-party Kayne Anderson Capital Advisors, L.P. ("Kayne") on multiple occasions via email and virtual meetings, but the parties were unable to reach a resolution. Further, Plaintiffs' counsel certifies that Kayne has consented to resolving this dispute in this jurisdiction.

**I.    INTRODUCTION**

Kayne is the majority owner and primary financier of HRM.[1] Beyond just providing capital, Kayne is deeply involved in HRM's organizational strategy and decision making—Kayne controls HRM's board and requires board approval for material decisions, including divestments. Kayne has significant firsthand knowledge of HRM's finances, the course of events that led to the transaction at the heart of this litigation, and HRM's entire mode of operation. Kayne also received funds that should have been but were not used to clean up wells that HRM then dumped on defendant Painted Pegasus Petroleum, LLC ("P3").

Unfortunately, since service of the subpoena *eight months ago*, Kayne has produced just twenty documents and has withheld key documents about HRM Defendants'[2] conduct and the events at issue. A true and correct copy of the subpoena is attached hereto as Exhibit 1. Plaintiffs have repeatedly conferred with Kayne and offered significant compromises regarding search terms, but Kayne has delayed under the guise of unreasonable objections while failing to perform some of the most rudimentary steps of document collection and review.

Discovery closes on December 19th, 2025. Several depositions have been taken without the benefit of important documents, and several others will be taken in the next

---

[1]    "HRM" means, collectively: HRM Resources, LLC; HRM Resources II, LLC; HRM Resources III, LLC; and HRM Resources IV, LLC.

[2]    "HRM Defendants" means, collectively: HRM and Defendants L. Roger Hutson and Terry Pape.

six weeks. Given these impending deadlines and unsuccessful conferral attempts, Plaintiffs move to compel and respectfully request that this Court grant this Motion.

## II.  BACKGROUND

In this case, Plaintiffs seek to hold Defendants accountable for a fraudulent transfer of some 200 uneconomic oil and gas wells (the "Wells") from HRM to P3 in order to avoid the cleanup obligations associated with them ("Transfer at Issue").

### A. The Subpoena and the Document Request at Issue.

On March 18, 2025, Plaintiffs served Kayne with a subpoena requesting the production of documents related to (1) the Transfer at Issue or otherwise related to the Wells, (2) communications with the ECMC[3] or P3 related to the Wells, (3) the impact of the Wells on HRM's financial position, (4) Kayne's investment position in HRM, (5) HRM Board of Directors positions held by Kayne, (6) Kayne employees that worked with HRM, (7) Anadarko Petroleum Corporation's ("Anadarko") closing of the Third Creek gas gathering system in Colorado and its impact on HRM and HRM's plans for the Wells, and the (8) formation, initial investment, divestment, or dissolution of HRM entities. *See generally*, Ex. 1.

### B. The Production and the Dispute.

On May 6, 2025, Kayne produced nineteen documents. The original production had unilateral redactions for relevance and was missing an attachment. It took Kayne over two months, until August 1, 2025, to produce unredacted records and until August

---

[3]  "ECMC" stands for the Colorado Energy Carbon Management Commission, formerly the Colorado Oil and Gas Conservation Commission ("COGCC").

8, 2025, to produce the missing attachment. These records directly referred to the Wells and HRM's financial position but had not been produced by HRM. Plaintiffs have repeatedly conferred with Kayne, seeking compliance with the subpoena, but have had no success despite Kayne's acknowledgement that it possesses a significant volume of records related to this litigation. Kayne played a key role in HRM and its records are relevant to this litigation. *See* Exhibit 2, Excerpts of Patrick McGraw's deposition, at 147:12–23; 151:23–152:1, 153:14–16.

The dispute with Kayne is over search terms and the production of specific relevant documents, with Kayne's disagreement centering around the burden of reviewing and producing documents, not whether the documents sought are relevant.

### C. Search Terms.

The parties' dispute centers on search terms. After months of conferral, Kayne eventually agreed to produce documents responsive to a modest set of search terms but maintains that additional search terms are too burdensome. Kayne refuses to produce anything while this dispute is pending. The current dispute is over some 10,000 documents, the majority (8,500+) of which are related to one term— "Evans Well". Plaintiffs have inquired as to whether this search term is capturing false hits but have received limited information from Kayne on the issue.

Plaintiffs' search term proposal and Kayne's limited response offer are discussed in turn below. Copies of the hit reports for the undisputed search terms and the disputed search terms are attached hereto as Exhibits 3 and 4, respectively.

4

1. "Painted Pegasus" OR "p3petro" OR "Black Elk" OR John@MoFoxx.com OR johnghoffman@icloud.com, resulting in 531 documents with hits, including groups. Ex. 4 at 2.

   a. Kayne's offer includes searching "P3petro" OR "Pegasus", which results in roughly 1,700 documents with hits, including groups, Ex. 3 at 3—three times higher than the result of Plaintiffs' suggested P3-related terms.

2. "state.co.us" OR "coag.gov" OR "ECMC" OR "COGCC", resulting in 1,533 documents with hits, including groups. Ex. 4 at 2.

   a. Kayne's offer includes "COGCC" OR "ECMC" OR "GCC", resulting in roughly 1,100 to 1,700 documents with hits, including groups (Kayne's report did not de-duplicate these terms). Ex. 3 at 3. Similar to Plaintiffs' request, except it excludes specific targeted terms.

3. "Evans 1" OR 081-06984 OR "Evans well", resulting in 9,290 documents with hits, including groups. Ex. 4 at 2.

   a. Kayne's offer includes searching "Evans 1" OR 081-06984, resulting in roughly 700 documents with hits, including groups. Ex. 3 at 3. Kayne has not provided any insight into why "Evans Well" is returning more than 8,500 hits or how we can work to reduce it.

4. ("HRM" OR "Hutson" OR "McGraw") AND "Third Creek" OR "3rd Creek", resulting in 324 documents with hits, including groups. Ex. 4 at 2.

   a. Kayne's offer does not include any of these terms.

5. ("HRM" OR "Hutson" OR "McGraw") AND "bond", resulting in 4,507 hits, including groups. *Id.*

   a. Kayne's offer does not include any of these terms.

**D. Specific Documents.**

In parallel with search terms, Plaintiffs requested that Kayne produce a limited set of easily identifiable documents. The requested records are documents that any private equity company would maintain: financial statements, budgets, status reports, governing documents, performance reports, and other similar items that are identified in

5

HRM's operating agreements. Kayne responded to this request by stating that "there was not a centralized location where Kayne kept organizational documents related to the HRM entities," so such a request "would involve quite an extensive search of relatively broad categories of documents, rather than specific documents." Exhibit 5, Oct. 3, 2025 email Kayne's counsel. However, the deposition of a former Kayne employee, who now works for HRM, contradicts this statement: "We had folder structures that had each portfolio company." Exhibit 6, Excerpts of Todd Burgamy deposition transcript at 99:12–15. After reviewing this testimony, Kayne agreed to look for and collect these documents but did not agree to produce the specific documents requested by Plaintiffs. Plaintiffs still await information on the file structure of these folders.

Plaintiffs seek the following specific and easily identifiable documents (many of which are required to be kept by HRM and shared with Kayne by HRM's operating agreements):

- Documents related to the dissolution of HRM II, including any dissolution accounting documents;

- Any audit for any HRM entity in 2018 and 2019;

- Monthly and quarterly financial statements and budget documents for HRM II for January 2018 through dissolution;

- All reserve reports for HRM II for January 2018 through dissolution or a reason why those were not created as required by the operating agreement; and

- HRM II board meeting agendas, minutes, and copies of any documentation of voting in board meetings from January 2018 through dissolution.

6

### III. LEGAL STANDARD

"[T]he scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26(b)." *Scott v. Antero Res. Corp.*, 2020 WL 7212169, at *2 (D. Colo. Feb. 6, 2020). Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1).

"Evidence is relevant if[] it has any tendency to make a fact more or less probable than it would be without the evidence[] and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevancy is broadly construed, and a request for discovery should be considered if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 300 F.R.D. 678, 683 (D. Colo. 2014) (internal citation omitted). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 2008 WL 795815, at *5 (D. Colo. Mar. 21, 2008).

If Rule 45 discovery is relevant, a court will then consider "whether the subpoena[] will subject a person to undue burden[.]" *Hinrichsen v. Sedgwick Claims Mgmt. Servs., Inc.*, 2025 WL 1433811, at *1 (D. Colo. May 19, 2025); *see Stouder v. M&A Tech., Inc.*, 2010 WL 4852280, at *2 (D. Colo. Nov. 19, 2020) (considering, in the context of a motion to compel, whether subpoena was unduly burdensome or expensive); *Myers v. Mid-West Nat'l Life Ins. Co.*, 2008 WL 2396762, at *2 (D. Colo. June 5, 2008) (same); *Picco v. Glenn*, 2014 WL 4099286, at *2 (D. Colo. Aug. 20, 2014)

(same). "[D]eterminations of issues of 'undue burden' are committed to the discretion of the trial court." *Profita v. Puckett*, 2017 WL 1491003, at *29 (D. Colo. Apr. 25, 2017) (internal citation omitted).

## IV. ARGUMENT

The Court should grant Plaintiffs' Motion—ordering Kayne to apply Plaintiffs' search terms and produce returned documents in addition to specific documents identified above—because Plaintiffs' requests seek highly relevant documents that Plaintiffs cannot otherwise obtain and because the request is not unduly burdensome considering Plaintiffs' narrowing of the request, Kayne's involvement in the Transfer at Issue, and its interest in the outcome of the litigation.

### A. Plaintiffs seek highly relevant documents that help evaluate the Transfer at Issue or the Wells themselves; many cannot be obtained elsewhere.

At the core of Plaintiffs' claims is the allegation that HRM fraudulently transferred roughly 200 negative-value wells to P3 in order to avoid cleanup costs. *See* Compl. at ¶¶ 8, 77 (ECF 4). As both the majority owner of HRM and a decision-maker in regard to the Transfer at Issue, Kayne possesses unique documents critical to proving Plaintiffs' allegations, such as internal communications and financial and engineering analyses regarding the Transfer and/or the Wells.

Kayne is not a light-touch, absentee investor. Kayne controls HRM's board, Kayne representatives attend weekly meetings with HRM executives, and Kayne approval is required in any of HRM's material decision-making. Ex. 2 at 147:12–148:14, 152:2–153:16. HRM regularly reports to Kayne about its finances and operations and was directly involved in the Transfer at Issue. Ex. 2 at 153:14–16.

8

Kayne has unique documents that bear on the Wells, the Transfer at Issue, and HRM's business practices. For example, the twenty documents Kayne produced include quarterly valuations for HRM II (not previously produced by HRM), and highly relevant emails discussing these valuations and how the Wells might impact valuations. The operating agreements for HRM also indicate that Kayne is likely to have documents analyzing the Wells and the Transfer at Issue, which shed light on key issues, like HRM's accounting of clean-up liabilities. Discovery has also shown that HRM shared budgets and financial statements with Kayne, items which provide a detailed view of well value and the impact of the Transfer at Issue on HRM's assets and liabilities; however, HRM has not produced financial statements for the months when the Transfer at Issue occurred. Kayne appears to be the only potential source of these records.

The material sought is relevant for multiple other reasons. First, Kayne is likely to have documents that shed light on the strategic thinking and financial motivations that led HRM to offload the Wells. Second, Kayne's documents are likely to provide insight into HRM's mode of operation, which is relevant to motive, knowledge, and intent. Indeed, it is particularly important to understand HRM's general course of conduct here given that, as Plaintiffs pled, at the time of the Complaint, a very high percentage (over 40% of all orphaned wells in Colorado) had passed through HRM's ownership and it appears that a significant component of HRM's business model is to siphon revenue from marginal wells before dumping them into entities destined for bankruptcy.

Moreover, because of HRM's poor security and data management practices, Kayne is likely to possess crucial HRM documents that HRM cannot (or will not)

9

produce. HRM has admitted to a loss of documents and communications due to a data breach and intentional deletion of employee emails. P3, likewise, lost most of its documents and communications in the wake of its bankruptcy, so to the extent Kayne communicated with P3 representatives, those communications can only be discovered through Kayne. Accordingly, many important documents related to the Wells, the Transfer at Issue, and HRM's general business practices may only exist in Kayne's files.

Plaintiffs have vigorously sought discovery from the Defendants, but it is now apparent that Plaintiffs' last, best chance at important discovery of key documents is to get them from Kayne, as there may be no other way to access some of these materials.

In short, Plaintiffs' requests are carefully crafted to seek unique, valuable evidence. Kayne's objections amount to arguments about burden and breadth. But, as explained below, most of the objections consist of unsupported boilerplate language and none are persuasive.

### B. *Kayne's boilerplate objections fail to properly balance applicable factors and ignore the importance of requested discovery that has been communicated to Kayne for months.*

Kayne has based its recalcitrance on a raft of boilerplate objections. None are persuasive. First, with respect to *every single* request, Kayne repeats the objection that Plaintiffs' requests are "overbroad, unduly burdensome, not proportional to the needs of this case and not reasonably calculated to lead to the discovery of admissible evidence." Exhibit 7, Kayne's Objections and Responses to Plaintiffs' Subpoena to Produce Documents. Such repetitive boilerplate objections are improper and ineffective. *See Banks v. Jackson*, 2021 WL 3857614, at *2 (D. Colo. Aug. 27, 2021) ("[M]erely

asserting boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. without . . . articulating the particular harm that would accrue if the responding party were required to respond to the discovery request simply is not enough.") (citation omitted, cleaned up); *Greystone Const., Inc.*, 2008 WL 795815, at *5 ("Generalized objections that a discovery request is vague, overly broad or unduly burdensome are not acceptable and should be overruled.").

Second, Kayne also objects to all requests seeking documents "from outside of the time frame of the events at issue in this Action." Ex. 7. This boilerplate objection does not make sense as applied to the Requests. For example, some Requests relate to the Transfer at Issue or the preceding closure of the Third Creek gathering system, so are implicitly time-constrained. Others relate to issues that should not be constrained by time, such as: (1) communications with P3, HRM, or the ECMC about the Wells, which are likely to be relevant regardless of when they occurred, and (2) Kayne's historical financial relationship with HRM, which is relevant to the issue of mere continuation as well as HRM's mode of operation/pattern of practice. Additionally, in almost all instances, Plaintiffs have suggested limited time frames.

With respect to documents "relating to the impact of the Wells on HRM's financial position," Kayne objects that this language is "vague and ambiguous as it is unclear which documents . . . purportedly reflect 'the impact of the Wells on HRM's financial position.'" Ex. 7 at No. 7. However, Plaintiffs provided several examples of such documents, including (1) minutes and notes from meetings, (2) monthly or annual financials, (3) communications containing information on costs, environmental issues,

11

etc., among others. And Plaintiffs have spent seven months seeking to clarify and limit such issues in conferral. Furthermore, merely asserting that something is vague is not an excuse to refuse to comply with discovery obligations. *See Banks*, 2021 WL 3857614, at *2. Where a party is unclear as to the exact meaning of a request, the proper response is to provide the definition one believes is accurate and then to respond to the request as one has interpreted it. *See id.* at *3 ("[A] responding party is charged with exercising common sense and attribut[ing] ordinary definitions to terms in discovery requests.") (internal citation omitted); *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 561 (D. Colo. 2014) ("Discovery requests must be given a reasonable construction, and a responding party is not permitted to conjure up ambiguity where there is none.").

Finally, Kayne objects to Plaintiffs' requests "pertaining to HRM entities that were not involved in the transactions that are the subject of this lawsuit." Ex. 7 at Nos. 8–10. This is a rehash of HRM's assertion that its entities—which share the same name, personnel, IP, business strategies, leadership, and financial backing (from Kayne)—are different from one another. As Judge Sweeney noted in her order denying the motion to dismiss, Plaintiffs have adequately alleged that the four HRM entities are "mere continuations of each other." Ord. Denying Mot. to Dismiss, ECF 90 at 4.

Because mere continuation is in dispute, documents related to each HRM entity are necessarily relevant. "The mere continuation exception [to the general rule that successor corporations are not liable] applies when there is a continuation of directors, management, and *shareholder interest* and, in some cases, inadequate consideration."

12

*CMCB Enters., Inc. v. Ferguson*, 114 P.3d 90, 93 (Colo. App. 2005) (emphasis added). The documents sought from Kayne—which will likely show Kayne treating the HRM entities similarly, continuity of Kayne's stake and involvement, and continuity of HRM's strategy—directly relate to the disputed issue of mere continuation.

### C. Plaintiffs' request does not impose an undue burden because Kayne is more than capable of responding to the narrowed request, because Kayne was involved in and benefitted from the Transfer at Issue, and because this litigation has public importance.

The factors used to determine undue burden strongly support Plaintiffs' contention that Kayne can and should bear the quite reasonable costs of compliance with the subpoena.

"On a Motion to Compel nonparty production . . . courts also consider the burden on the nonparty, relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *Premier Election Sols., Inc. v. Systest Labs Inc.*, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009). Courts consider the same factors when assessing undue burden under Rule 45, whether in consideration of a motion to compel, a motion to quash, or a motion for fee shifting. *See e.g., Electro-Mechanical Prod., Inc. v. Alan Lupton Assoc. Inc.*, 2025 WL 51205, at *8 (D. Colo. 2025) (applying the same factors in "[i]n determining whether sanctions should be imposed under Rule 45(d)(1)") (internal citation omitted). When weighing what burden is due under Rule 45, Courts also consider the following factors:

> (1) whether the non-party actually has an interest in the outcome of the case,
> (2) whether the non-party can more readily bear the costs than the requesting party,
> (3) whether the litigation is of public importance,

13

> (4) the scope of the discovery,
> (5) the invasiveness of the request,
> (6) the extent to which the producing party must separate responsive information from privileged or irrelevant material, and
> (7) the reasonableness of the costs of production.

*Id.* (internal citation omitted).

Kayne owned at least 94% of HRM II, approved the Transfer at Issue, and benefited from distributions of funds that may have otherwise been used for cleanup. For example, after considering the potential plugging liability related to the Wells—internally estimated to be at least $9.95 million—Kayne approved a $10 million distribution in April 2018, months before the Transfer at Issue, when HRM was in discussions about the Wells with a different potential buyer. Kayne has a significant interest in the outcome of this litigation.

Second, Kayne is also quite capable of bearing the costs of discovery. Compared to Plaintiffs, who are regular landowners in Colorado, Kayne is a large investment entity with annual revenue in the hundreds of millions and investments in the billions.

Third, this litigation has significant public interest. Plaintiffs seek to remedy the land and environment burdened by these abandoned oil and gas wells. Over 100 landowners are impacted by these wells. Furthermore, government funds would end up being used to remedy these issues, which will take years (if not decades in some instances). The largest portion of these funds has come from state and federal taxpayers, but also includes funds paid by oil and gas operators that have nothing to do with these abandoned wells.

Reviewing a few thousand documents responsive to narrowly tailored search terms for documents that cannot be obtained elsewhere is not unduly burdensome for a company worth over a billion dollars, with deep, sustained involvement in Defendants' business and strategy.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Kayne to apply the search terms proposed by Plaintiffs and produce documents responsive to those search terms as well as the requested specific documents kept in Kayne's files.

Respectfully submitted this 19th day of November 2025, in Denver, Colorado.

*s/ Benjamin W. Hudgens*
Christopher P. Carrington
Benjamin W. Hudgens
Zigmas Polinauskas
**RICHARDS CARRINGTON, LLC**
1444 Blake Street, Denver, Colorado 80202
Telephone: 303-962-2690
Email: chris@richardscarrington.com
ben@richardscarrington.com
zigmas@richardscarrington.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 19, 2025, I electronically filed the foregoing **MOTION TO COMPEL COMPLIANCE WITH SUBPOENA ISSUED TO NON-PARTY KAYNE ANDERSON CAPITAL ADVISORS, L.P.** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Richard B. Benenson
Justin L. Cohen
Matthew C. Arentsen
Max Porteus
Madeleine L. Tayer
BROWNSTEIN HYATT FARBER SCHRECK, LLP
rbenenson@bhfs.com
jcohen@bhfs.com
marentsen@bhfs.com
mporteus@bhfs.com
mtayer@bhfs.com

Melissa L. Cizmorris
Akerman LLP
Melissa.cizmorris@akerman.com

And via electronic mail:
John Hoffman
johnghoffman@icloud.com

                                  *s/ Dyanna Spicher*
                                  Paralegal