IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00823-CNS-CYC

CINDY MCCORMICK,
RONALD MCCORMICK, and
TRUPP LAND MANAGEMENT LLC,

      Plaintiffs,

v.

HRM RESOURCES, LLC,
HRM RESOURCES II, LLC,
HRM RESOURCES III, LLC,
HRM RESOURCES IV, LLC,
L. ROGER HUTSON,
TERRY PAPE,
PAINTED PEGASUS PETROLEUM, LLC, and
JOHN HOFFMAN,

      Defendants.

---

**ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Federal Rules of Civil Procedure 8 and 15 dictate standards for pleading and amendment. A Colorado state statute has additional requirements for pleading exemplary damages. Colo. Rev. Stat. § 13-21-102(1.5)(a). For twenty years, courts in this District have applied the state statute when plaintiffs have sought to add a request for exemplary damages. Since that practice began, the Supreme Court's decisions in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), and *Berk v. Choy*, 146 S. Ct. 546 (2026), have changed how courts analyze conflicts between the Federal Rules and state statutes. Applying that analysis here reveals that this District's practice should no longer stand. With the Federal Rules governing their motion, plaintiffs Cindy McCormick, Ronald McCormick, and Trupp Land Management

LLC's bid to amend their complaint easily clears the relevant standards. Accordingly, their First

Motion for Leave To Amend the Complaint, ECF No. 133, is **GRANTED**.

## BACKGROUND

The presiding district judge in this case previously outlined its background, and there is

no need to reinvent the wheel:

> Plaintiffs are landowners who have approximately 200 orphaned oil and gas wells on their property. ECF No. 4, ¶¶ 10–14. Orphaned wells are unplugged wells that no longer produce, but have no owner to plug them and remediate the site. *Id.*, ¶ 51. Orphaned wells can cause significant problems, including impairing surface owners' property uses, harming wildlife, creating safety hazards to the public, and harming the environment through pollution, including methane leaks and oil seepage. *Id.*, ¶¶ 61–73.

> The Colorado Energy and Carbon Management Commission (ECMC) runs the Orphan Well Program (OWP). *Id.*, ¶¶ 54–56. The OWP identifies abandoned wells, prioritizes them, and pays to plug, remediate, and reclaim abandoned wells where the operator cannot be located or refuses to comply with its asset retirement obligations. *Id.*, ¶¶ 55–56. The OWP is funded partly by oil and gas operators and partly through federal funding. *Id.*

> Defendant Painted Pegasus Petroleum, LLC (P3) last owned and operated the wells on Plaintiffs' land. *Id.*, ¶¶ 98, 104, 123. P3 filed for bankruptcy on November 23, 2021. *Id.* Previously, the wells were owned by large oil companies until the HRM Defendants acquired them between 2013 and 2015. *Id.*, ¶¶ 78, 90. HRM transferred the wells to P3 in 2018. *Id.* Plaintiffs allege that these transfers followed a common pattern in the industry: smaller operators like HRM acquire marginal wells from large oil companies, extract any remaining value, and then pass the wells further down the chain to even smaller companies, like P3, that dissipate the future plugging costs by declaring bankruptcy or dissolving. *Id.*, ¶¶ 79–81. The process allows oil and gas companies along the entire chain to avoid the costs of plugging their wells, also known as asset retirement obligations. *Id.*

> Plaintiffs allege that the transfers from HRM to P3 were fraudulent: "Defendants knowingly and willfully conspired to facilitate the fraudulent transfer of negative-value assets (wells whose clean-up liabilities exceeded their potential revenues) into a company they knew would go bankrupt, with the ultimate purpose of avoiding paying for plugging, remediation, and reclamation costs associated with the transferred wells." *Id.*, ¶ 179.

> The transfer to P3 is the largest single-operator well orphaning in Colorado's history. *Id.*, ¶ 129. After P3 filed for bankruptcy, all of the wells that it had operated were added to the OWP. *Id.*, ¶¶ 130–31. However, P3 had only

2

provided $305,000 in bond money to cover its asset retirement obligations—only 1.79% of the actual cost of plugging the wells, estimated to be around $17 million. *Id.*

*McCormick v. HRM Res., LLC*, No. 1:24-CV-00823-CNS-CYC, 2025 WL 90148, at *1–2 (D. Colo. Jan. 14, 2025). On February 22, 2024, the plaintiffs filed this action in state court, asserting seven claims, including ones for trespass and violations of the Colorado Uniform Fraudulent Transfer Act. ECF No. 4 ¶¶ 151–209. The defendants removed the case to federal court, invoking the Class Action Fairness Act of 2005's diversity-jurisdiction provision for class actions, 28 U.S.C. § 1332(d). *See* ECF No. 1 ¶ 3.

The defendants moved to dismiss, ECF Nos. 30, 43, and the district judge denied those motions. *McCormick*, 2025 WL 90148, at *7. The plaintiffs moved to certify a class, ECF No. 107, which the district judge granted. *McCormick v. HRM Res., LLC*, No. 1:24-cv-00823-CNS-CYC, 2025 WL 2958834, at *13 (D. Colo. Oct. 17, 2025).

Now before the Court is the plaintiffs' motion to amend their complaint to add a request for exemplary damages. ECF No. 133. The district judge referred the motion to the undersigned, ECF No. 136, and, after standard briefing was complete, the Court requested supplemental briefing from the parties on the effect of *Berk*, on the legal standard applicable to the plaintiffs' motion. *See* ECF No. 207. The parties provided such briefing, ECF Nos. 208, 210, and the Court held oral argument on the motion. ECF No. 214.

## <u>ANALYSIS</u>

Generally, in federal court, an initial complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought." Fed. R. Civ. P. 8(a). Thereafter, once the period in which a plaintiff may amend as of right has passed, the plaintiff "may amend its pleading only with the opposing party's written consent or the court's leave," and a court is to "freely give leave when justice so requires." Fed.

3

R. Civ. P. 15(a)(2). A Colorado statute prescribes a different procedure for exemplary damages: they "may not be included in any initial claim for relief" and "may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13-21-102(1.5)(a). The Rule and the statute cover similar ground and prompt the question of which applies here.

Under the Rules of Decision Act, "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652. This statute "directs federal courts to apply state substantive law" when sitting in diversity jurisdiction, "leaving federal law to cover the rest." *Berk*, 146 S. Ct. at 552; *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The determination of when a state law is "substantive" has been described as "*Erie*'s murky waters." *Shady Grove*, 559 U.S. at 398. When the federal law in question is a Federal Rule of Civil Procedure, there may be no need to delve into that issue:

> [W]hen a Federal Rule of Civil Procedure is on point, a federal court bypasses *Erie*'s inquiry altogether. That is because the Rules of Decision Act dictates that state substantive law must yield if the Constitution, a treaty, or a statute "otherwise require[s] or provide[s]." § 1652. And the Rules Enabling Act, which authorizes the Supreme Court to adopt uniform rules of procedure for district courts, provides for the application of federal law. § 2072(a); *see also* Fed. Rule Civ. Proc. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . ."). Thus, a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test.

*Berk*, 146 S. Ct at 552. This case, then, requires a determination of whether Rules 8 and 15 displace Colo. Rev. Stat. § 13-21-102(1.5)(a).

"Analyzing whether a Federal Rule displaces state law is straightforward." *Berk*, 146 S. Ct. at 552. A court "first ask[s] whether the Federal Rule 'answers the question in dispute.'" *Id.*

(quoting *Shady Grove*, 559 U.S. at 398). "If a Federal Rule answers the disputed question, it governs, unless it 'exceeds statutory authorization or Congress's rulemaking power.'" *Id.* at 552–53 (quoting *Shady Grove*, 559 U.S. at 398). Under that analysis, the Federal Rules govern here.

Rule 8(a)(3) answers the question of how to plead punitive damages. "Punitive damages are a remedy, so under the rule a request for them should be included in the complaint." *Cohen v. Off. Depot, Inc.*, 184 F.3d 1292, 1298 (11th Cir. 1999), *vacated in part on other grounds*, 204 F.3d 1069 (11th Cir. 2000). And "[e]ven if Rule 8(a)(3) does not *require* a plaintiff to include in a complaint a request for all the relief sought, there is still a conflict between" the Colorado statute "and Rule 8(a)(3), because the rule clearly *allows* the plaintiff to include a request for punitive damages in her initial complaint, whereas" the state statute "*prevents* [a plaintiff] from doing so." *Id.* That is, Colo. Rev. Stat. § 13-21-102(1.5)(a) and Rule 8(a)(3) "answer the same question—may a punitive damages claim be included in an initial complaint?—in opposite ways:" the state statute "answers the question 'no—never.' Rule 8 answers the question 'yes—always.'" *Kilburn v. Autosport Acquisitions, LLC*, No. 1:20 CV 211 ACL, 2021 WL 307550, at *2 (E.D. Mo. Jan. 29, 2021). Because the Colorado statute "attempts to answer the same question" as Rule 8(a)(3), it conflicts with the Federal Rule. *Shady Grove*, 559 U.S. at 399.

Rule 15 further conflicts with the state statute. It dictates how early a plaintiff can seek to amend his complaint to add punitive damages, specifying no waiting period, differently than the Colorado statute, which prohibits such amendment prior to certain discovery.

Moreover, as "a 'one-size-fits-all-formula' for amendments," the Federal Rule "does not set forth an evidentiary requirement," but instead "focuses on futility; that is, whether an amended complaint alleges sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face under Rule 8 . . . so as to withstand a motion to dismiss under Rule

12(b)(6)." *Dolphin Kickboxing Co. v. Franchoice, Inc.*, 335 F.R.D. 393, 398 (D. Minn. 2020).

Such futility evaluations are limited to "the sufficiency of the allegations within the four corners

of the complaint after taking those allegations as true." *Atl. Richfield Co. v. NL Indus., Inc.*, No.

20-cv-00234-RMR-KLM, 2022 WL 986124, at *2 (D. Colo. Apr. 1, 2022), *recommendation

adopted*, 2022 WL 2292848 (D. Colo. May 2, 2022). And even that standard does not necessarily

bar amendment: on occasion, because the "futility argument seems to place the cart before the

horse," it is "better served by waiting to assert Rule 12 motions until the operative complaint is

in place." *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, No. 07-cv-01145-DME-KMT, 2008

WL 2520423, at *4 (D. Colo. June 20, 2008) (Ebel, J.). By contrast, the Colorado statute's

requirement of prima facie proof of a triable issue is more rigid, *see* Colo. Rev. Stat. § 13-21-

102(1.5)(a), and "may be established through discovery, by evidentiary means, or by an offer of

proof," going beyond the complaint. *Leidholt v. Dist. Ct. in & for City & Cnty. of Denver*, 619

P.2d 768, 771 (Colo. 1980). The statute therefore conflicts with Rule 15 with respect to both

when and how a plaintiff can add a punitive-damages request. *See Dolphin Kickboxing*, 335

F.R.D. at 398–99.

Because Rules 8 and 15 answer the same question as Colo. Rev. Stat. § 13-21-

102(1.5)(a), they "govern[] so long as [they are] valid under the Rules Enabling Act, which

requires that Federal Rules be procedural rather than substantive." *Berk*, 146 S. Ct. at 556 (citing

28 U.S.C. § 2072(b)). That entails "a modest test: whether the Federal Rule 'really regulates

procedure.'" *Id.* The defendants suggest that the Court ought to examine how the Federal Rule

affects the substantive right embodied in the state statute, *see* ECF No. 210 at 8 (citing *Murtagh

v. Bed Bath & Beyond*, No. 19-cv-03487-CMA-NYW, 2020 WL 4195126, at *6 (D. Colo. July

3, 2020), *report and recommendation adopted*, 2020 WL 4193553 (D. Colo. July 21, 2020)), but

6

that approach, employed by Justice Stevens's concurrence in *Shady Grove*, 559 U.S. at 416–436,

no longer governs the analysis. "On the contrary," the Supreme Court has now "underscore[d]

that the substantive nature of [a state] law, or its substantive purpose, *makes no difference*.'"

*Berk*, 146 S. Ct. at 557 (quoting *Shady Grove*, 559 U.S. at 409 (plurality op.)). "To determine

whether a Rule is valid under the Rules Enabling Act, the only question is whether it 'really

regulates procedure.'" *Id.* (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)). Rules

8(a)(3) and 15 do. *See Dolphin Kickboxing*, 335 F.R.D. at 399. Nor do the defendants contend

otherwise.

Instead, they note that a long-standing consensus in this District applying Colo. Rev. Stat.

§ 13-21-102 exists both before and after *Shady Grove*. ECF No. 210 at 5. That is true as far as it

goes, but it does not take them very far.

That consensus does not rest on a robust foundation of repeatedly resolved adversarial

challenges. Its genesis lies instead in a single judge's decision addressing a different statute,

Colo. Rev. Stat. § 13-64-302.5, which "addresses claims for exemplary (punitive) damage

awards sought against health care professionals." *Jones v. Krautheim*, 208 F. Supp. 2d 1173,

1174 (D. Colo. 2002). That same judge later applied *Jones*'s reasoning wholesale to Colo. Rev.

Stat. § 13-21-102(1.5)(a). *See Witt v. Condos. at the Boulder Ass'n*, No. 04-cv-02000-MSK-

OES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006) (attaching *Jones*). A year later, a second

district judge, finding *Jones* to be "persuasive and relevant," adopted its holding without further

reasoning. *Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB,

2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007).

With two district judges having followed *Jones*, magistrate judges in this District faced

with subsequent motions to amend began summarily following their lead. *See, e.g.*, *Harberson v.*

7

*Unum Life Ins. Co.*, No. 10-cv-01549-MSK-MEH, 2010 WL 5464747, at *4 (D. Colo. Dec. 28,

2010) (citing those cases and "declin[ing] to address Defendants' arguments pursuant to Fed. R.

Civ. P. 15(a)"); *Colo. & Santa Fe. Real Est. Co. v. Hartford Cas. Ins. Co.*, No. 10-cv-00405-

MSK-KMT, 2010 WL 3714751, at *1 (D. Colo. Sept. 14, 2010) (citing those cases to conclude

that "in considering Plaintiffs' Motion, the court is guided by Colo. Rev. Stat. § 13-21-102"

instead of Rule 15); *Siemens v. Romero*, No. 09-cv-02065-KLM-CBS, 2010 WL 427893, at *1

(D. Colo. Feb. 3, 2010) (same); *Grabau v. Target Corp.*, No. 06-cv-01308-WDM-PAC, 2007

WL 4754044, at *1 n.3 (D. Colo. June 30, 2007) (following *Am. Econ. Ins. Co.*),

*recommendation adopted*, 2008 WL 179442 (D. Colo. Jan. 17, 2008). More recent cases are of

the same ilk, including one from the undersigned. *See, e.g.*, *Uhl v. Progressive Direct Ins. Co.*,

765 F. Supp. 3d 1176, 1188 (D. Colo. 2025) (citing, among other cases, *Witt*, 2006 WL 348086,

at *7, and *Am. Econ. Ins. Co.*, 2007 WL 160951, at *2); *Empire Staple Co. v. SouthernCarlson,

Inc.*, No. 23-cv-02200-DDD-CYC, 2025 WL 3687380, at *1 (D. Colo. Dec. 19, 2025) (quoting

*Uhl*, 765 F. Supp. 3d at 1187). The consensus, then, rises and falls with the continued validity of

*Jones*'s reasoning.

*Jones*'s foundation, though, rests on shifting sand. To begin, it viewed the landscape of

federal courts treating analogous state statutes as ambiguous because "[d]istrict courts in Idaho,

North Dakota, Minnesota and Florida ha[d] concluded that such state statutes do not conflict

with the Federal Rules of Civil Procedure." 208 F. Supp. 2d at 1176. But the Eleventh Circuit's

1999 *Cohen* decision brought uniformity to the Florida federal courts, holding that the Federal

Rules controlled over Florida's punitive-damages statute. 184 F.3d at 1296–99. More recently, in

North Dakota, "[i]n a series of decisions relying on *Shady Grove*, courts" there "concluded

Federal Rule of Civil Procedure 15, rather than North Dakota Century Code section 32-03.2-

11(1), sets the standard for motions to amend pleadings to add claims for exemplary damages in cases where jurisdiction is based on diversity." *Pyle v. A.H. Bennett Co.*, 699 F. Supp. 3d 795, 808 (D.N.D. 2023) (collecting cases). Likewise, in the District of Minnesota, "courts have recently taken another look at the practice and analyzed whether Rule 15 or Minn. Stat. § 549.191 should be applied in view of the 2010 United States Supreme Court's decision in *Shady Grove*." *Dolphin Kickboxing*, 335 F.R.D. at 397–98. "The large majority of these courts now apply Rule 15 instead of Minn. Stat. § 549.191 when considering motions to add punitive damage claims." *Id.* at 398. As such, the ambiguity in *Jones*'s case-law landscape no longer exists.

Indeed, "[m]ost . . . courts have" now "concluded that a state law provision barring the pleading of a punitive damages claim in the initial pleading proves procedural and conflict[s] with the Federal Rules of Civil Procedure." *Dzintars v. Fireman's Fund Ins. Co.*, No. CV-24-45-BU-BMM, 2024 WL 4347887, at *4 (D. Mont. Sep. 30, 2024) (collecting federal cases from Oregon, Missouri, Florida, and Kansas). "The District of Colorado has concluded the opposite," standing in a small minority. *Id.* And none of this District's cases, as both sides conceded at oral argument, have considered *Shady Grove* or *Berk*'s effect on Colo. Rev. Stat. § 13-21-102. Following persuasive authority — like the decisions from this District that the defendants invoke — depends on, among other things, the "logical reasoning" of that authority. *Nationwide Mut. Fire Ins. Co. v. Hatton*, 357 F. Supp. 3d 598, 605 (E.D. Ky. 2019). An absence of reasoning regarding *Shady Grove* and *Berk*, of course, is no logic at all. This District's practice alone therefore has little power to persuade regarding their application, especially in light of the weight of authority running against *Jones*'s holding.

9

*Jones* also faulted the analysis of cases holding that the Federal Rules applied over state punitive-damage pleading statutes as being "not consistent." 208 F. Supp. 2d at 1177. But post-*Shady Grove*, courts consistently justify applying the Federal Rules with the rationale articulated above: that state punitive-damage pleading statutes conflict either with Rule 8(a)(3) or Rule 15 under a *Shady Grove* analysis. *See, e.g.*, *Dzintars*, 2024 WL 4347887, at *5 (Rule 8(a)(3)); *Munroe v. Gilster-Mary Lee Corp.*, No. 1:22-cv-171-SNLJ, 2023 WL 2301738, at *3–4 (E.D. Mo. Mar. 1, 2023) (same); *First Int'l Bank & Trust v. Oasis Petroleum N. Am. LLC*, 587 F. Supp. 3d 896, 903 (D.N.D. 2020) (Rule 15); *In re Bair Hugger Forced Air Warming Devs. Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5187832, at *3–4 (D. Minn. July 27, 2017) (same). The case law is therefore more instructive than it was when *Jones* was written.

There is more. Because *Jones* did not find a strong current of case law at the time, it looked for guidance to the Tenth Circuit's decision in *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996), which "considered the applicability of [Colo. Rev. Stat.] § 13-20-602, which requires that within sixty days after the filing of a complaint alleging professional negligence, a plaintiff file an expert report certifying that the claims have substantial justification." *Jones*, 208 F. Supp. 2d at 1177. *Trierweiler* concluded that the state requirement of an expert report could "exist side by side . . . without conflict" with the Federal Rules. 90 F.3d at 1540. But the Fifth Circuit later found an analogous Texas statute requiring an expert report to be filed within 120 days of an answer in health-care liability cases to conflict with the Federal Rules under *Shady Grove*. *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 297 (5th Cir. 2016). And the Third Circuit recently held that *Berk* abrogated its precedent allowing the application in federal court of a state medical-malpractice statute requiring the filing of a certificate of merit

within sixty days of suit. *See DiFraia v. Ransom*, 171 F.4th 622, 633 (3d Cir. 2026). *Trierweiler*, then, no longer provides solid guidance on the issue in *Shady Grove* and *Berk*'s wake.

With these guideposts having shifted, it is unsurprising that *Jones*'s ultimate holding can no longer withstand scrutiny. *Jones* conceded, for instance, that the state statute appeared to pose "an obvious conflict between the statute and the rule," but held that "the fact that Rule 8 imposes no timing requirement" meant that "there [was] no practical conflict" between it and the statute. *Jones*, 208 F.2d at 1178. But *Berk* read Rule 8 as "set[ting] a ceiling" on a plaintiff's pleading requirements, holding that state statutes that "demand[] more" conflicted with the Federal Rules. 146 S. Ct. at 553–54. *Jones*'s efforts to harmonize the statute and the Rule, guided by *Trierweiler*, are inconsistent with *Berk*'s plain analysis.

The short of it is that courts nationwide, including the Supreme Court, have shifted away from the analysis undergirding this District's application of Colo. Rev. Stat. § 13-21-102(1.5)(a). With that foundation undermined, continued application of that statute in federal court is no longer sound. Rule 15, not Colo. Rev. Stat. § 13-21-102(1.5)(a), governs this motion.

Under that rule, leave is to be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But a court may refuse leave on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver,* 397 F.3d 1300, 1315 (10th Cir. 2005); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). The defendants invoke none of these grounds in their papers, instead inviting the Court to use Federal Rule of Civil Procedure 11 to strike certain allegations of the proposed amended complaint as being objectively unreasonable. *See* ECF No. 210 at 9 n.8.

11

But they no point to no case in any district ever using Rule 11 in this fashion in their papers and could not do so at oral argument either. To do so in this District would be supremely strange. The defendants seek to wield Rule 11 as a shield against amendment in their motion response, *see* ECF No. 144 at 4–15, but the rule itself requires that "[a] motion for sanctions . . . be made separately from any other motion," Fed. R. Civ. P. 11(c), and this District's local rules generally prohibit a motion from "be[ing] included in a response . . . to the original motion," D.C.COLO.LCivR 7.1(d). And to use Rule 11 as a freewheeling license to weigh evidence on the allegations of a proposed amended complaint would run afoul of the principle that the futility of a motion to amend is judged by "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Atl. Richfield Co.*, 2022 WL 986124, at *2. It is, of course, true that when an attorney "avails himself of the opportunity to amend and files a new pleading, he does so at his peril and under the watchful eye of Rule 11," *In re Ames*, 993 F.3d 27, 37 (1st Cir. 2021), but that is because he may face sanctions for a frivolous amendment, not because a court will use Rule 11 to sleuth out the truth of the complaint's allegations on a motion to amend by weighing contrary evidence submitted by the other side.

Beyond Rule 11, the defendants conceded at oral argument that their only other potential argument against Rule 15 amendment was bad faith. But this argument appeared nowhere in their papers, and issues raised for the first time at oral argument are considered waived. *Gocha v. Nat'l R.R. Passenger Corp.*, 75 F. Supp. 3d 1304, 1313 (D. Colo. 2014). In all events, bad faith "is to act for the wrong reasons." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 198 (4th Cir. 2022). "It may be outright lying, deceiving, playing unjustifiable hardball, slacking off, intentionally causing confusion, or stubbornly refusing to follow rules— you can imagine cases where a party just wants to cause chaos—or it might be something as

12

mundane as noticing someone's mistake and saying nothing about it." *Id.* None of that is present in the plaintiffs' actions here.

To sum up, Rule 15, not Colo. Rev. Stat. § 13-21-102(1.5)(a), governs the plaintiffs' motion to amend here. The defendants offer little argument that the plaintiffs' motion should fail under Rule 15's standards. The motion, therefore, is granted.

**CONCLUSION**

For the foregoing reasons, the plaintiffs' First Motion for Leave To Amend the Complaint, ECF No. 133, is **GRANTED**. The plaintiffs shall file a clean version of the amended complaint on the docket within seven days of this Order.

Dated this 4th day of May, 2026 at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge