**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:24-cv-00823-CNS-CYC**

CINDY McCORMICK
RONALD McCORMICK; and,
TRUPP LAND MANAGEMENT LLC,

Plaintiffs,

v.

HRM RESOURCES, LLC,
HRM RESOURCES II, LLC,
HRM RESOURCES III, LLC,
HRM RESOURCES IV, LLC,
L. ROGER HUTSON,
TERRY PAPE,
PAINTED PEGASUS PETROLEUM, LLC, and
JOHN HOFFMAN,

Defendants.

---

**HRM DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(C)**

---

Defendants HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson, and Terry Pape ("HRM Defendants") move to dismiss, in part, the Amended Complaint [ECF No. 220] ("FAC") under F.R.C.P. 12(c).

## **INTRODUCTION**

This Court should dismiss the injunctive relief claims for lack of subject matter jurisdiction because Plaintiffs lack standing. Specifically, Plaintiffs cannot meet their burden of proving that their alleged injuries likely will be redressed by a favorable decision.

Plaintiffs' and the putative class members' purported injuries are that the 200 orphaned oil wells on their Colorado properties ("Wells") have not been plugged and cleaned up. Plaintiffs seek "a Court order, via a mandatory injunction or otherwise, requiring or resulting in the plugging of the at-issue wells[.]" (FAC ¶ 149.) Plaintiffs' two proposed injunctive remedies—ordering the HRM Defendants to (1) contribute to a private-plugging fund or (2) donate directly to Colorado's Energy & Carbon Management Commission ("ECMC")—will not likely redress their alleged injuries. The reason is simple and undisputed: ECMC controls the Wells, not the HRM Defendants. The HRM Defendants thus cannot legally control or direct the plugging of the Wells.

The Court also lacks jurisdiction to order ECMC (a third-party state agency that is not before the Court) to handle the Wells' plugging, abandonment, and reclamation ("PA&R") in any particular way. The Wells are in ECMC's Orphaned Well Program ("OWP"). As codified in Colorado statutes and confirmed by uncontroverted evidence, ECMC has exclusive regulatory control and ultimate discretionary authority over all

orphaned wells in Colorado. ECMC thus has exclusive authority to decide how and when the Wells are plugged and cleaned up.

Even if the Court could order the defendants to donate money to third-party ECMC, the Court lacks jurisdiction and authority to order ECMC to apply those funds to cleanup work for the Wells, which are in ECMC's OWP. As an arm of the executive branch of the State of Colorado, ECMC must engage in its own cost-benefit analysis and make decisions according to the policy of Colorado and its statutory and regulatory obligations under Colorado law. Respectfully, this Court lacks authority to tell that expert agency what to do, including because such an order from this Court would raise serious sovereign immunity concerns. Because the relief that Plaintiffs seek would not likely result in the PA&Ring of the Wells in the way Plaintiffs want, neither type of injunctive relief is enough to satisfy the redressability requirement for standing (as settled Tenth Circuit law requires). This poses an independent bar to Plaintiffs' injunctive relief claims. Even more, both types of injunctive relief would amount to unconstitutional advisory opinions.

At bottom, this Court cannot order ECMC to plug wells and cannot make ECMC use any donated funds in Plaintiffs' preferred ways. Thus, because Plaintiffs' alleged injuries are not likely redressable through their requested injunctive relief, the Court must dismiss the injunctive relief claims for lack of standing.[1]

## BACKGROUND

ECMC is the state agency that oversees and regulates oil and gas operations in

---

[1] Plaintiffs appear to seek injunctive relief for their trespass and Colorado Uniform Fraudulent Transfer Act (CUFTA) claims. (FAC ¶¶ 3, 158, 169.) To the extent that Plaintiffs seek injunctive relief for other claims, those claims should also be dismissed.

Colorado. *See* C.R.S. §§ 34-60-102, -104.3. This includes the OWP, which was created in 1990 when the state legislature authorized a budget appropriation to plug and abandon oil and gas wells with no responsible operator. (Ex. A, J. Murphy Decl. ¶ 6.) The OWP prioritizes and addresses wells, locations, and facilities statewide to protect public health, safety, welfare, the environment, and wildlife. (*Id.*; C.R.S. § 34-60-133(1.5).) Funding for the OWP derives mainly from the Orphaned Well Mitigation Enterprise fund, which ordinarily operates through the collection of $10 million in annual revenue from operators as well as federal grant funding, and which totaled $50 million from 2022 to 2025.[2] (Ex. B, Lepore Dep. Tr., 197:18–198:23.)

The Wells at issue were under the ownership and control of Defendant Painted Pegasus Petroleum LLC ("P3") when P3 filed for bankruptcy in November 2021. (Ex. C, P3 Bankruptcy Petition pp. 20–23.) In January 2022, the United States Bankruptcy Court for the Southern District of Texas ordered abandonment of the Wells from the bankruptcy estate. (*See* Ex. D, ECMC Order #1V-780, p. 6.) Then, in March 2022, pursuant to its regulatory authority, ECMC transferred the Wells into the OWP through an enforcement action against P3. (*Id.* at 8–9; *see also* C.R.S. §§ 34-60-105(1)(a), 34-60-106(2.5)(a).)

Under Colorado law, ECMC has broad discretion "[t]o have and exercise all rights and power necessary or incidental to or implied from the specific powers and duties granted by" Colorado statutes pertaining to ECMC—discretion that includes the sole

[2] Historically, the OWP was funded through state budget appropriations derived from production levy and penalty revenues on operators. (*See* Ex. B, Lepore Dep. Tr. 203:24–204:7.) This funding increased in 2018 from $445,000 to $5,000,000. (*Id.* at 105:21–106:2.)

authority to operate wells in the OWP. C.R.S. § 34-60-133(f); (Ex. A, ¶ 7). ECMC's "operations" concerning orphaned wells include the hiring of third-party contractors to PA&R the Wells. (*Id.*) But the OWP still "exercise[s] control over who may operate [orphaned wells] to the exclusion of anybody else." (Ex. E, ECMC Dep. Tr., 251:20–252:11.) Third parties cannot PA&R wells in the OWP without ECMC approval. (Ex. A, ¶ 18; 2 C.C.R. § 404-1:434(a)(6) ("The Operator will obtain approval from the Director of the plugging method prior to plugging.").)

All of the at-issue Wells remain in the OWP today. (*See* Ex. B, Lepore Dep. Tr. 174:16–175:15; *see also* Ex. F, Class Notice Hr'g Tr., 23:23–25.) This means that "[t]he OWP has custody and control over the[] [W]ells and sites and is *solely* responsible for plugging, abandoning, reclaiming, and remediating them . . . . In other words, because all P3's Orphaned Wells and Sites are presently in [ECMC's] OWP, only [ECMC] has the authority to oversee, allow, and approve PA[]&R work on the Orphaned Wells." (Ex. G, Lepore Rebuttal Rep., p. 14.) ECMC has never ignored and is not ignoring the class members' Wells; it is addressing them through its priority-based PA&R process.

**ECMC has already plugged many Wells and plans to PA&R (as necessary) the remaining Wells shortly.** (Ex. E, ECMC Dep. Tr. 262:22–263:15.)[3] ECMC has even plugged and abandoned the well on the McCormick Plaintiffs' property. (Ex. A, ¶ 16; *see*

[3] ECMC has spent significant time and resources addressing the Wells, including spending at least $6,615,067 on related projects thus far. (Ex. H, Lepore Rep. p. 20.) As of June 30, 2025, 69 P3 sites no longer had wells on them. The OWP plugged 16 additional P3 wells in fiscal year 2026, bringing the number of P3 sites without oil and gas wells on them to 85, more than a third of the P3 sites. *Compare* 2026 ECMC OWP Report, Table 4, *with* 2025 ECMC OWP Report, Table 4 (both available at https://ecmc.colorado.gov/regulation/orphaned-well-program/owp-reports).

*also* Ex. I, Form 27 (reflecting that the well on the McCormick Plaintiffs' property has been plugged, abandoned, equipment removed, and that reclamation is ongoing).) ECMC chose to plug the class members' wells and clean up their land based on its own authority and discretion under state law.

After this lawsuit was filed, ECMC considered whether to re-prioritize PA&R of the Wells in light of the suit. (Ex. E, ECMC Dep. Tr., 260:10–15.) But, in exercising its discretion, ECMC ultimately decided not to "up-end the process" and "reorient the entire [OWP]." (*Id.* at 260:16–20.) As then-ECMC Director Murphy explained, the OWP is "designed to maximize efficiency with time and dollars"; "to deviate from that [program] and to redirect resources reduces efficiencies . . . and may not be the best use of dollars." (*Id.* at 260:21–261:7.)

Against this regulatory backdrop, Plaintiffs have requested two types of injunctive relief for the PA&R of the Wells. The <u>first</u> injunction that Plaintiffs have requested is the "creat[ion of] a fund from damages awarded against the Defendants to be used [and administered by a third party] to plug and otherwise decommission Plaintiffs' wells and remediate their land." (FAC p.49 ¶ G (Plaintiffs' Request for Relief); *see also* Proposed Class Notice [ECF No. 231-1] at 2 ("The injunctive relief sought includes creating a fund, to be overseen by a third-party administrator, to pay for any court-ordered cleanup of wells and associated infrastructure on Class Members' properties.").) The <u>second</u> injunction that Plaintiffs have proposed is a donation to ECMC to support its administration of the OWP and plugging of the Wells. (*See id.*; *see also* Ex. F, Class Notice Hr'g Tr., 5:6–18 (Plaintiffs' counsel stating that "grants or donations can be

accepted by" the OWP, so "if we're successful in the litigation and there is money available, it could still fall within the [OWP] because it could be . . . a donation").)

According to Plaintiffs, the OWP's work in PA&Ring the Wells is too slow and may not get done at all. (FAC ¶ 56; Exs. J, C. McCormick Dep. Tr., 154:23–156:3, 156:15–21; K, R. McCormick Dep. Tr., 57:7–15; L, Trupp Dep. Tr., 47:21–48:9; F, Class Notice Hr'g Tr., 11:21–12:15; Joint Statement re Class Notice [ECF No. 200] at 3–4; Plaintiffs' Reply ISO Class Cert. [ECF No. 123] at 1.) Plaintiffs are seemingly unhappy with the manner that ECMC is accomplishing the complex task of addressing the Wells in its OWP and ask the Court to force ECMC to PA&R the Wells faster (with funding from the HRM Defendants).

## LEGAL STANDARD

"Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). "[S]tanding [is] an element of subject matter jurisdiction." *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012).

"[A] plaintiff must demonstrate standing to sue by establishing (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (citation omitted) (cleaned up). The plaintiff bears the burden of proving standing. *See id.* at 544. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing *for **each claim*** that they press and ***for each form of relief*** that they seek (for example, ***injunctive relief*** and

damages).” *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphases added).

On redressability, “standing will be denied unless it is ‘***likely, as opposed to merely speculative***, that the injury will be redressed by a favorable decision.’” *Petrella v. Brownback*, 697 F.3d 1285, 1294 (10th Cir. 2012) (emphasis added) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). So, Plaintiffs must “demonstrate a substantial likelihood that the relief [they] request[] will redress [their] injury in fact.” *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). A “showing that the relief requested *might* redress the plaintiff’s injuries is generally insufficient to satisfy the redressability requirement.” *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 111 (10th Cir. 2024) (quotation marks omitted).

When the plaintiff’s claims “fail[] to meet the third requirement of constitutional standing, redressability, [the Court] need not spend any time on” traceability and injury-in-fact. *Coll v. First Am. Title Ins.*, 642 F.3d 876, 892 (10th Cir. 2011). And while traceability and redressability can overlap, “[r]edressability can still pose an independent bar in some cases.” *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 n.1 (2024).[4]

“If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.” F.R.C.P. 12(h)(3). After the pleadings have closed, a party can move to dismiss for lack of subject matter jurisdiction under Rule 12(c). *See Swepi, LP v. Mora Cnty., N.M.*, 81 F. Supp. 3d 1075, 1146 (D.N.M. 2015); *see also* 5C Wright & Miller,

[4] Because of the Court’s “independent duty to ensure its subject matter jurisdiction,” *San Luis Valley Ecosystem Council v. Dallas*, 759 F. Supp. 3d 1135, 1149 (D. Colo. 2024), the Court can also sua sponte determine that Plaintiffs have not shown injury-in-fact or traceability. The HRM Defendants reserve the right to challenge Plaintiffs’ standing based on both prongs at a future juncture, including in a motion for summary judgment.

Federal Prac. & Proc. § 1367 (3d ed.) ("Rule 12(h)(3) states that whenever it appears that the federal court lacks jurisdiction over the subject matter the action may be dismissed, which, of course, means that the defense may be raised on a motion under Rule 12(c)."). When a party raises lack of subject matter jurisdiction in a Rule 12(c) motion, the Court will treat it as a Rule 12(b)(1) motion. *Swepi*, 81 F. Supp. 3d at 1146 (listing authorities).[5]

"Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations"; or "(2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). For a challenge to the facts, "the court may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment." *Id.*; *see also Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) ("[T]he court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" for a subject-matter jurisdiction challenge.) (cleaned up).

## <u>ARGUMENT</u>

Plaintiffs lack standing for their injunctive relief claims. They cannot meet their

---

[5] The HRM Defendants bring this motion under Rule 12(c) (based on the authorities outlined above), rather than Rule 12(b)(1). That said, because the Court has a continuing obligation to evaluate its own subject matter jurisdiction throughout the case*, see Ruhrgas*, 526 U.S. at 583, the formal rule under which the HRM Defendants bring this motion is immaterial, as the Court applies the same Rule 12(b)(1) standard whether the motion is brought under Rule 12(b)(1) itself or Rule 12(c).

burden to show redressability because ECMC (not the HRM Defendants nor any other defendant) has exclusive regulatory control and discretion over any decision to PA&R the Wells on Plaintiffs' properties, including any use of donations for that purpose. The Court thus cannot order the HRM Defendants to act to redress the Wells without ECMC's involvement and approval. Because ECMC is not a party to this case and would not be subject to this Court's orders on the Wells, Plaintiffs' injunctive relief claims fail.

## I. Injunctive Relief that Depends on the Discretionary Actions of a Third-Party State Agency Cannot Satisfy Redressability.

For injunctive relief especially, a theory of redressability that "is contingent upon speculation or conjecture" is "beyond the bounds of a federal court's jurisdiction." *Redmond v. Crowther*, 882 F.3d 927, 942 (10th Cir. 2018) (quotation marks omitted). Redressability requires that "the court can order the ***defendant*** to do something that will have a real-world effect." *Am. Cricket Premier League, LLC v. USA Cricket*, 445 F. Supp. 3d 1167, 1176 (D. Colo. 2020) (emphasis added).

The Supreme Court has "been reluctant to endorse standing theories that require guesswork as to how independent decision makers will exercise their judgment." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013). Redressability is satisfied when the *defendant's* actions alone can cure the plaintiff's injuries, but the "redressability prong[] become[s] problematic when ***third parties not party to the litigation*** must act in order for an injury . . . to be cured." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (emphasis added). So "[w]hen redress depends on the cooperation of a third party, it becomes the burden of the [plaintiff] to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability." *UMC Dev., LLC v.*

*D.C.*, 401 F. Supp. 3d 140, 153 (D.D.C. 2019) (quoting *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24–25 (D.C. Cir. 2000)); *see also Colorado v. EPA*, 989 F.3d 874, 889 (10th Cir. 2021) (relying on *U.S. Ecology*). When "the record cannot support a conclusion that a judgment enjoining *only the[] defendants*" "would redress [the plaintiffs'] injury," standing is lacking. *Nova Health*, 416 F.3d at 1159 (emphasis in original).

Redressability becomes an even bigger hurdle for a plaintiff to overcome when the third party is a government agency. "Article III [does not] confer on federal judges some 'amorphous' power to supervise 'the operations of government.'" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021) (citation omitted). And "[f]ederalism concerns are heightened when . . . a federal court decree has the effect of dictating state or local budget priorities." *Horne v. Flores*, 557 U.S. 433, 448 (2009).

Additionally, "the [p]laintiffs' alleged injury is speculative if redress ultimately depends on how" a state government "responds to the court's judgment." *Arakaki v. Lingle*, 477 F.3d 1048, 1063 (9th Cir. 2007). If that type of response is required, "whether or not [the plaintiffs'] injury is redressable is entirely speculative." *Id.* at 1064; *accord McKinley v. Grisham*, 2021 WL 4290178, at *5 (D.N.M. Sept. 21, 2021) ("Exercising judicial authority to control official government action is not a guarantee of particular conduct by individuals and entities who are not parties to [the] case."). Thus, where state officials "are not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced," there is no standing. *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) (quotation marks omitted).

## II. <u>Neither of Plaintiffs' Proposed Forms of Injunctive Relief Meets the Constitutional Standard for Redressability Because Non-Party ECMC Must</u>

**Decide How and When to Plug the Wells.**

Plaintiffs' requested relief includes: (1) "creat[ing] a fund from damages awarded against the Defendants to be used [and administered by a third party] to plug and otherwise decommission Plaintiffs' wells and remediate their land"; and/or (2) a donation to ECMC to support its administration of the OWP, including plugging of the Wells. (FAC p.49 ¶ G; Ex. F, Class Notice Hr'g Tr., 5:6–18.)[6] Neither establishes redressability.

The common thread among Plaintiffs' two proposed injunctions is that both ultimately request that ECMC—***a third party and Colorado state government agency***—use its discretionary authority to either relinquish control of the Wells or use funds to specifically plug the Wells on Plaintiffs' properties. Because the Wells at issue are in the OWP, under ECMC's exclusive authority, and will remain under ECMC's sole regulatory control unless ECMC itself decides otherwise, the proposed injunctive relief would fail to redress Plaintiffs' injuries.

The Supreme Court has already rejected a materially similar request for injunctive relief. In *Haaland*, the Court analyzed whether the petitioners had standing when redressability depended on the actions of state government officials who were not parties to the suit. In that case, the petitioners sought, among other relief, an injunction preventing the federal-agency defendants from enforcing the Indian Child Welfare Act ("ICWA") to

---

[6] To the extent that Plaintiffs might argue that their two proposed forms of relief do not involve injunctions, Plaintiffs' statements and this Court's rulings refute that argument. Plaintiffs themselves argued that their two proposed forms of relief were "injunctive relief." (ECF No. 123 (Class Cert. Reply Br.) at 11.) And the Court agreed with Plaintiffs that they seek injunctive relief. (ECF No. 152 (Class Cert. Order) at 19–20.) Plaintiffs also conceded as much in their Proposed Class Notice. (ECF No. 231-1 at 5 ("[T]he injunctive relief the Plaintiffs seek, should they prevail, will affect the well(s) on your property.").)

prevent the non-Indian petitioners from adopting Indian children. *See* 599 U.S. at 292. The Supreme Court held that the requested relief would not redress the petitioners' injuries because *state courts* apply the preferences for placement of Indian children with adoptive parents under the ICWA, and *state agencies* "carry out the court-ordered placements." *Id.* at 293. Because the "state officials who implement the ICWA [were] 'not parties to the suit, [] there [was] no reason they [would] be obliged to honor an incidental legal determination the suit produced.'" *Id.* (quoting *Lujan*, 504 U.S. at 569).

Lower courts have also held that, where a non-party state-government agency must act to redress alleged injuries, standing is too speculative. For example, when the plaintiffs' proposed remedy would have the state agency "take up the matter, exercise discretion to pursue it, seek [the plaintiffs'] preferred remedies, and be successful in doing so," "[s]uch conjecture fails to adequately show that those choices . . . will be made in such a manner as to . . . permit redressability." *Comanche Nation v. U.S. Dep't of the Interior*, 2024 WL 4363322, at *16 (W.D. Okla. Sept. 30, 2024). Or when a state has "delegated resolution of" the actions that can redress a plaintiff's injuries to "state administrative law judges" who are "not under [the defendants'] control," the court cannot provide redress. *S.B. v. Williams Cnty. Bd. of Educ.*, 2024 WL 4520432, at *2 (M.D. Tenn. Oct. 17, 2024). And when "any ruling . . . would not be binding on [the] state agencies or officers who are not parties to [the] action," the plaintiffs fail to meet their burden on redressability. *Giles v. Ashcroft*, 193 F. Supp. 2d 258, 267 (D.D.C. 2002).

As detailed below, both forms of the injunctive relief that Plaintiffs seek are similarly speculative and fail to establish redressability. Like the relief sought by the *Haaland*

petitioners, Plaintiffs' relief depends on the discretionary actions of a state agency, ECMC, which is not a party to this action and which is not obligated to "honor an incidental legal determination [this] suit produce[s]." 599 U.S. at 293.

### A. A third-party-administered fund does not provide PA&R redress.

First, Plaintiffs' proposed injunction of a fund administered by a third party to pay for cleanup of the Wells would not provide redress.

As discussed above, the then-ECMC Director herself explained that ***only*** ECMC has the authority to operate the Wells because they have been transferred to the OWP. (Ex. A, ¶ 7.) And ECMC confirmed that future actions with regard to the Wells are "in the Director's discretion and consistent with the Director's independent determination of operational priorities." (Ex. D, Order #1V-780, p. 9.) In other words, the OWP "exercise[s] control over who may operate [orphaned wells] to the exclusion of anybody else." (Ex. E, ECMC Dep. Tr., 251:20–252:11.) Indeed, the Director's discretion extends as far as "decid[ing] . . . whether someone can become a licensed operator for plugging and abandoning a well." (Ex. F, Class Notice Hr'g Tr., 26:3–7.)

Even if the Court were to order that the HRM Defendants pay into a court-supervised private fund, the third-party administrator of that fund would have no authority to order that the Wells be PA&Red. Nor, if the Wells stayed in the OWP, would they be PA&Red in a particular manner or time because ECMC—not the HRM Defendants and not the proposed third-party administrator—retains exclusive regulatory control. Colorado law has "delegated resolution of" the plugging of the Wells to ECMC, a state regulatory agency which is "not under the control of the" HRM Defendants (or this Court), so a fund

would not provide redress. *S.B.*, 2024 WL 4520432, at *2.

ECMC is not a "part[y] to the suit," so there is "no reason [it would] be obliged to honor" any request from the fund relating to PA&Ring the Wells. *Haaland*, 599 U.S. at 293 (quotation marks omitted); *see also Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020) ("[I]t must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury. Any persuasive effect a judicial order might have upon the [third-party government officials], as absent nonparties who are not under the [defendant's] control, cannot suffice to establish redressability."). Ultimately, because only ECMC has the authority to PA&R the Wells and decide when to PA&R "to the exclusion of anybody else" (Ex. E, ECMC Dep. Tr., 251:20–252:11), a Court-ordered, third-party administered fund would not redress Plaintiffs' alleged injuries.

**B. <u>A donation to ECMC does not provide PA&R redress.</u>**

Second, Plaintiffs' proposed relief of enjoining the HRM Defendants to donate directly to ECMC likewise fails to show redressability.

ECMC is permitted "[t]o seek, accept, and expend gifts, grants, donations, or other payments from private or public sources." C.R.S. § 34-60-133(2)(e). But Plaintiffs' alleged injury is not "lack of a donation to ECMC." Their alleged injuries are unplugged wells and unreclaimed land. To satisfy redressability, the injunctive relief must likely cause plugging and reclamation—not merely increase the amount of money flowing to ECMC.

There is ***no*** requirement—in the statutes governing ECMC or any associated regulations—for ECMC to use donations for any particular wells or earmarked purpose. *See* 2 C.C.R. § 404-1:205(c)(6) (providing that "[t]he Director will expend the orphaned

wells mitigation enterprise cash fund, as permitted by the Act," without further requirements). Donations (whether voluntary or otherwise) to ECMC thus cannot be conditioned on ECMC expending the funds to plug particular wells or plug wells at all.

Even if the Court orders that the HRM Defendants transfer money directly to ECMC, ECMC would then have to "take up the matter" of using those exact funds to PA&R Plaintiffs' Wells, "exercise discretion to pursue" the PA&R of those Wells (likely to the detriment of other higher priority OWP wells), "seek [Plaintiffs'] preferred remedies, and be successful in doing so." *Comanche Nation*, 2024 WL 4363322, at *16; *see supra* at 13–14. Again, "[s]uch conjecture fails to adequately show that those choices . . . will be made in such a manner as to . . . permit redressability." *Id.* Article III requires likely redress, not a hoped-for chain of discretionary allocation decisions by a non-party state agency.

As in *Haaland*, there is no obligation for ECMC to "honor an incidental legal determination" that might flow from the Court ordering the HRM Defendants to donate to ECMC, with only the ***hope*** that ECMC uses the donations to plug the Wells. 599 U.S. at 293 (quotation marks omitted). The Court cannot rewrite Colorado law and order that ECMC use donations in a particular manner, so it cannot "condition[]" "future aid" to save Plaintiffs' redressability argument. *Denver Bible Church v. Azar*, 494 F. Supp. 3d 816, 842 (D. Colo. 2020). Plaintiffs thus fail to show redressability.

**C. <u>This case does not involve a state agency's non-discretionary action.</u>**

Third, both requested injunctions are also unlike the narrow situations in which courts have found redressability despite relief depending on actions that must be taken

by non-party government agencies. In those limited situations, the non-party government agency ***had no discretion*** ***<u>not</u>*** ***to perform*** the action resulting from the injunction.

For example, in *Audubon of Kansas, Inc. v. U.S. Dep't of Interior*, the Tenth Circuit held that an injunction against a federal agency would ***necessarily*** result in action by a non-party state agency. 67 F.4th 1093, 1106–08 (10th Cir. 2023). There, an order compelling the Department of Interior to continue to request that the Kansas Water Division administer the Interior Department's water rights in a wildlife refuge was likely enough to redress injuries to the refuge caused by the overdrawing of water. *Id.* The Water Division—a state agency that was no longer a party to the suit—generally had the statutory authority to "exercise discretion in administering water rights." *Id.* at 1106. But for the *particular action* at issue in *Audubon*, the Tenth Circuit explained that the Water Division was ***obligated*** under Kansas statutes to administer water rights in a way that would benefit the refuge, if the Interior Department were ordered to request the Water Division to do so. *Id.* at 1106–07 ("We read the statute to mean that . . . the chief engineer [of the Water Division] must" act.). The statutory regime, therefore, rendered the requested relief not speculative because the injury would definitely be redressed despite dependence on a non-party agency. *See id.* at 1107–08.

But here, ECMC is not required to take action. Instead, it has ***total discretion*** to plug wells in the OWP under its control in a manner and on a timeline that it deems appropriate. *Supra* at 13. Likewise, ECMC retains discretion over the use of donations. ECMC's agency discretion thus dooms Plaintiffs' injunctive relief claims.

**D. <u>The Court lacks authority to directly order ECMC to act.</u>**

Finally, "most notable is what Plaintiff[s] do[] ***not*** ask for," that is for the Court to order ECMC to act. *Am. Cricket*, 445 F. Supp. 3d at 1177 (some emphasis added). Plaintiffs seemingly understand that "the Court has no jurisdiction to enter an injunction against individuals or entities who are not a party to this action." *SEBO Am., LLC v. Tumicks LLC*, 2022 WL 19572360, at *6 (D. Colo. Mar. 30, 2022); *see also* 11A Wright & Miller, Federal Prac. & Proc. § 2956 (3d ed.) ("[P]ersons who are not actual parties to the action . . . may not be brought within the effect of a decree merely by naming them in the order."). Non-party ECMC is the only entity that can PA&R the Wells (the actual relief Plaintiffs seek) because the Wells are in the OWP, but this Court has "no power" to order ECMC to do so. *See Am. Cricket*, 445 F. Supp. 3d at 1178. Indeed, Plaintiffs' own expert recognizes that the Wells cannot be PA&Red without ECMC's authorization. (Ex. M, Arthur Dep. Tr., 170:20–171:4, 199:14–18 (stating "you can't plug a well . . . that you don't own or that you don't have some sort of authorization to do something to" and agreeing that "[t]he state would have to allow those companies to come in and plug those wells").)

The Court also cannot order ECMC to remove the Wells from the OWP and place them with a third-party administrator. Plaintiffs have identified no authority that provides a legal process—mandatory or otherwise—by which orphaned wells in the OWP can be removed from the program and assigned to a third-party administrator. This is because none exists. (Ex. B, Lepore Dep. Tr. 179:19–180:12, 181:7–18 (former director of the ECMC stating that there is no such process).)

At a minimum, taking the Wells out of the OWP, as then-Director Murphy of ECMC

testified, would likely require ECMC to initiate a new formal process before the Commission. (Ex. E, ECMC Dep. Tr., 255:5–13.) But what ECMC's process would entail is unclear because, as the former director also testified, "[t]o [her] knowledge, we have not had wells come out of the Orphaned Well Program." (*Id.* at 254:8–11.) Likewise, the HRM Defendants' expert—another former ECMC director—is "not aware that an [o]rphaned [w]ell ever has been removed from the OWP by a third party to oversee PA[]&R of a well, much less anything like the roughly 200 Orphaned Wells" here. (Ex. G, Lepore Rebuttal Rep., p. 13; *see also* Ex. F, Class Notice Hr'g Tr., 28:19–22 (Lepore stating that he is "not" "aware of any instance where a court ordered ECMC to transfer wells in the [OWP] to a new operator").) Finally, even if a Well were removed from OWP (following an ECMC process) and placed with a third-party administrator, "there is no assurance that taking them out of the program means they'll end up being plugged and abandoned sooner than they otherwise would." (Ex. F, Class Notice Hr'g Tr., 29:4–7.)[7]

Not only does the Court not have the authority to enjoin ***any*** non-party, *see SEBO Am.*, 2022 WL 19572360, at *6, but because ECMC is a ***state agency***, an order from this Court would raise serious sovereign immunity concerns. Like standing, a state agency's sovereign immunity—as embodied in the Eleventh Amendment—is a "jurisdictional" issue. *K. A. v. Barnes*, 134 F.4th 1067, 1073 (10th Cir. 2025); *see also Cressman v.*

[7] Even reprioritizing PA&R of the Wells would affect ECMC's operations. Reprioritization would inevitably relegate other orphaned wells to lower priority, "disrupt OWP processes, unnecessarily burden [ECMC staff], and potentially result in delaying the [PA&R] operations." (Exs. H, Lepore Rep, pp. 22–23; G, Lepore Rebuttal Rep. p. 13.) For example, because ECMC contracts with third-party contractors to PA&R specific wells in the OWP, changing the prioritization of PA&R for OWP wells could interfere with those contracts. (Ex. A, ¶¶ 7, 11–14; Ex. E, ECMC Dep. Tr., 209:17–210:11.)

*Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (noting "a common thread between Article III standing and *Ex Parte Young*," *i.e.*, sovereign immunity).

Under *Pennhurst State School v. Halderman*, 465 U.S. 89 (1984), "a federal district court cannot order state officials to act according to state law." *Denver Homeless Out Loud v. City & Cnty. of Denver*, 2022 WL 974284, at *9 (D. Colo. Mar. 31, 2022) (dismissing under Rule 12(b)(1)). ECMC retains discretionary authority under Colorado state law to decide how and when to PA&R wells in the OWP. *See supra* at 3, 13. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. That an order from this Court enjoining ECMC would eliminate ECMC's statutory discretion and infringe on Colorado's state sovereignty is an additional reason why this Court cannot order ECMC—the ***only*** entity with authority to PA&R the Wells—to act.

Thus, because the Court cannot issue (and Plaintiffs do not even request) an order requiring ECMC to PA&R the Wells, redressability is speculative, and standing is lacking.

## III. Ordering Only Defendants to Act Would Be an Unconstitutional Advisory Opinion.

An injunction from this Court that does ***not*** order ECMC to act—but instead leaves accomplishment of the PA&R of the Wells to ECMC's voluntary and discretionary action—would be an unconstitutional advisory opinion.

Like Article III's prohibition against a federal court adjudicating a case where a party cannot show redressability, Article III likewise prohibits advisory opinions. *Flast v. Cohen*, 392 U.S. 83, 94, 97 (1968). The Tenth Circuit recently affirmed that lack of redressability and the issuance of an advisory opinion are two sides of the same coin.

*Wichita & Affiliated Tribes v. Stitt*, 2026 WL 1805130, at *9 (10th Cir. June 23, 2026). *Haaland*'s instruction that "'[r]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power,'" means that a federal court's equitable judgment requires "coercive" effect, not "a purely advisory opinion, which relies exclusively on the 'power' of persuasion." *Id.* (quoting *Haaland*, 599 U.S. at 294). So an equitable "judgment that merely seeks to affect the (uncertain) future conduct of third parties—who are not named in a plaintiff's complaint—would involve the very sort of speculative, 'hypothetical' factual scenario that would render such a judgment a prohibited advisory opinion." *Jordan v. Sosa*, 654 F.3d 1012, 1026 (10th Cir. 2011).

Any order from this Court that directed the HRM Defendants to take action related to the Wells but ***does not*** enjoin ECMC would be merely a ***request*** that ECMC exercise its discretion in a particular manner. At most, Plaintiffs could ***hope*** that an order from this Court would produce "a possible, indirect benefit"—but only if ECMC chooses to exercise its discretion to PA&R the Wells. *Thlopthlocco Tribal Town v. Wiley*, 2024 WL 5052986, at *5 (10th Cir. Dec. 10, 2024) (quotation marks omitted). That hypothetical order would "amount[] to an advisory opinion." *Id.* Any order from this Court enjoining the HRM Defendants thus would be merely a non-binding request as to ECMC and render that order an unconstitutional advisory opinion for failing to redress Plaintiffs' alleged injuries.

## CONCLUSION

For these reasons, Plaintiffs' injunctive claims for relief should be dismissed for lack of a redressable injury and thus lack of subject matter jurisdiction.

Respectfully submitted this 6th day of October, 2026.

*s/ Matthew C. Arentsen*
Richard B. Benenson, #32566
Justin L. Cohen, #44811
Matthew C. Arentsen, #45021
Madeleine L. Tayer, #61762
Max Porteus, #56405
Alex P. Jack, #60682
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, CO 80202
Phone: (303) 223-1100
Fax: (303) 223-1111
Email: rbenenson@bhfs.com;
jcohen@bhfs.com; marentsen@bhfs.com;
mtayer@bhfs.com; mporteus@bhfs.com;
ajack@bhfs.com

*Attorneys for HRM Defendants*

**CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1(a)**

Pursuant to D.C.COLO.LCivR 7.1(a), counsel for the HRM Defendants conferred in good faith with counsel for Plaintiffs and Pro Se Defendant John Hoffman. Plaintiffs oppose the relief requested herein. Pro Se Defendant John Hoffman is unopposed.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 6th day of October, 2026, I electronically filed a true and correct copy of the foregoing **HRM DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(c)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

Christopher P. Carrington
Benjamin W. Hudgens
RICHARDS CARRINGTON, LLC
1444 Blake Street
Denver, CO 80202
Telephone: (303) 962-2690
Email: chris@richardscarrington.com
ben@richardscarrington.com

Camille Sippel
ClientEarth USA, Inc.
4192 Marcasel Avenue
Los Angeles, CA 90066
Phone: 605-397-7951
Email: csippel@clientearth.org

Setareh Homayoni
Benjamin Segal
John Stevens Rossiter, Jr.
Rosa Acheson
Jaclyn Lee
ClientEarth USA, Inc.
501 Santa Monica Boulevard, Suite 510
Santa Monica, CA 90401
Phone: 925-890-1306
Email: shomayoni@clientearth.org;
bsegal@clientearth.org;
JRossiter@clientearth.org;
racheson@clientearth.org;
jlee@clientearth.org

Scott C. Borison
Borison Firm LLC
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Phone: 301-620-1016
Email: scott@borisonfirm.com

*Attorneys for Plaintiffs*

**By Email:**

John Hoffman
3201 Bayshore Drive
La Porte, TX 77571
Phone: 713-962-0708
johnghoffman@icloud.com

*Pro se Defendant*

*s/ Kate M. Meade*
Kate M. Meade, Paralegal