# EXHIBIT D

## HRM Defendants' 12(c) Motion to Dismiss

## ECMC Order 1V-780

BEFORE THE OIL AND GAS CONSERVATION COMMISSION
OF THE STATE OF COLORADO

| | | |
|---|---|---|
| IN THE MATTER OF ALLEGED VIOLATIONS OF THE RULES AND REGULATIONS OF THE COLORADO OIL AND GAS CONSERVATION COMMISSION BY **PAINTED PEGASUS PETROLEUM LLC,** ADAMS AND WELD COUNTIES, COLORADO | ) | CAUSE NO. 1V<br>DOCKET NO. 211000188<br>TYPE: ENFORCEMENT<br>ORDER NO. 1V-780 |

**ORDER FINDING VIOLATION**

The Colorado Oil and Gas Conservation Commission ("COGCC" or "Commission") heard this matter on March 9, 2022, at the Colorado Oil and Gas Conservation Commission, 1120 Lincoln Street, Suite 801, Denver, Colorado, upon application from COGCC Staff to enter an Order Finding Violation ("OFV" or "Order") against Painted Pegasus Petroleum LLC (Operator No. 10711) ("P3"), pursuant to the Rules and Regulations of the Colorado Oil and Gas Conservation Commission, 2 C.C.R. 404-1 ("Rule" or "Rules"), and finds and states as follows:

## I. FACTUAL AND LEGAL FINDINGS

1. P3 is the operator of record of the following wells in Adams County:

   a. The Champlin 459 Amoco 2 Well, API No. 001-07588;

   b. The Moran 1 Well, API No. 001-06717;

   c. The Juanita State 1 Well, API No. 001-08187;

   d. The Crystal-Hubbs 1 Well, API No. 001-08281;

   e. The Oskarson 1 Well, API No. 123-09026;

   f. The UPRR-Sanden-Ehn 1-17 Well, API No. 001-06094; and

   g. The UPRR-Sanden-Ehn 2-17 Well, API No. 001-06142.

2. The Commission holds the following financial assurance for P3:

   a. Surety ID 2018-0152, an insurance plugging bond in the amount of $100,000.

   b. Surety ID 2018-0153, an insurance blanket surface bond in the amount of $25,000; and

   c. Surety ID 2018-0154, an insurance excess inactive well bond in the amount of $150,000.

**A. Notice of Alleged Violation No. 402418481 (Champlin 459 Amoco 2 Well)**

3. Pursuant to Rule 309[1], operators shall report every existing oil and gas well that is not plugged and abandoned on the Operator's Monthly Report of Operations ("Form 7") within 45 days after the end of each month. Operators shall report each well every month from the month it is spud until it has been reported for one month as abandoned.

4. On June 10, 2020, Commission Staff performed an audit of P3's production records for January 2020. The audit revealed that for the month of January 2020, P3 incorrectly reported production for the Champlin 459 Amoco 2 Well. P3 therefore violated Rule 309.

5. On June 12, 2020, Commission Staff issued Notice of Alleged Violation ("NOAV") No. 402418481 to P3, citing a violation of Rule 309.

6. On June 24, 2020, after receiving the NOAV via email, P3 filed an updated Form 7 to correct the errors in the original filing. Doc. No. 402430314.

7. On July 17, 2020, P3 received a hard copy of the NOAV via certified U.S. Mail.

**B. Notice of Alleged Violation No. 402523851 (Moran 1 Well)**

8. On October 7, 2020, Commission Staff received a complaint from the owner of the land on which the Moran 1 Well is located. Doc. No. 200449206. The complainant stated they could hear pipes hissing and smell a natural gas odor. *Id*.

<u>Rule 210.b.</u>

9. Pursuant to Rule 210.b., within 60 days after the completion of a well or the installation of a battery, operators shall install permanent signage at the wellhead and/or battery. This signage shall provide, among other required information, the name of the operator, a phone number at which the operator can be reached at all times, and a phone number for local emergency services.

10. On October 9, 2020, Commission Staff inspected the Moran 1 Well in response to the complaint. Doc. No. 699501794. During this inspection, Staff observed the casing valve venting gas to the atmosphere, and called the emergency number listed at the wellsite. *Id*. Staff was unable to leave a message due to a full voicemail inbox. *Id*.

11. P3 failed to install a sign with a phone number at which it could be reached at all times. P3 therefore violated Rule 210.b.

---

[1] Except for references to the 500-Series Rules, Rule numbers in this document refer to the Rules in effect prior to January 15, 2021.

Rule 605.d.

12. Pursuant to Rule 605.d., operators shall keep all valves, pipes, and fittings securely fastened, inspected at regular intervals, and maintained in good mechanical condition.

13. As noted above, on October 9, 2020, Commission Staff inspected the well and observed the casing valve venting gas to the atmosphere. Doc. No. 699501794.

14. P3 failed to shall keep all valves, pipes, and fittings securely fastened, inspected at regular intervals, and maintained in good mechanical condition. P3 therefore violated Rule 605.d.

15. On November 2, 2020, Commission Staff issued NOAV No. 402523851 to P3, citing violations of Rules 210.b. and 605.d.

16. Also on November 2, 2020, Commission Staff performed a follow up inspection on the Moran 1 Well. Doc. No. 699501851. During this inspection, Staff observed that the venting had been resolved. Doc. No. 699501854.

17. On November 19, 2020, P3 received the NOAV via certified U.S. Mail.

**C. Notice of Alleged Violation No. 402603355 (Juanita State 1 Well)**

Rule 210.d.

18. Pursuant to Rule 210.d., operators shall (1) label all tanks with a capacity of ten barrels or greater with the following information: name of the operator, operator's emergency contact telephone number, tank capacity, tank contents, and National Fire Protection Association ("NFPA") label; and (2) retain the markings, placards, and labels on all containers that are used to store, treat, or otherwise handle a hazardous material in accordance with the U.S. Department of Transportation's Hazardous Materials Regulations.

19. On January 14, 2021, Commission Staff inspected the Juanita State 1 Well. Doc. No. 699502133. During this inspection, Staff observed an open-top tank containing hydrocarbon liquids with no label. *Id*. Commission Staff required P3 to label the tank. *Id*.

20. Commission Staff performed follow up inspections on January 25, 2021 (Doc. No. 699502179); September 2, 2021 (Doc. No. 699503150); and October 1, 2021 (Doc. No. 699503214). During these inspections, Staff observed that P3 failed to label the tank. *Id*.

21. P3 failed to properly label the tank containing hydrocarbon liquids. P3 therefore violated Rule 210.d.

Rule 324A.a

22. Pursuant to Rule 324A.a, operators shall take precautions to prevent significant adverse environmental impacts to air, water, soil, or biological resources to the extent necessary to protect public health, safety, and welfare, including the environment and wildlife resources.

23. During the January 14, 2021, inspection of the Juanita State 1 Well, Commission Staff observed an open-top tank containing hydrocarbons. *Id*. Staff observed a deceased bird of prey inside the tank and no netting or cover on the tank. *Id*. Staff required P3 to install wildlife protection equipment by January 24, 2021. *Id*.

24. Commission Staff performed follow up inspections on January 25, 2021 (Doc. No. 699502179); September 2, 2021 (Doc. No. 699503150); and October 1, 2021 (Doc. No. 699503214). During these inspections, Staff observed that P3 failed to install wildlife protection equipment on the tank.

<u>Rule 603.f.</u>

25. Pursuant to Rule 603.f, operators shall keep locations free of the following: equipment, vehicles, and supplies not necessary for use on that lease; weeds; rubbish; and other waste material.

26. During the January 14, 2021, inspection of the Juanita State 1 Well, Commission Staff observed waste material on location, including a mattress and a hot tub, as well as unmanaged weeds throughout the location. Doc. No. 699502133.

27. Commission Staff performed follow up inspections on January 25, 2021 (Doc. No. 699502179); September 2, 2021 (Doc. No. 699503150); and October 1, 2021 (Doc. No. 699503214). During these inspections, Staff observed that P3 failed to address these conditions at the location.

28. On February 18, 2021, Commission Staff issued NOAV No. 402603355 to P3, citing violations of Rules 210.d, 324A.a, and 603.f.

29. On April 16, 2021, P3 received a hard copy of the NOAV via certified U.S. Mail.

**D. Notice of Alleged Violation No. 402603404 (Crystal-Hubbs 1 Well)**

30. Pursuant to Rule 326.b, operators are required to conduct a mechanical integrity test ("MIT") on shut-in wells within two years of the initial shut-in date, and then at five-year intervals after an initial successful MIT. Commission Rules do not permit bringing a well back into production to satisfy the requirement to conduct an MIT.

31. On December 22, 2020, Commission Staff performed an audit of MIT records for P3. During this audit, Staff observed that P3 reported the Crystal-Hubbs 1 Well as shut-in in October 2017. P3 was therefore required to conduct an MIT on the well by November 1, 2019. Production records show that in January 2020, P3 brought the well back into production without conducting an MIT.

32. P3 failed to conduct an MIT on the Crystal-Hubbs 1 Well by November 1, 2019. P3 therefore violated Rule 326.b.

33. On February 18, 2021, Commission Staff issued NOAV No. 402603404 to P3, citing a violation of Rule 326.b.

34. On April 16, 2021, P3 received a hard copy of the NOAV via certified U.S. Mail.

**E. Notice of Alleged Violation No. 402603418 (Oskarson 1 Well)**

35. On December 22, 2020, Commission Staff performed an audit of MIT records for P3. During this audit, Staff observed that P3 reported the Oskarson 1 Well as shut-in in January 2018. P3 was therefore required to conduct an MIT on the well by February 1, 2020. Production records show that in March 2020, P3 brought the well back into production without conducting an MIT.

36. P3 failed to conduct an MIT on the Oskarson 1 Well by February 1, 2020. P3 therefore violated Rule 326.b.

37. On February 18, 2021, Commission Staff issued NOAV No. 402603418 to P3, citing a violation of Rule 326.b.

38. On April 16, 2021, P3 received a hard copy of the NOAV via certified U.S. Mail.

**F. Notice of Alleged Violation No. 402603548 (UPRR-Sanden-Ehn 1-17 Well)**

39. On December 22, 2020, Commission Staff performed an audit of MIT records for P3. During this audit, Staff observed that the UPRR-Sanden-Ehn 1-17 Well was reported by a prior operator shut-in as of July 2005. The well was therefore required to have an MIT performed by August 1, 2007. P3 assumed operatorship of the well as of February 28, 2020. Commission records show that P3 has not conducted an MIT on the well since that time.

40. P3 failed to conduct an MIT on the UPRR-Sanden-Ehn 1-17 Well by August 1, 2007. P3 therefore violated Rule 326.b.

41. On February 18, 2021, Commission Staff issued NOAV No. 402603548 to P3, citing a violation of Rule 326.b.

42. On April 16, 2021, P3 received a hard copy of the NOAV via certified U.S. Mail.

**G. Notice of Alleged Violation No. 402608780 (UPRR-Sanden-Ehn 2-17 Well)**

43. On December 22, 2020, Commission Staff performed an audit of MIT records for P3. During this audit, Staff observed that the UPRR-Sanden-Ehn 2-17 Well

was reported by a prior operator as shut-in in January 2005. The well was therefore required to have an MIT performed by February 1, 2007. P3 assumed operatorship of the well as of February 28, 2020. Commission records show that P3 has not conducted an MIT on the well since that time.

44. P3 failed to conduct an MIT on the UPRR-Sanden-Ehn 2-17 Well by February 1, 2007. P3 therefore violated Rule 326.b.

45. On February 18, 2021, Commission Staff issued NOAV No. 402608780 to P3, citing a violation of Rule 326.b.

46. On April 16, 2021, P3 received a hard copy of the NOAV via certified U.S. Mail.

## H. Bankruptcy Proceedings

47. On November 23, 2021, P3 filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, Bankruptcy Case No. 21-33772.

48. On December 15, 2021, the bankruptcy trustee filed an "Emergency Motion to Abandon all Oil and Gas Wells and Equipment Thereon, Oil and Gas Products in Tanks or Otherwise, Leases and Leasehold Interests, Inventory, and Other Equipment Effective as of the Date of Filing of Petition" in Bankruptcy Case No. 21-33772 ("Emergency Motion"). The Emergency Motion describes the assets to be abandoned as "approximately 203 oil and gas wells, all located in the State of Colorado. . . . approximately 50 of these wells are still producing natural gas and/or petroleum products, with the remainder being shut in." Emergency Motion at ¶ 4.iii.

49. As part of its justification for asking the Court to expedite the motion, the trustee states that "[t]here are insufficient estate resources to maintain the Assets effectively and legally, or to properly insure them," that "[t]here may be ongoing plugging and abandonment liability for which the estate cannot pay," and that "[t]here may be ongoing environmental liability for which the estate cannot pay." Emergency Motion at ¶ 9.

50. On January 4, 2022, the Court issued an Order granting the Emergency Motion and abandoning the property identified in the Emergency Motion, included the wells located in Colorado. *See* Order Granting Trustee's Emergency Motion to Abandon all Oil and Gas Wells and Equipment Thereon, Oil and Gas Products in Tanks or Otherwise, Leases and Leasehold Interests, Inventory, and Other Equipment Effective as of the Date of Filing of Petition.

## I. Procedural History

51. On October 12, 2021, Staff filed a Notice and Application for Hearing ("NOH") and the Secretary docketed the matter under Docket No. 211000188.

52. On October 13, 2021, the Hearing Officer assigned to this matter issued the NOH and set the matter for a December 22, 2021 hearing before a Commission Hearing Officer.

53. On October 19, 2021, P3 received the NOAVs via Certified U.S. Mail.

54. On November 11, 2021, notice of this matter was published in the Daily Journal, a newspaper of general circulation printed and published in the City and County of Denver, in satisfaction of § 34-60-108(4), C.R.S.

55. On November 17, 2021, notice of this matter was published in the Brighton Standard Blade, a newspaper of general circulation printed and published in Adams County, in satisfaction of § 34-60-108(4), C.R.S.

56. On February 4, 2022, the Hearing Officer held a prehearing conference in response to a request by Staff for an Amended NOH. Following the prehearing conference, the Hearing Officer issued an Amended NOH to include notice for publication in Weld County.

57. On February 8, 2022, the Amended NOH in this matter was published in the Daily Journal, a newspaper of general circulation printed and published in the City and County of Denver, in satisfaction of § 34-60-108(4), C.R.S.

58. On February 9, 2022, the Amended NOH in this matter was published in the Greeley Tribune, a newspaper of general circulation printed and published in Weld County, in satisfaction of § 34-60-108(4), C.R.S.

59. On February 17, 2022, the Amended NOH in this matter was published in the Brighton Standard Blade, a newspaper of general circulation printed and published in Adams County, in satisfaction of § 34-60-108(4), C.R.S.

60. On March 1, 2022, Commission Staff filed a proposed Order Finding Violation in this matter.

61. On March 9, 2022, this matter came before the Commission for hearing on Staff's proposed Order Finding Violation.

**J. Violations and Penalty Determination**

62. Following a factual investigation and legal review of the violations alleged in the NOAV, the Commission finds that P3 has violated Commission Rules 210.b., 210.d., 309, 324A.a., 326.b., 603.f., and 605.d.

63. Notwithstanding Rule 525.b.(4)., given the ongoing Chapter 7 bankruptcy proceedings in Bankruptcy Case No. 21-33772, including the abandonment of oil and gas assets as detailed above, the insolvency of the Operator, and on advice of bankruptcy counsel at the Office of the Attorney General, the expenditure of State resources to calculate and assess a total penalty for the seven NOAVs in this matter is unwarranted

and futile. As noted above, there is no likelihood that the State of Colorado will recover any penalty amount from this operator, and the State's best interests are most expediently served by the prompt entry of this Order and transfer of the abandoned assets into the Orphaned Well Program.

**K. Jurisdiction**

64. The Commission has jurisdiction over the Parties and the subject matter of this proceeding, pursuant to §§ 34-60-101 *et seq.*, C.R.S. (the "Act"), and the Commission Rules, 2 C.C.R 404-1 (the "Rules").

65. Due notice of this proceeding has been given in all respects as required by the Act and the Rules.

**L. Conclusion**

66. The Commission has jurisdiction over the Parties and the subject matter of this proceeding, pursuant to §§ 34-60-101 *et seq.*, C.R.S. (the "Act"), and the Commission Rules, 2 C.C.R 404-1 (the "Rules").

67. Due notice of the time, place, and purpose of this proceeding has been given in all respects as required by the Oil and Gas Conservation Act and the Rules.

**ORDER**

The Commission Orders That:

1. P3 is found in violation of Rules 210.b., 210.d., 309, 324A.a., 326.b., 603.f., and 605.d.

2. The Director is hereby required to take the following actions as soon as is practicable upon the e-mailing of this Order:

a. Suspend P3's Form 10s, Certificates of Clearance, for its wells, and withhold the issuance of any new drilling or oil and gas location permits;

b. Terminate P3's Operator Number (Operator No. 10677), rescind P3's Form 1 (Document No. 1346422), and revoke P3's right to conduct oil and gas operations in Colorado;

c. Foreclose P3's existing financial assurance (Surety ID Nos. 2018-0152, 2018-0153, and 2018-0154) and claim both the principal and any accrued, but undisbursed, interest that may exist and use those funds to remediate conditions that threaten to cause, or that actually cause, significant environmental impacts at non-federal and non-tribal wells and locations formerly operated by P3. To the extent Staff has already expended Oil and Gas Conservation and Environmental Response Funds at non-federal and

non-tribal wells and locations formerly operated by P3, foreclosed financial assurance can be used to repay those funds.

d. Require P3, and its successors or assigns, to comply with the Order and repay any funds expended by the Commission from the Oil and Gas Conservation and Environmental Response Fund for any work undertaken by COGCC Staff; and

e. Require any principal, majority owner, operational or general manager, or entity who otherwise controls Painted Pegasus Petroleum LLC to notify the Commission if (1) any of the above applies for a permit or submits a Form 9 for the Commission's approval, or (2) any of the above join an existing entity and becomes the principal, majority owner, operational or general manager, or otherwise controls that existing entity. Any of the above apply for a permit or submits a Form 9, the Director may not approve the request. The request must come before the Commission at a hearing, at which it may determine whether to grant the application, require a higher amount of financial assurance, or deny the application

3. The Commission authorizes, but does not require, the Director to take any or all of the following actions:

a. Declare P3's wells "Orphan Wells," as defined in the 100-Series Rules;

b. Use funds from the Oil and Gas Conservation and Environmental Response Fund to investigate, prevent, monitor, or mitigate conditions that threaten to cause, or that actually cause, significant adverse environmental impacts at non-federal and non-tribal wells and locations formerly operated by P3;

c. Claim all equipment, saleable product, and appurtenances related to P3's oil and gas operations at its wells as property of the Commission, provided that any proceeds from the disposition of the assets will be credited to the cost of plugging and abandonment of the Well(s) and/or the Oil and Gas Conservation and Environmental Response Fund; and

4. At the Director's request, P3 will assign equipment, saleable product, and appurtenances related to P3's oil and gas operations to the Commission or a third party to be determined by the Director.

5. In the event the Director determines, in the Director's discretion and consistent with the Director's independent determination of operational priorities, that there is a need to use the Commission's Emergency Response appropriation (Long Bill), which is funded by the Oil and Gas Conservation and Environmental Response Fund, to remediate conditions that threaten to cause, or that actually cause, significant environmental impacts at wells or locations formerly operated by P3, the Director will

confer with the Commission regarding expenditure of Emergency Response appropriation funds at the earliest practical opportunity.

6. The following will not affect P3's obligations under this OFV: (1) a change in ownership, corporate status, or partnership status; or (2) a conveyance of title or other interest relating to P3's oil and gas operations. P3 will give written notice of this Order to any purchaser, successor, or assignee prior to transferring ownership or title to its oil and gas operations. P3 will give written notice to the Director prior to any change in title, ownership, or status. If there are outstanding corrective actions at the time of a change in title or ownership, P3's successors or assigns will be responsible for completing those corrective actions at P3's former oil and gas locations.

7. Upon the Director's notice of a claim as described above, P3 will not remove, transfer, or dispose of any equipment, saleable product, or appurtenances related to its oil and gas operations, unless permission is granted by the Director.

8. This Order is effective as of the date it is emailed by the Commission. It constitutes final agency action for purposes of judicial review.

9. The Commission expressly reserves its right after notice and hearing, to alter, amend, or repeal any and/or all of the above orders.

==============================================================

ENTERED this 10th day of March, 2022 as of the 9th day of March, 2022.

OIL AND GAS CONSERVATION COMMISSION
OF THE STATE OF COLORADO

By ______________________________
Mimi C. Larsen, Commission Secretary



(211000188/1V-780)

## CERTIFICATE OF MAILING

On the below described date, a true and accurate copy of Commission Order 1V-780 was uploaded into the Commission's eFiling system and emailed to the following:

Painted Pegasus Petroleum, LLC
Attn: Keith Hubbard
16820 Barker Springs Road, #521
Houston, TX 77084
khubbard@p3petro.com

Steven J. Kirschner
Colorado Oil and Gas Conservation Commission
1120 Lincoln Street, Suite 801
Denver, CO 80203
steven.kirschner@state.co.us

Margaret Humecki
2022.03.10 10:45:17 -07'00'

Margaret Humecki