# EXHIBIT M

HRM Defendants' 12(c) Motion to Dismiss

Excerpts of Deposition Transcript of J. Daniel Arthur

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00823-CNS-CYC

CINDY McCORMICK; RONALD McCORMICK; and TRUPP LAND MANAGEMENT, LLC, )
)
Plaintiffs, )
)
vs. )
)
HRM RESOURCES, LLC, HRM RESOURCES, II, LLC, HRM RESOURCES III, LLC, HRM RESOURCES IV, LLC, L. ROGER HUTSON, TERRY PAPE, PAINTED PEGASUS PETROLEUM, LLC, and JOHN HOFFMAN, )
)
Defendants. )

VIDEOTAPED DEPOSITION OF JAMES DANIEL ARTHUR
TAKEN ON BEHALF OF THE DEFENDANTS
REMOTELY IN TULSA, OKLAHOMA
ON JUNE 3, 2026

REPORTED BY: KAREN B. JOHNSON, CSR

A P P E A R A N C E S

(All parties attended remotely)

For the Plaintiffs:

Camille Sippel
CLIENTEARTH USA, INC.
4192 Marcasel Avenue
Los Angeles, California 90066
csippel@clientearth.org

Zigmas Polinauskas
RICHARDS CARRINGTON, LLC
1444 Blake Street
Denver, Colorado 80202
zigmas@richardscarrington.com

For the Defendants:

Madeleine L. Tayer
Matthew C. Arentsen
Alex P. Jack
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202
mtayer@bhfs.com
marentsen@bhfs.com
ajack@bhfs.com

Videographers:
(remotely)

McKayla Largin
Madison Thompson

CONTENTS


| | Page |
|---|---|
| Direct Examination by Ms. Tayer | 5 |


DEFENDANT'S EXHIBITS


| | | Page |
|---|---|---|
| Exhibit 1 | Mr. Arthur's Report | 16 |
| Exhibit 2 | Mr. Arthur's Invoice | 90 |
| Exhibit 3 | Excel Spreadsheet | 210 |
| Exhibit 4 | Ranger P&A Bid | 217 |

S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and among the attorneys for the respective parties hereto that the deposition of JAMES DANIEL ARTHUR may be taken on behalf of the Defendants on the 3RD of JUNE, 2026, remotely in TULSA, OKLAHOMA, by Karen Johnson, Certified Shorthand Reporter for the State of Oklahoma, taken pursuant to Federal Rules of Civil Procedure.

* * * * * *

THE VIDEOGRAPHER: Good morning. We're going on the record at 10:20 a.m. on June 3rd, 2026. This is Media 1 deposition recording of Daniel Arthur, PE in the matter of Cindy McCormick, et al. versus HRM Resources, et al., Case Number 24-CV-00823-CNS-CYC. This deposition is being held over Zoom, my name's McKayla Largin, I'm the videographer, and Karen Johnson is the court reporter.

Will counsel please state who they represent for the video record starting with plaintiff.

MS. SIPPEL: Hi, this is Camille Sippel on behalf of the plaintiffs.

MS. TAYER: And Madeleine Tayer for the HRM defendants.

THE VIDEOGRAPHER: The court reporter please swear in the witness.

JAMES DANIEL ARTHUR,

after having been first duly sworn at 10:20 a.m. CST deposes and says in reply to the questions propounded as follows, to wit:

DIRECT EXAMINATION

BY MS. TAYER:

Q Good morning, Mr. Arthur, my name is

been useful, though, to tie it to the transaction date, that's what I'm trying to understand?

MS. SIPPEL: Objection.

THE WITNESS: That's when HRM sold the asset and eliminated their liability or attempted to.

Q (By Ms. Tayer) So you were attempting to tie it to when HRM II allegedly eliminated their liability?

A I.e. selling the assets.

Q Did the sale between HRM II and P3 eliminate HRM II's liability?

MS. SIPPEL: Objection.

THE WITNESS: Well, we're in -- there's a litigation case now, so apparently not.

Q (By Ms. Tayer) What do you mean by that?

A I mean, there's a litigation case where, you know, that HRM is involved in, so did it eliminate the liability, I'm not an attorney, but --

Q All of the wells we're discussing are now in the Orphan Well Program; right?

A Yes.

Q And not all of these wells are at the same stage in the cleanup process; right?

A I'm -- I'm sure.
Q Are you aware that some of them have already been plugged?
A I am.
Q Some of them, I believe you referred to this in your report, ECMC's contributed funding to working on cleaning them up; correct?
A It's my understanding, yes.
Q If you were to do the remaining cleanup work on these P3 wells today, not estimating how much it would cost, but actually do the work, how would you go about figuring out how to start that process and what work needs to be done?
A It -- it very much depends, as one of your experts noted, is that if you're going to take these over, you either have to be a bonded operator or have a -- have some sort of arrangement with the state, as some states do, where the wells can be plugged and sites restored.
Q And the wells are in ECMC's Orphan Well Program, so you need to talk to ECMC; right?
A True.
Q You can't just go plug a well that's in ECMC's Orphan Well Program?
MS. SIPPEL: Objection.

THE WITNESS: Well, you can't plug a well or produce a well or whatever that you don't own or that you don't have some sort of authorization to do something to.

Q (By Ms. Tayer) I would like to direct your attention to Page 3 of your report under project background, let me know when you're there.

A Okay.

Q Do you see the sentence that begins with "This project background provides the foundation"?

A Yes.

Q And then it ends with "in the abandonment cost framework that together illustrate the scale of the obligations HRM sought to avoid," did I read that right, that last part of that sentence?

A Yes.

Q What is your basis for the part of that sentence that says "the scale of obligations HRM sought to avoid"?

A The ultimate obligation of plugging, remediation, remediating the sites.

Q What evidence have you reviewed that supports the notion that HRM or any HRM entity sought to avoid its obligations?

A They sold the assets.

P3 wells be plugged outside of the Orphan Well Program?

MS. SIPPEL: Objection.

THE WITNESS: Not necessarily. I'm assuming they would not be plugged and paid for by the State of Colorado. So states, you know, this is -- I'm -- I'm no attorney, but there are states that will allow landowner or -- or a bonded operator to come in and -- and plug a well, in some cases they'll even provide part of the funding, but if a landowner wants to -- to plug a well, in some cases, they're allowed to do that and -- and it seems to me that even in Colorado, you typically would need to be a bonded operator, take that over, but as your -- as your expert noted, which is most common, but there's other examples in other states where that's not required, and I guess I -- I don't know this, but I -- and I'm not an attorney, but I would think that there could be an opportunity for that to occur, maybe not.

Q (By Ms. Tayer) I guess I'm trying to understand when you came up with this estimate for preproject planning coordination, how were you thinking this would go, would you -- are you

thinking that a bonded operator will come in and do this --
A Yes.
Q Do this work?
A Yes.
MS. SIPPEL: Object.
Q (By Ms. Tayer) Even though the wells are currently in the Orphan Well Program?
MS. SIPPEL: Same objection.
THE WITNESS: So wells being in a Orphan Well Program does not mean necessarily that a state would not allow, you know, other companies to come in and -- and -- and plug wells.
Q (By Ms. Tayer) The state would have to allow those companies to come in and plug those wells in the Orphan Well Program; right?
MS. SIPPEL: Objection.
THE WITNESS: Sure.
Q (By Ms. Tayer) You estimated the total cost in September 2018 for preproject planning coordination to be a little over $4,000, right, per well, really, a little over $4,100 per well?
A Yes.
Q I'm looking at the chart at the top of Page 12 for your reference.