**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:24-cv-00823-CNS-CYC**

CINDY McCORMICK; RONALD McCORMICK; and TRUPP LAND MANAGEMENT LLC,

Plaintiffs,

v.

HRM RESOURCES, LLC, a Delaware limited liability company;
HRM RESOURCES II, LLC, a Delaware limited liability company;
HRM RESOURCES III, LLC, a Delaware limited liability company;
HRM RESOURCES IV, LLC, a Delaware limited liability company;
L. ROGER HUTSON, an individual; TERRY PAPE, an individual;
PAINTED PEGASUS PETROLEUM, LLC, a Texas limited liability company; and JOHN HOFFMAN, an individual,

Defendants.

---

**OPPOSITION TO DEFENDANTS' 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Plaintiffs Cindy McCormick, Ronald McCormick, and Trupp Land Management LLC (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, oppose Defendants' HRM Resources, LLC, HRM Resources II, LLC, HRM Resources III, LLC, HRM Resources IV, LLC, L. Roger Hutson, and Terry Pape (collectively, "HRM") Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings (the "Motion") for the reasons explained below.[1]

## I. INTRODUCTION & BACKGROUND

The facts of the case are familiar to the Court: HRM is an oil and gas company that conspired to commit fraud by avoiding millions in cleanup obligations, and Plaintiffs are the landowners left to deal with the mess. *See* Am. Class Action Compl., ECF No. 220 ¶¶ 8–30. Between 2013 and 2015, HRM bought over 200 marginal wells and spent the following few years extracting what little oil remained. *Id*. ¶¶ 96–97. When it had eked out all it could, HRM schemed to dump its liabilities by transferring the wells to Painted Pegasus Petroleum ("P3"), thereby pocketing the money that should have been used for cleanup. *Id.* ¶¶ 98,101–103. As intended, P3 operated the wells for a few years and then went bankrupt, at which point the wells became "orphaned." *Id.* ¶¶ 101–103, 122–135.

Plaintiffs filed their complaint in Colorado state court in February 2024, proposing injunctive relief as a "fund from damages awarded against the Defendants to be used to plug and otherwise decommission Plaintiffs' wells and remediate their land." ECF No. 4 at 36–37. After removing to federal court, HRM moved to dismiss for (1) lack of subject matter jurisdiction under 12(b)(1) and (2) failure to state a claim under 12(b)(6). ECF

[1] This Opposition is also responsive to John Hoffman's Response in Support of HRM's Rule 12(c) Motion. ECF No. 248. Further response is unnecessary because Hoffman's filing either restates HRM's points or addresses arguments the Court has already decided. *Id.* at 4–6.

No. 30. HRM argued that the Court lacked jurisdiction because "the wells are in [Colorado Energy and Carbon Management Commission's] custody and control, and thus, Plaintiffs' alleged injuries cannot 'be redressed by a favorable decision'"—the same argument HRM makes now. *Id*. at 19 (internal citations omitted). The Court rejected HRM's arguments, holding that "it has subject matter jurisdiction over Plaintiffs' claims." ECF No. 90 at 8. In May 2025, Plaintiffs moved to certify the class. ECF No. 107. HRM opposed, arguing that the injunctive relief would "interfere" with the Orphaned Well Program ("OWP"). ECF No. 116 at 2; *see also* ECF No. 132 at 5–7 (moving to strike arguments related to administration of an injunctive remedy). The Court certified the class. ECF No. 152. HRM then petitioned the Tenth Circuit Court of Appeals to overrule the Order Granting Class Certification, arguing in part that the proposed injunctive relief would "co-opt" ECMC's authority. ECF No. 158-1 at 9–12. The Tenth Circuit denied the petition. ECF No. 189.

As of the filing of this Motion, Plaintiffs maintain that they are injured by the presence of oil and gas wells on their property (the "Wells"[2]) and that cleanup of the Wells would remedy that injury, while HRM argues that the Court cannot issue an injunction to clean up because the Wells sit in the OWP, a program run by Colorado Energy and Carbon Management Commission ("ECMC" or "Commission"). This Court has not accepted that argument, and the Tenth Circuit declined to disturb the Court's ruling. ECF No. 90 at 6–8 (holding that it "has subject matter jurisdiction over Plaintiffs' claims"); ECF No. 152 at 17–19 (certifying a Rule 23(b)(2) class); ECF No. 189 (denying HRM's petition

[2] "Wells" includes wells and surrounding unreclaimed land, related equipment, structures, and/or pits. *See* Class Action Compl., ECF No. 4 ¶¶ 12, 73, 155–56.

to appeal). Raising the argument a fourth time, after discovery has closed and on the eve of pretrial, serves only to delay the relief the class is owed.

As explained below, the Motion is better characterized as an attempted Motion for Reconsideration, Motion for Summary Judgment, or an abstention argument than a true Motion for Judgment on the Pleadings. HRM's arguments about jurisdiction have been briefed and ruled on. Nothing has changed, and HRM identifies no new law or facts. Moreover, HRM's arguments fail on the merits. The proposed injunctive relief is likely to redress Plaintiffs' injuries, so it satisfies Article III standing. The Court may award injunctive relief that would not encroach on ECMC's authority, and—if this Court decides to fashion injunctive relief as a fund—ECMC is likely to approve any plugging and remediation plans proposed by the fund. HRM's arguments to the contrary rely on improper and unpersuasive evidence.[3] Accordingly, the Court should deny the Motion.

## II. LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Rule 12(c) motions are evaluated under the same standard as Rule 12(b) motions. *N. Brevard Cnty. Hosp. Dist. v. Bard, Inc.*, 162 F.4th 1268*,* 1272 (10th Cir. 2025) (internal citations omitted). A motion challenging jurisdiction under Rule 12(b)(1) may take one of two forms: (1) a "facial attack" which "looks only to the factual allegations of the complaint in challenging the court's jurisdiction" or (2) a "factual attack" which "goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge

[3] Plaintiffs are challenging the expert testimony HRM relies, and the parties have agreed that such disputes would be submitted at the end of October. ECF No. 241.

the court's jurisdiction." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) (internal citations omitted). When considering a factual attack, courts look to whether a "preponderance of the evidence" supports the existence of jurisdiction. *Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).

## III. ARGUMENT

### A. HRM ASKS THIS COURT TO RECONSIDER WHAT HAS ALREADY BEEN DECIDED.

As explained in Part I, both this Court and the Tenth Circuit have considered and rejected HRM's subject matter jurisdiction arguments. In its motion to dismiss, HRM argued that ECMC's custody of the Wells meant Plaintiffs' injuries could not be redressed—the same argument HRM makes in this Motion. ECF No. 30 at 19 (arguing "the wells are in ECMC's custody and control, and thus, Plaintiffs' alleged injuries cannot 'be redressed by a favorable decision'"). The Court denied the motion. It rejected HRM's contention that Plaintiffs had to take their grievance to ECMC, finding that ECMC "does not have the authority to provide Plaintiffs an adequate remedy." ECF No. 90 at 6. The Court held that it "has subject matter jurisdiction over Plaintiffs' claims." *Id.* at 8.

HRM pressed the same theme against class certification, arguing that ECMC's approval of cleanup and the "complexities attendant to the relief [Plaintiffs] seek" defeated a Rule 23(b)(2) class. ECF 116 at 2; *see also* ECF 132 at 5–7; ECF No. 152 at 17 (quoting ECF No. 117 at 20). The Court disagreed. ECMC, a non-party, is not "[the] injunction's target."[4] *Id.* "[E]ven if the Commission may ultimately be required to play some role in the implementation of any injunctive relief, this down-the-road responsibility is no basis for

[4] Although the Motion focuses on how injunctive relief might impact ECMC, ECMC is not a party to this action and has opted not to intervene, despite HRM's counsels' explicit request that the agency do so. *See* Ex. 1 at CORA_00000981–88.

denying class certification." *Id.* The Court was not being asked to "tell the Commission what to do, or substitute its judgment for that of the Commission." *Id.* at 18. Further, "the implementation or administrability of an injunction comes later." *Id.* at 19. Raising the issue again, HRM appealed to the Tenth Circuit, insisting that the injunctive relief would "co-opt" ECMC's authority. ECF No. 158-1 at 9–12. The Tenth Circuit was "not persuaded" that any ground for interlocutory review applied—including that the certification order was "manifestly erroneous"—and denied the petition. ECF No. 189 at 2–3.

Because HRM's Motion raises the same arguments already made on multiple occasions, it is really a disfavored motion to reconsider. *See Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1229 (10th Cir. 2021) ("[a] pleading will be judged by the quality of its substance rather than according to its form or label.") (internal citations omitted). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (internal citations omitted). "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* HRM identifies no change in controlling law, new evidence, or any other grounds for revisiting prior orders. The Motion should be denied as an improper motion to reconsider.

**B. HRM'S RELIANCE ON OUTSIDE EVIDENCE IS IMPROPER.**

"Factual attacks" on jurisdiction that rely on evidence outside the pleadings are not permitted "when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt v. United States*, 46 F.3d 1000*,* 1003 (10th Cir. 1995). If the resolution of the jurisdictional question is intertwined, the court must convert the motion into a Rule 56 motion for summary judgment. *Id.* In determining if conversion is appropriate, the focus

is on "whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).

Here, Plaintiffs' Colorado Uniform Fraudulent Transfer Act claim seeks to establish that HRM's transfer of the Wells to P3 and, subsequently, P3's abandonment of the Wells, causing the Wells to fall into the OWP, was lawful. To the extent that HRM now argues that the proposed injunctive relief fails to redress Plaintiffs' injuries *because the Wells are managed by OWP,* this determination goes to the merits of Plaintiffs' substantive claims regarding the fraudulent transfer. Because HRM's argument goes to substantive aspects of the claims, HRM cannot bring in external evidentiary support in a Rule 12(c) motion, and the Court must deny the Motion as improper or, at a minimum, exclude the exhibits. If the Court is inclined to consider them, Rule 12(d) entitles Plaintiffs to a reasonable opportunity to present all pertinent material in response. Fed. R. of Civ. Proc. 12(d).

### C. HRM'S CHALLENGE IS ACTUALLY A REQUEST FOR ABSTENTION.

HRM's argument is about deference to a state agency, not the Court's Article III power. HRM argues that ECMC runs a complex state program with discretionary authority over plugging and remediation of orphaned wells, and, therefore, a federal court should not grant relief that might affect how ECMC exercises that discretion. Mot. at 1–2, 13–19. But that is an abstention—not a jurisdiction—argument. When abstention doctrines are implicated, "no question is raised as to the court's subject matter jurisdiction." *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 667–68 (10th Cir. 2020).

Here, no conflict warranting abstention exists because there is no state proceeding for this Court to disrupt. Even though the proposed relief tangentially involves ECMC's regulatory processes, abstention is not required just because "there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory

law or policy." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989). Further, only this Court can make HRM remedy its misconduct. ECMC alone cannot give complete relief. *See* ECF No. 90 at 6–7. HRM's own expert reports that ECMC's enforcement action reached only P3. ECF No. 247-8 at 9–10.

Under state law, ECMC's authority does not displace these claims. *See* Colo. Rev. Stat. § 34-60-114. Indeed, ECMC's statute "expressly preserves any preexisting common law remedies." *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 924–25 (Colo. 1997); ECF No. 90 at 7*.* Plus, even when abstention is implicated, if jurisdiction exists, a federal court's obligation to exercise it is "virtually unflagging." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69*,* 77 (2013) (internal citations omitted). Plaintiffs established jurisdiction and, therefore, the Court should not abstain from hearing the merits. *Infra* Part III(E).

**D. THE MOTION IS UNTIMELY AND PREJUDICES PLAINTIFFS.**

The Motion comes too late to serve any legitimate purpose. A Rule 12(c) motion must be made "early enough not to delay trial," and a court may deny one that reflects "excessive delay" or "cause[s] prejudice to the non-movant." Fed. R. Civ. P. 12(c); 5C Wright & Miller's Fed. Prac. & Proc. Civ. § 1367 (3d ed. 2004). HRM filed this Motion two and a half years into the case, after discovery closed and with the Final Pretrial Conference set. ECF No. 240. Every exhibit it relies on was available months earlier: the Murphy declaration was signed on June 30, 2025, and the depositions and hearing transcript HRM cites date from June 2025 through June 2026. HRM identifies nothing new. Rule 12(h)(3) permits a jurisdictional challenge at any time, but it does not license a party to recast a rejected argument as a pleadings motion on the eve of trial.

### E. PLAINTIFFS HAVE ESTABLISHED STANDING BECAUSE THE INJUNCTIVE RELIEF IS LIKELY TO REDRESS THEIR INJURIES.

HRM's Motion also fails on the merits. To maintain suit in federal court, a plaintiff must have standing. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing consists of the following elements: (1) that the plaintiff suffered or was under threat of suffering an injury in fact; (2) that the injury in fact was fairly traceable to defendants' unlawful conduct; and (3) that the injury in fact is likely to be redressed by a favorable decision. *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149 (2010). Here, Plaintiffs' proposed injunctive relief is likely to remedy the injuries caused by Defendants.

*1. HRM mischaracterizes Plaintiffs' requested relief.*

First, HRM inaccurately portrays Plaintiffs' requested relief and then repeatedly emphasizes the impossibility of that unsought relief. *See* Mot. at 6 ("[Plaintiffs] ask the Court to *force* ECMC to PA&R [plugging, abandonment, and reclamation] the Wells faster (with funding from the HRM Defendants).") (emphasis added); *see also* Mot. at 11. As pled, Plaintiffs seek injunctive relief in the form of "a fund from damages awarded against the Defendants to be used to plug and otherwise decommission Plaintiffs' wells and remediate their land.[5] ECF No. 220 at 49; *see also* ECF No. 123 at 11–13. Plaintiffs are not asking the Court to usurp ECMC's authority or bypass its standard cleanup oversight processes. As the Court correctly noted, "Plaintiffs do not target to seek to enjoin any of the Commission's conduct." ECF No. 152 at 17–18. The proposed injunctive relief via the

---

[5] HRM also argues against relief as a donation to ECMC, but Plaintiffs never requested that. Rather, the Court mentioned it during a hearing, and Plaintiffs agreed that it could be a form of relief to consider. ECF No. 247-6 at 5:6–18. Plaintiffs do not take a position on the appropriateness of such relief at this time but remain open to the Court determining the specifics of injunctive relief. *See Winzler v. Toyota Motor Sales U.S.A., Inc*., 681 F.3d 1208, 1210 (10th Cir. 2012) (courts have "remedial discretion" to mold injunctive relief to the "necessities of the particular case") (internal citations omitted).

creation of a fund does not require any supervision or control over the operations of ECMC, dictate ECMC's budget priorities, or require ECMC to act in accordance with the decision of this Court.[6] While ECMC will have tangential involvement because it must approve plans for plugging and remediation, the proposed relief is entirely consistent with ECMC's normal processes and would not commandeer or substantially interfere with the agency's autonomy. *See* 2 Colo. Code Regs. §§ 404-1:434; 404-1:913.

*2. The injunctive relief is likely to redress Plaintiffs' injuries.*

The injunctive relief sought is likely to redress Plaintiffs' injuries and the fact that ECMC is involved in approving cleanup plans does not alter the analysis. *See Diamond Alternative Energy, LLC v. Env't Prot. Agency,* 606 U.S. 100, 112 (2025) ("With respect to causation (and redressability), a court must conclude that 'third parties will likely react' . . . 'in predictable ways' that will likely cause (or redress) the plaintiff's injury.") (internal citations omitted); *McEvoy v. Diversified Energy Co. PLC*, No. 5:22-CV-171, 2023 WL 6192768, at *8 (N.D.W. Va. June 1, 2023) (discounting the argument that future permitting decisions by a state agency would prevent implementation of the requested plugging and remediation fund). A fund that pays for plugging and remediation on class members' land provides the means to effectuate relief to redress Plaintiffs' injuries. *See Mass. v. E.P.A.*, 549 U.S. 497, 524 (2007) ("incremental" steps to achieve relief satisfy redressability).

ECMC's approval of privately funded cleanup efforts is a predictable outcome. ECMC's authorizing statute explicitly emphasizes the harms caused by orphaned wells

---

[6] HRM argues that a direct order requiring ECMC to act would create a sovereign immunity issue, whereas *not* directing ECMC to act would result in an unconstitutional advisory opinion. Mot. at 18–20. As mentioned, the proposed injunctive relief would not directly order ECMC to act, so HRM's sovereign immunity concerns are misplaced. The injunctive relief would also not result in an unconstitutional advisory opinion: ECMC does not need to be persuaded or inspired by a judgment for Plaintiffs to obtain relief.

and explains ECMC's duty to help "mitigate risks by plugging, reclaiming, and remediating orphaned wells." Colo. Rev. Stat. §§ 34-60-133(1.5)(c). Further, ECMC's statutory authority mandates that "all oil and gas wells will require plugging and reclaiming at the end of their useful lives." *Id.* at (d). If ECMC were to refuse privately funded cleanup (as contemplated by the proposed relief), this would be in direct contradiction of ECMC's duty to mitigate orphan well risks and ensure all wells are ultimately plugged.

ECMC has clear statutory authority to work with private contractors for the plugging and remediation of orphaned wells, and it routinely permits third parties to clean up wells in the OWP.[7] Colo. Rev. Stat. § 34-60-133(2); ECF No. 247-1 at ¶ 7. HRM admits this in their Motion. Mot. at n.7. When working with contractors for plugging and remediation of orphaned wells, no requirement exists for the orphaned wells to be transferred to a third party or for the wells to be otherwise removed from OWP. *See* ECF No. 247-1 at ¶ 7 ("ECMC does not obtain legal title to the orphaned wells."); 2 Colo. Code Regs. § 404-1:100 (defining "orphan well" as without an owner or operator); Colo. Rev. Stat. § 34-60-133(1)(a)(II) (providing ECMC's purpose to plug and remediate orphaned wells without any reference to taking ownership); § 34-60-133(1.5)(b) (granting authority to ECMC to contract with private entities with no transfer requirements); *id.* at (2)(e) (allowing ECMC to use "other payments from private or public sources" without transfer requirements).

[7] ECMC lists of over 300 approved private contractors on its website. OWP Contractors, Colo. Energy & Carbon Mgmt. Comm'n, https://perma.cc/UKF3-B27J (last visited Oct. 14, 2026). Plaintiffs request the Court take judicial notice of all references to ECMC's website, which is a publicly available government website. Fed. R. Evid. 201(b)(2); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) ("administrative agency's publicly available files, after all, traditionally qualify for judicial notice.").

ECMC welcomes privately funded third parties to voluntarily clean up OWP wells, demonstrating that privately funded plans are beneficial to OWP and that arranging with third parties to plug OWP wells is common practice. *See* Orphaned Well Program FAQ, Colo. Energy & Carbon Mgmt. Comm'n, https://perma.cc/8V5D-T83Y (last visited Oct. 20, 2026) ("Industry helps the Orphaned Well Program by participating in Public Projects and voluntary projects whereby the operator plugs wells or performs other work at orphaned sites, reducing costs that the Orphaned Well Program would otherwise occur for the work."); Ex. 2, Agreement for Plugging Operations (contract between the agency and private contractor, Civitas); Ex. 3, Tradewater Letter (proposal by company to plug wells within OWP at no cost). HRM's own exhibits prove the point: two of the very Wells at issue were plugged in December 2024 by Extraction Oil & Gas, Inc. ("Extraction"), not by ECMC. ECF No. 247-1 ¶¶ 16–17. Extraction did the work with OWP's permission. *Id.* at ¶ 18. HRM's expert agrees that these orphaned wells were "voluntarily plugged," and the wells "remained under the custody and control of the OWP at all times." ECF No. 247-7 at 13 n.76. This is exactly the mechanism the requested relief contemplates: a private party pays for and performs the plugging, and ECMC approves it.

Finally, ECMC's approval of privately funded cleanup is likely because ECMC would benefit from the relief. ECMC would not have to conduct a cost-benefit analysis or use its own limited funds to clean up the Wells. *See* Fiscal Year 2026 Annual Report Orphaned Well Program, Colo. Energy & Carbon Mgmt. Comm'n, (Sept. 10, 2026), https://perma.cc/9HN6-5763 (last visited Oct. 22, 2026) (showing ECMC's budget); Ex. 4 at Payne_CORA 0002923 (email from ECMC employee stating that zero cost plugging jobs "helps us reduce our backlog"). When using its own funds, ECMC must undertake

an in-depth prioritization consideration and analysis of associated costs. *See* Colo. Rev. Stat. §§ 34-60-133(6); 404-1:205(c)(6); ECF No. 247-5 at 252:12–254:7 (describing prioritization process). The proposed fund would remove this step, making relief easier and more likely. *See US Magnesium, LLC v. U.S. E.P.A.*, 690 F.3d 1157, 1166 (10th Cir. 2012) (finding redressability where "a favorable decision would significantly increase the chances of favorable action by a non-party").

Accepting a privately funded cleanup plan is well within ECMC's authority, supports ECMC's clear legislative purpose, and reinforces ECMC's statutorily-mandated goals—all while conserving ECMC's limited budget. Therefore, it is predictable that ECMC will approve the cleanup plans set out by the proposed fund, and Plaintiffs have established by a preponderance of the evidence that the relief will likely redress their injuries.

*3. HRM's factual evidence fails to support the conclusion that Plaintiffs' proposed injunctive relief will not redress their injuries.*

Despite styling their Motion as a "factual attack," HRM relies on a remarkably narrow set of purported facts drawn from rebuttal reports, deposition transcripts, and other evidence—much of which is currently in dispute by Plaintiffs.[8] Plaintiffs have far stronger evidentiary support and have met their burden of establishing subject matter jurisdiction by a preponderance of the evidence.

HRM relies on testimony and declarations to support that the Wells are in the OWP's exclusive control and only the OWP has authority over them. Mot. at 4, 13, 14, 16, 17. Plaintiffs do not contest ECMC authority. As discussed, ECMC contracts with third parties to clean up OWP wells and welcomes privately funded volunteers. *See, e.g.*, Ex.

[8] HRM relies on evidence currently in dispute by Plaintiffs, who intend to file several 702 motions to exclude it. The deadline to file disputes is October 29, 2026. ECF No. 240.

2, Agreement for Plugging Operations (between the agency and private contractor, Civitas); Ex. 3, Tradewater Letter; Orphaned Well Program FAQ, Colo. Energy & Carbon Mgmt. Comm'n, https://perma.cc/8V5D-T83Y (last visited Oct. 20, 2026). There is no reason to presume that ECMC would not allow similar agreements in the future.

HRM also argues that Plaintiffs cannot show redressability because they fail to identify a legal process "by which orphaned wells in the OWP can be removed from the program and assigned to a third-party administrator." Mot. at 17–18. But identifying a legal process to transfer wells is an unnecessary step. The Wells are not *owned by* the OWP nor must wells be transferred for third parties to plug and remediate them. *Supra* at 11. HRM's own expert undercuts this argument. When asked whether the fund requested in paragraph G of the Complaint would require removing the Wells from OWP, Mr. Lepore answered: "Standing alone, paragraph G . . . would not necessarily require the wells to be taken out of the orphan well program." ECF No. 247-2 at 197:10–13. His opinion that the relief would contravene Colorado's orphaned-well scheme rests on the premise that Plaintiffs seek to "take the wells out of the orphan well program and give them to an undefined, unidentified third-party administrator." *Id.* at 181:12–18. When asked whether that opinion survives if Plaintiffs are not seeking removal, he said he would "need a better understanding of what they are, in fact, asking for." *Id.* at 182:18–20.

Additionally, HRM offers no sound evidence that future decisions regarding the plugging and remediation of the Wells must be "consistent with the Director's independent determination of operational priorities." Mot. at 13 (citing ECF No. 247-4). To make this point, HRM misquotes an ECMC Order noting that *in relation to the use of emergency funding,* the Director has discretion to prioritize cleanup of OWP wells. ECF No. 247-4.

But where another party provides funding and labor, ECMC has no reason to reject cleanup plans that may diverge from the agency's emergency prioritization order.

Finally, HRM quotes ECMC's former Director to argue that the proposed relief would require ECMC to "deviate" from the prioritization process and "redirect" resources. Mot. at 5 (citing ECF No. 247-5 at 260:21–261:7). This misunderstands the requested relief, which merely seeks to establish a private fund to pay contractors to perform the same cleanup responsible operators undertake, which ECMC routinely approves. Nor does the record establish that the proposed relief would interfere with contracts among third parties for cleanup. Mot. at 18, n.7 (failing to identify supportive testimony).

HRM's purported "factual attack" is aimed at relief Plaintiffs do not actually seek, and it fails to demonstrate that the proposed injunctive relief is unlikely to redress Plaintiffs' injuries. Accordingly, HRM fails to negate standing, and the Motion should be denied.

4. *HRM's legal arguments are insufficient to establish that the proposed injunctive relief would not redress Plaintiffs' injuries.*

Finally, HRM's Motion must be denied because HRM has not cited any persuasive authority. HRM supports its arguments with inapplicable case law focused on injunctive relief attempting to directly enjoin third parties, which, as explained above, is irrelevant to Plaintiffs' proposed relief.[9] ECF No. 152 at 17–18 ("Defendants' citation to a case

[9] HRM relies on the following inapplicable or irrelevant cases: *Whole Woman's Health v. Jackson*, 595 U.S. 30, 52 (2021) (considering relief seeking to directly enjoin state court judges and clerks along with private parties); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (quote taken out of context from separate standing inquiry regarding whether injury is "fairly traceable"); *Horne v. Flores*, 557 U.S. 433, 449 (2009) (analyzing institutional reform injunctions that would "bind state and local officials to the policy preferences of their predecessors"); *Denver Bible Church v. Azar*, 494 F. Supp. 3d 816, 842 (D. Colo. 2020), *aff'd in part, dismissed in part sub nom. Church v. Polis*, No. 20-1391, 2022 WL 200661 (10th Cir. Jan. 24, 2022) (assessing redressability of relief relying on a non-party to be "persuaded" to comply); *Colorado v. U.S. Env't Prot. Agency*, 989 F.3d 874, 890 (10th Cir. 2021) (considering cognizable injury standard while determining

involving a temporary restraining order in support of its arguments is unpersuasive, where—again—Plaintiffs do not target to seek to enjoin any of the Commission's conduct."). HRM largely depends on a Supreme Court case holding that relief "enjoining the federal parties would not remedy the alleged injury, because state courts apply the placement preferences, and state agencies carry out the court-ordered placements." *Haaland v. Brackeen*, 599 U.S. 255, 292–93 (2023).

The circumstances differ in the present case because: (1) *Brackeen* implicated state-federal comity concerns; (2) the proposed injunctive relief here does not depend on ECMC to voluntarily act *in accordance with* any decision in this case; and (3) the state courts and agencies in *Brackeen* were vested with substantial discretionary authority to implement the placement preferences at issue, creating considerable uncertainty as to how those actors would exercise that discretion. *Id.* Here, the proposed injunctive relief does not implicate any state-federal comity concerns: this Court does not need to direct a state court or agency how to act nor do Plaintiffs need ECMC to act in accordance with the decision of this Court. Therefore, the holding in *Brackeen* is unpersuasive, and HRM has failed to demonstrate that the proposed relief is too speculative to establish standing.

## V. CONCLUSION

For the foregoing reasons, HRM's Motion should be denied.

Respectfully submitted this 27th day of October 2026 in Denver, Colorado.

*<u>/s/ Benjamin W. Hudgens</u>*
Benjamin W. Hudgens
Christopher P. Carrington

---

a preliminary injunction, not addressing redressability); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005) (injunctive relief not likely to redress injuries where "there would still be a multitude of other prospective litigants who could potentially sue").

**RICHARDS CARRINGTON, LLC**
1444 Blake Street, Denver, CO 80202
Telephone: 303-962-2690
Email: ben@richardscarrington.com
chris@richardscarrington.com

*Attorneys for Plaintiffs*

*/s/ John S. Rossiter*
John S. Rossiter Jr.
Kelley T. Tran
Camille Sippel
Benjamin Segal
Setareh Homayoni
Rosa Acheson
Jaclyn Lee
**CLIENTEARTH USA, INC.**
501 Santa Monica Blvd., Suite 510
Santa Monica, CA 90401
Telephone: 424-387-7031
Email: jrossiter@clientearth.org
ktran@clientearth.org
csippel@clientearth.org
bsegal@clientearth.org
shomayoni@clientearth.org
racheson@clientearth.org
jlee@clientearth.org

*Attorneys for Plaintiffs*

*/s/Scott C. Borison*
Scott C. Borison
**BORISON FIRM, LLC**
1400 S. Charles Street
Baltimore, Maryland 21230
Telephone: 301-620-1016
Email: scott@borisonfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2026, I electronically filed the foregoing **OPPOSITION TO DEFENDANTS' 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Richard B. Benenson
Justin L. Cohen
Matthew C. Arentsen
Max Porteus
Madeleine L. Tayer
BROWNSTEIN HYATT FARBER SCHRECK, LLP
rbenenson@bhfs.com
jcohen@bhfs.com
marentsen@bhfs.com
mporteus@bhfs.com
mtayer@bhfs.com

And via electronic mail:
John Hoffman
johnghoffman@icloud.com

Sarah Rawlings__________

Sarah Rawlings, Paralegal